UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SOHEILA HEXEMER,

                Plaintiff,

      -against-                                  1:12-CV-1808 (LEK/CFH)

GENERAL ELECTRIC COMPANY; GID
GLOBAL, LLC; and JOSE GARCIA, in
his professional and individual capacities,

                Defendants.

## MEMORANDUM-DECISION and ORDER

**I.    INTRODUCTION**

In this employment action, Plaintiff Soheila Hexemer ("Plaintiff") alleges that she was retaliatorily terminated from her employment with Defendants General Electric Company ("GE"), GID Global, LLC ("GID"), and Jose Garcia ("Garcia") (collectively, "Defendants") after she complained about a co-worker's discriminatory comments. See Dkt. No. 1 ("Complaint"). Presently before the Court is Defendants' Motion to dismiss. Dkt. No. 6 ("Motion"). For the following reasons, the Motion is granted in part and denied in part.

**II.    BACKGROUND**[1]

Plaintiff was born in Iran and is of Persian descent. Compl. ¶ 6. In January 2011, Plaintiff was hired by GID, a staffing and employment agency owned and operated by Garcia, for a project-

---

[1] Because this matter is before the Court on a motion to dismiss, the allegations of the Amended Complaint are accepted as true and form the basis of this section. See Boyd v. Nationwide Mut. Ins. Co., 208 F.3d 406, 408 (2d Cir. 2000); see also Matson v. Bd. of Educ., 631 F.3d 57, 72 (2d Cir. 2011) (noting that, in addressing a motion to dismiss, a court must view a plaintiff's factual allegations "in a light most favorable to the plaintiff and draw[] all reasonable inferences in her favor").

management position at GE's Schenectady office.  Id. ¶¶ 8-10, 23.[2]  Plaintiff's responsibilities included updating and verifying GE power-plant manuals, providing Microsoft Office training, and designing a GE webpage.  Id. ¶ 24.  She used GE's office equipment, had a GE email address, and was supervised by GE employees.  Id. ¶¶ 13, 15-16, 21, 34-36.  Her employment contract with GID explicitly obligated her to adhere to the "GE Travel and Living Policies," other GE "Company Policies," and the "GE Power Systems Integrity Guide."  Dkt. No. 11-1 ("Employment Contract") at 2, 6.[3]

On October 25, 2012, Plaintiff made a comment to two co-workers about how sitting at their desks led to weight gain.  Id. ¶ 25.  Another co-worker, GE employee Sarah Hill ("Hill"), overheard this comment and "berat[ed]" Plaintiff, called her "uncivilized," stated that "in this country, we don't talk like that," and informed Plaintiff that, while such comments might be acceptable in Iran, they were unacceptable in the United States.  Id. ¶ 26.  Plaintiff asked Hill what the relevance of Plaintiff's ancestry was and told Hill that she would resign if her "nationality [wa]s affecting [her] that much."  Id. ¶ 27.

Plaintiff immediately attempted to speak with her GE supervisors about this incident but, as they were unavailable, she spoke with another GID employee, Jacob Teft ("Teft"), who had witnessed the confrontation.  Id. ¶ 29.  Four days later, on Plaintiff's next scheduled day of work, Plaintiff met with Teft and GID supervisor Thomas Zalewski ("Zalewski"), who told her that Garcia

---

[2] Plaintiff had previously worked for two years in a project-management position at GE's Schenectady office through another staffing agency that was wholly owned by GE.  Compl. ¶ 6. That position ended in September 2010.  Id.

[3] The Court may consider the Employment Contract because it was incorporated by reference in the Complaint.  See Taylor v. Vt. Dep't of Educ., 313 F.3d 768, 776 (2d Cir. 2002); Compl. ¶ 12.

had been informed of the incident and that Plaintiff would not need to have contact with Hill if she did not want to.  Id. ¶ 30.  Plaintiff responded that she did not think this was an adequate remedy.  Id. ¶ 31.

Two days later, Garcia sent Plaintiff an email terminating her employment.  Id. ¶ 33.  Plaintiff then met with her GE managers and Jared York ("York"), a senior GE manager.  Id. ¶¶ 35-36.  When Plaintiff asked why she, and not Hill, had been fired, York responded that he "did not like or care" about Plaintiff and that Hill's comments did not matter to him.  Id. ¶¶ 35-36.

Garcia subsequently told Plaintiff that GE had made the decision to terminate Plaintiff's employment for "budgetary reasons."  Id. ¶ 38.  He also told Plaintiff that GE, rather than giving him the customary two months' notice before eliminating a position or terminating a contract employee, had given him no advance warning that Plaintiff's employment was to be terminated.  Id. ¶ 39.

Plaintiff filed the Complaint in December 2012, bringing claims for hostile work environment, discriminatory termination, and retaliatory termination under 42 U.S.C. § 1981 and the New York Human Rights Law ("HRL"), N.Y. EXEC. LAW § 290 *et seq*.  See generally Compl.  Defendants then filed the Motion and an accompanying Memorandum of law, seeking dismissal of all of Plaintiff's claims.  See Mot.; Dkt. No. 6-2 ("Memorandum").  Plaintiff submitted a Response in which she consented to the dismissal of the Complaint's first and third claims (for hostile work environment and discriminatory termination under § 1981 and the HRL, respectively).  See Dkt. No. 12 ("Response") at 1 n.1.  Defendants then filed a Reply.  Dkt. No. 12 ("Reply").

### III.   LEGAL STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil

3

Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also FED. R. CIV. P. 12(b)(6).  A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff.  See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555).  Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal.  See id. at 678-79.

## IV.    DISCUSSION

### A.  Section 1981 Retaliation

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a).[4]  The statute prohibits the racially discriminatory prevention

---

[4] "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

4

of a person from entering into, or enjoying the benefits of, a contract. See Burrell v. AT&T Corp., No. 03 CV 2490, 2005 WL 2656124, at *3 (S.D.N.Y. Oct. 18, 2005). Section 1981 also prohibits employer retaliation against employees who have opposed conduct prohibited by the statute. See CBOCS West, Inc. v. Humphries, 553 U.S. 442 (2008). There need not be an express employment contract for a retaliation claim to lie; an employment relationship suffices. See, e.g., Lauture v. Int'l Bus. Machs., 216 F.3d 258, 261-62 (2d Cir. 2000). Defendants argue that: (1) GE cannot be liable for retaliation because it did not have an employment relationship with Plaintiff; and (2) Plaintiff has failed to allege facts plausibly suggesting retaliation by any Defendant. See generally Reply.

*1. GE's Employer Status*

According to Defendants, Plaintiff's § 1981 retaliation claim against GE must be dismissed because GID, not GE, was Plaintiff's employer. See Mem. at 11; Reply at 3-4. Plaintiff responds that the requisite employment relationship existed because GE was her employer under the joint-employer doctrine, pursuant to which "'an employee formally employed by one entity can be found to be constructively employed by another entity.'" Bakeer v. Nippon Cargo Airlines, No. 09 CV 3374, 2011 WL 3625103, at *28 (E.D.N.Y. July 25, 2011) (quoting Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 216-17 (S.D.N.Y. 2010)); Reply at 4-12. GE argues that it was not Plaintiff's joint employer but does not dispute that the requisite employment relationship existed if it was. See generally Reply; see also Bakeer, 2011 WL 3625103, at *32-33.

Although the test for whether a joint-employment relationship exists has a variety of specific formulations, see Arculeo v. On-Site Sales & Marketing, 425 F.3d 193, 198, nn.6-7 (2d Cir. 2005), under § 1981, as in other contexts, the predominant focus is the control exercised by the putative joint-employer over the plaintiff's work. See Barbosa, 716 F. Supp. 2d at 217; Fowler v. Scores

5

Holding Co., Inc., 677 F. Supp. 2d 673, 68-81 (S.D.N.Y. 2009); Lenoble v. Best Temps, Inc., 352 F. Supp. 2d 237, 245-46 (D. Conn. 2005).[5]

Defendants argue that, because Plaintiff was hired and paid by GID Global, GE cannot have exercised sufficient control to have been her joint employer. See Reply at 3. But an entity need not be involved in the hiring or payment of a plaintiff to be a joint employer. See Pimentel v. Magin, No. 10-CV-0616, 2013 WL 4080600, at *6-7 (N.D.N.Y. Aug. 13, 2013) (rejecting defendant's contention that it was not an joint employer of subcontractor-plaintiffs because it had not hired or paid them); Dupree v. Urban Homesteading Assistance Bd., No. 10-CV-1894, 2011 WL 1343163, at *5 (E.D.N.Y. Apr. 8, 2011) ("Defendants cannot escape liability purely because they did not hire [plaintiff] in the first place and did not hand him his paychecks."); Nelson v. Beechwood Org., No. 03 Civ. 4441, 2004 WL 2978278, at *3-4 (S.D.N.Y. Dec. 21, 2004) (finding that entity was plaintiff's joint employer even though it did not pay plaintiff); DeWitt v. Lieberman, 48 F. Supp. 2d 280, 288 (S.D.N.Y. 1999) (noting that, for temporary employees, payment by one entity but control by another is the "precise bifurcation that has le[d] courts to a finding of 'joint employment'").

Defendants also argue that Plaintiff's admission that Garcia sent her an email terminating her employment is fatal to her assertion that GE was her joint employer. See Reply at 3 (citing Compl. ¶ 33). But Plaintiff also alleges that GE, not GID or Garcia: (1) made the decision to terminate her performance of work for GE; and (2) may thereby have directly caused her termination by GID—Plaintiff had, after all, been hired by GID to fill a GE position. GE's role in Plaintiff's termination therefore weighs in favor, not against, a finding that GE was her joint

---

[5] Courts apply the joint-employer principles used for claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., to § 1981 claims. See, e.g., Bakeer, 2011 WL 3625103, at *28, *32-33.

employer. See Dupree v. UHAB-Sterling Street Hous. Dev. Fund Corp., No. 10-CV-1894, 2012 WL 3288234, at *10-11 (E.D.N.Y. Aug. 10, 2012) (denying summary judgment where entity, even though it did not make the ultimate decision to terminate plaintiff, was heavily involved in discussions regarding that termination); Goodwin v. Orange & Rockland Utils., No. 04 Civ. 0207, 2005 WL 2647929, at *5 (S.D.N.Y. Oct. 14, 2005) (finding that entity was clearly plaintiff's employer where, although it claimed to have "merely informed her direct employer that the contract for her position was being canceled," it was effectively responsible for terminating the plaintiff ); Nelson, 2004 WL 2978278, at *5 (denying motion to dismiss where ambiguities existed as to how and by whom the decision to terminate plaintiff was made); see also Serrano v. 900 5th Ave. Corp., 4 F. Supp. 2d 315, 316-17 (S.D.N.Y. 1998) (noting that Title VII's definition of an employer is "'sufficiently broad to encompass any party who significantly affects access of any individual to employment opportunities'").[6]

Defendants, in addition to proffering this affirmative evidence that GE was not her joint employer, also argue that Plaintiff has insufficiently alleged facts plausibly suggesting a joint-employer relationship. Defendants correctly note that some of Plaintiff's allegations are conclusory.

---

[6] In the Memorandum's discussion of Plaintiff's discrimination and harassment claims, Defendants argued that the Employment Contract's explicit disclaimer of any employment relationship between Plaintiff and GE compelled a finding that GE was not Plaintiff's employer. See Mem. at 5; Employment Contract at 1 ("Employee understands and acknowledges that Employee is an employee of [GID] and not of GE."). Yet in the Reply, Defendants do not offer this contract-language argument in response to Plaintiff's joint-employer theory. See generally Reply. If Defendants are pressing this argument as to Plaintiff's retaliation claim, it is unavailing. See Sowemimo v. D.A.O.R. Sec., Inc., 43 F. Supp. 2d 477, 499 (S.D.N.Y. 1999) (holding that explicit contractual language between plaintiff and security-guard staffing agency stating that plaintiff was not an employee of entity at which she was placed was not determinative of the existence *vel non* of employment relationship); Thomas v. Texaco, Inc., 998 F. Supp. 368, 371 (S.D.N.Y. 1998) ("[T]he label used to describe [a] position is not dispositive."); Rivera v. P.R. Home Attendants Servs., Inc., 922 F. Supp. 943, 949 (S.D.N.Y. 1996) (same).

See, e.g., Compl. ¶ 15 ("During the course of her employment, GE's employees supervised and otherwise controlled the conditions of Plaintiff's employment."). But Plaintiff has specifically alleged that she: (1) worked at GE's office; (2) used GE's equipment; (3) had a GE email address; (4) was supervised by GE managers with whom she attempted to speak about her termination; (5) worked exclusively for GE in the same department for more than a year; (6) was contractually obligated to adhere to a number of specific GE policies; (7) performed assignments related to the editing and updating of GE literature; (8) was told that GE had made the decision to terminate her employment; and (9) believed that GE was her employer. Although Plaintiff has not provided a great deal of information regarding her day-to-day tasks or her supervision by GE, her allegations are sufficient to plausibly suggest that GE was her joint employer. See Vanskike v. ACF Indus., Inc., 665 F.2d 188, 199 (8th Cir. 1981) ("The belief of an employee as to who is his employer is a fact to be considered in determining whether a master-servant relationship exists."); Barbosa, 716 F. Supp. 2d at 219 (denying summary judgment where plaintiff alleged that she attempted to contact officers of putative joint employer regarding discrimination); Goodwin, 2005 WL 2647929, at *5 (finding that entity was clearly plaintiff's employer where it "supervised her performance and provided her with all necessary equipment and supplies"); Adams v. Debevoise & Plimpton, No. 03 Civ. 3105, 2004 WL 1737826, at *2 (S.D.N.Y. Aug. 3, 2004) (finding law firm's "continued, long-term relationship" with temporary legal secretary established firm as joint employer); Laurin v. Pokoik, No. 02 Civ. 1938, 2004 WL 513999, at *9 (S.D.N.Y. Mar. 15, 2004) (denying summary-judgment motion where plaintiff occasionally performed work directly for defendant entity).

    2. *Elements of a § 1981 Claim*

To make out a § 1981 retaliation claim, a plaintiff must show that: (1) she engaged in

protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse employment action. Dixon v. Int'l Fed'n of Accountants, 416 F. App'x 107, 110 (2d Cir. 2011); Rivera v. Thurston Foods, Inc., No. 11-CV-893, 2013 WL 1149940, at *9 (D. Conn. 2013).[7] Defendants argue that Plaintiff has not pled facts plausibly suggesting that any of these elements were met. See generally Reply.

### a. Protected Activity

An employee engages in protected activity under § 1981 when she complains about or otherwise opposes conduct that she reasonably believes to have violated § 1981. See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990); Blythe v. City of New York, No. 08-CV-2843, 2013 WL 3990772, at *12 (E.D.N.Y. Aug. 5, 2013). Section 1981 prohibits workplace conduct that creates a hostile work environment. Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). Defendants argue that Plaintiff's complaints regarding Hill's comments do not, as a matter of law, constitute protected activity because Plaintiff cannot reasonably have believed that those comments created a hostile work environment.

A hostile work environment exists where conduct is "severe or pervasive enough to create an objectively hostile or abusive work environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).[8] A plaintiff may show that "a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working

---

[7] In analyzing a § 1981 claim for retaliation, courts apply the same standards used to evaluate Title VII retaliation claims. See, e.g., Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010); Barbosa, 716 F. Supp. 2d at 217.

[8] In analyzing a § 1981 hostile-work-environment claim, courts apply the same standards used to evaluate Title VII hostile-work-environment claims. See, e.g., Patterson v. County of Oneida, 375 F.3d 206, 225-27 (2d Cir. 2004).

9

environment." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000) (citation and internal quotation marks omitted). "[C]ourts should examine the totality of the circumstances, including: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the victim's job performance." Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir. 2012) (citation, internal quotation marks, and alterations omitted).

Regardless of the severity or pervasiveness of the conduct, a hostile-work-environment claim premised on co-worker conduct lies only if the employer: (1) "failed to provide a reasonable avenue for complaint"; or (2) "knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." Howley v. Town of Stratford, 217 F.3d 141, 154 (2d Cir. 2000).

i. Severe and Pervasive

Plaintiff appears to have conceded, in consenting to the dismissal of her hostile-work-environment claims, that Hill's comments did not create a hostile work environment. Yet the reasonable-belief standard makes "'due allowance . . . for the limited knowledge possessed by most . . . plaintiffs about the factual and legal bases of their claims.'" Riegel v. New York ex rel. N.Y.S. Dep't of Transp., No. 05-CV-1503, 2008 WL 150488, at *7 (N.D.N.Y. Jan. 14, 2008) (quoting Moyo v. Gomez, 40 F.3d 982, 985 (9th Cir.1994)). Here, Hill called Plaintiff "uncivilized" in the context of berating and lecturing her about the difference between acceptable behavior in the United States and Iran—comments Plaintiff might reasonably have viewed as particularly racist and offensive given that Plaintiff was a long-time GE employee who had been in the United States for more than forty years and a citizen for more than thirty. Similar one-time comments have been

found to give rise to a reasonable belief that a hostile work environment existed.  See McDowell v. North Shore-Long Island Jewish Health Sys, Inc., 788 F. Supp. 2d 78, 82 (E.D.N.Y. 2011) (finding protected activity where plaintiff complained about co-worker calling him a "nigger"); Martin v. State Univ. of N.Y., 704 F. Supp. 2d 202, 228 (E.D.N.Y. 2010) (finding protected activity where plaintiff complained about a comment regarding an "Indian woman running the unit"); Adams v. Commonwealth of Pennsylvania., No. Civ. A. 03-1994, 2005 WL 851339, at *6 (E.D. Pa. Apr. 8, 2005) (finding protected activity where plaintiff complained that a co-worker had called him a "nigger").

     Defendants cite inapposite cases for the proposition that an employee cannot reasonably believe that a single comment creates a hostile work environment.  In Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1179-80 (2d Cir. 1996), the Second Circuit: (1) expressly refused to decide whether a single comment—without context—could give rise to a reasonable belief that a hostile work environment had been created; and (2) upheld a jury finding that the plaintiff did reasonably believe that the comment at issue created a hostile work environment, because, *inter alia*, it was made by a co-worker in the context of ordering the plaintiff to perform a task and the plaintiff could therefore have felt that she was being treated as a subordinate rather than an equal because of her gender.  Likewise, in this case, Plaintiff could have believed that Hill, who was not her supervisor and was not involved in the conversation regarding weight gain, was imperiously lecturing her on proper workplace behavior because of Plaintiff's race.  Moreover, the comment at issue in Reed regarding whether the plaintiff thought the co-worker's "pecker [wa]s getting in the way," id. at 1175, was less explicitly insulting and plaintiff-directed than the comments in this case.  All of the other cases cited by Defendants involved comments not directed at the plaintiff, see Butler v. Ala.

Dep't of Transp., 536 F.3d 1209 (11th Cir. 2008) (racist comment about drivers encountered on the way to lunch); Jordan v. Alternative Res. Corp., 458 F.3d 332 (4th Cir. 2006) (racist comment about D.C. snipers made in the context of watching the news), and two involved comments that were not even made in the presence of the employees for whom the comments were alleged to have created a hostile work environment, see Little v. United Techs., 103 F.3d 956 (11th Cir. 1997) (racist comment regarding white plaintiff's black supervisor); Silver v. KCA, Inc., 586 F.2d 138 (9th Cir. 1978) (racist comment regarding white plaintiff's black co-worker). Thus, the belief that the comments at issue in those cases created a hostile work environment was substantially less reasonable than Plaintiff's belief in this case.

### ii.  Defendant's Culpability

Defendants also argue that Plaintiff cannot have reasonably believed that their conduct was sufficiently culpable to give rise to an actionable hostile work environment. But the Amended Complaint contains facts plausibly suggesting a basis for Plaintiff to reasonably conclude that both of the alternative employer-culpability prongs were met. First, Plaintiff appears to have been unable to speak with her GE supervisors despite her efforts to do so, and there is nothing in the record suggesting that another avenue of complaint to GE was open to Plaintiff. Plaintiff could reasonably have believed that Defendants had failed to provide a reasonable avenue for complaining about a non-GID GE employee's conduct. Second, Plaintiff could reasonably have believed that Defendants' amorphous proposed remedial action—Plaintiff being able to avoid having contact with Hill if she so chose—as opposed to a firm commitment to move Hill's workspace or punish her in some way so as to deter future harassment, was inadequate.

### iii.  Complaints to GE

Defendants also contend that Plaintiff did not engage in protected activity with respect to GE because she "never complained to anyone at GE prior to her termination." Reply at 7. Defendants have cited no authority for the proposition that only an employee's direct complaints to a joint employer constitute protected activity. The Complaint alleges facts that plausibly suggest that Plaintiff's complaints might have been passed on to GE: Hill's comments were made in the presence of two co-workers, Plaintiff tried to inform her two GE supervisors of the comment,[9] Garcia was informed of her complaints, and GE decided to terminate her mere days after she complained.

Moreover, GE's assertion that Plaintiff never complained to anyone at GE is incorrect. Plaintiff alleges that she complained to Hill, a GE employee, about the discriminatory nature of Hill's comment. Protected activity may include complaints to the putative harasser about the harassing conduct. See Moncriffe v. Classique Interiors & Design Inc., No. CV 09-0986, 2011 WL 2224880, at *5 (E.D.N.Y. June 2, 2011). Plaintiff has therefore sufficiently alleged protected activity.

### b. Adverse Action

Defendants contend that Plaintiff has admitted that Garcia terminated her employment and has therefore admitted that GE did not take an adverse action against her. See Reply at 7-8. But, as discussed *supra*, Plaintiff alleges that GE made the decision to terminate her employment relationship with GE and thereby may have also directly caused the termination of her employment relationship with GID. GE's allegedly extensive involvement in Plaintiff's termination constitutes

---

[9] While Defendants correctly note that Plaintiff was not able to speak with her GE supervisors, it is entirely plausible that someone informed them that Plaintiff had attempted to speak with them about Hill's comments.

13

an adverse action. See Dupree v. UHAB, 2012 WL 3288234, at *10-11; Goodwin, 2005 WL 2647929, at *5; Nelson, 2004 WL 2978278, at *5. GE is not immunized from liability simply because Garcia informed Plaintiff that she had been terminated—Defendants have pointed to no authority supporting this shoot-only-the-messenger theory. And contrary to Defendants' contention, Plaintiff's admission that some of her GE managers claimed not to know about her termination is not dispositive as to whether anyone at GE played a role in that termination. See Reply at 7-8.

        c. Causation

Defendants argue that the temporal proximity between Plaintiff's complaints and her termination cannot establish causation. See Mem. at 11. Defendants misleadingly quote McDowell for the proposition that "'temporal proximity [between a protected activity and an adverse employment action] does not alone support an inference of causation.'" Mem. at 11 (alteration in original) (quoting Mcdowell, 788 F. Supp. 2d at 82). But McDowell held only that the "the temporal proximity [(three months)] of the events *in this case* does not alone support an inference of retaliation." 788 F. Supp. 2d at 82 (emphasis added). In the present case, Plaintiff was terminated six days after her first protected activity and two days after her second. This gap is far smaller than the three-month gap in McDowell and is more than sufficient to create an inference of causation. See Reed, 95 F.3d at 1178 (finding sufficient evidence of causation where a "mere" twelve days elapsed between plaintiff's protected activity and her termination); Mazurkiewicz v. N.Y.C. Health & Hosps. Corp., No. 09 Civ. 5962, 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010) (noting that a gap of less than two months between protected activity and an adverse action generally gives rise to an inference of causation).

Moreover, contrary to Defendants' assertion that Plaintiff has offered "nothing" other than

14

temporal proximity as evidence of causation, Plaintiff has pointed to the procedurally irregular manner in which GE terminated her employment: rather than providing Garcia with the customary two months' notice, GE waited to inform him until the very day it terminated Plaintiff's GE employment.  Mem. at 11.  This is evidence that GE's proffered explanation for Plaintiff's termination, "budgetary reasons," was pretext for retaliation.  See Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1226-27 (2d Cir. 1994) (finding sufficient evidence of discriminatory intent where employer's treatment of plaintiff violated its own policy); Bonura v. Chase Manhattan Bank, N.A., 795 F.2d 276, 277 (2d Cir. 1986) (same).  Plaintiff has thus sufficiently alleged causation.

       *3. Conclusion*

Plaintiff has alleged facts plausibly suggesting that GE was her joint employer and that all of the elements of a § 1981 retaliation claim are met.  The Motion, to the extent it seeks dismissal of her § 1981 retaliation claim, is therefore denied.

**B. HRL Retaliation**

Plaintiff's HRL retaliation claim is viable for the same reasons as her § 1981 retaliation claim.  While both parties acknowledge that the definition of an employer under the HRL differs slightly from the definition under § 1981, Defendants have not argued that this distinction has any bearing on this case.  See Mot. at 14; Reply at 3-4.  Such an argument would be futile, as the employer test under the HRL is "substantially the same" as the test under § 1981.  Shipkevich v. Staten Island Univ. Hosp., No. 08-CV-1008, 2009 WL 1706590, at *3 (E.D.N.Y. June 16, 2009).  Four factors are considered: "(1) whether the proposed employer had the power of selection and engagement over the employee; (2) whether the proposed employer made the payment of wages and salary to the employee; (3) whether the proposed employer had the power of dismissal over the

employee; and (4) whether the proposed employer had the power to control the employee's conduct." Gallagher v. Gallagher, 130 F. Supp. 2d 359, 363 (N.D.N.Y. 2001). The fourth factor is given the most weight. Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). For the reasons discussed *supra*, Plaintiff has alleged facts plausibly suggesting that the third and fourth factors weigh in favor of deeming GE her employer. This is sufficient. See Shipkevich, 2009 WL 1706590, at *3 (finding supervision of plaintiff by entity sufficient to establish employment relationship); Gore v. RBA Group, Inc., No. 03-CV-9442, 2008 WL 857530, at *3 n.4 (S.D.N.Y. Mar. 31, 2008) (finding supervision of plaintiff by defendant sufficient to establish an employment relationship even where defendant did not pay plaintiff). Because HRL retaliation claims are otherwise governed by the same standards as § 1981 retaliation claims, see Arrocha v. City Univ. of N.Y., 878 F. Supp. 2d 364, 379 (E.D.N.Y. 2012), the Motion, to the extent it seeks dismissal of Plaintiff's HRL retaliation claim, is denied for the reasons discussed *supra*.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion (Dkt. No. 6) is **GRANTED in part** and **DENIED in part**; and it is further

**ORDERED**, that the Complaint's (Dkt. No. 1) First Claim (for discrimination and hostile work environment in violation of § 1981) and Third Claim (for discrimination and hostile work environment in violation of the HRL) are **DISMISSED**; and it is further

**ORDERED**, that Defendant's Motion (Dkt. No. 6), to the extent it seeks dismissal of Plaintiffs' Second Claim (for retaliation in violation of § 1981) and Fourth Claim (for retaliation in violation of the HRL), is **DENIED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:     September 11, 2013
           Albany, NY

_____
Lawrence E. Kahn
U.S. District Judge