**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SOHEILA HEXEMER,
                       Plaintiff,

     v.                                                 12-CV-1808
                                                            (LEK/CFH)
GENERAL ELECTRIC COMPANY, et al.,
                       Defendants.

---

**APPEARANCES:**                                   **OF COUNSEL:**

THE OTTINGER FIRM, P.C.               ROBERT W. OTTINGER, ESQ.
Attorneys for Plaintiff
401 Park Avenue South
New York, New York 10016

INGRAM YUZEK GAINEN CARROLL     DAVID G. EBERT, ESQ.
       & BERTOLOTTI, LLP
Attorneys for Defendant
250 Park Avenue, 6th Floor
New York, New York 10177

**MEMORANDUM, DECISION & ORDER**

     Plaintiff Soheila Hexemer ("Hexemer") brought an action against defendants, General Electric Company, GID Global, LLC and Jose Garcia, alleging violations of retaliation pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) et seq, and the New York State Human Rights Law. Am. Compl. (Dkt. No. 40). Currently pending before the Court is a motion to withdraw filed under seal by Hexemer's counsel. Dkt. No. 60. Hexemer has opposed the motion. Dkt. No. 61. Defendants have filed no opposition. For the reasons stated below, the motion to withdraw is denied.

**I. Background**

     Plaintiff filed the present action with the Northern District of New York on December 10,

2012 (Compl. (Dkt. No. 1)), and subsequently filed an amended complaint on March 31, 2014 (Am. Compl. (Dkt. No. 40)). Defendants filed an answer to the complaint on October 18, 2013 (Dkt. No. 20), and subsequently filed an amended answer on March 27, 2014 (Dkt. No. 38). Defendants filed a motion to dismiss on January 31, 2013 (Dkt. No. 6), which was opposed (Dkt. No. 12), and ultimately granted in part (Dkt. No. 16). A Uniform Pretrial Scheduling Order ("UPSO") was entered by the Court on January 16, 2014. Dkt. No. 26. Discovery was due by April 14, 2014 and motions were due by July 14, 2014. Id. Mandatory mediation occurred on May 27, 2014 and the case did not settle. Dkt. No. 46. Accordingly, the case continued progressing pursuant to the deadlines previously outlined in the Court's UPSO. Id.

On June 17, 2014, pursuant to Hexemer's request, the undersigned extended the deadlines for discovery and the filing of motions to July 14, 2014 and August 18, 2014 respectively. Dkt. Nos. 52-53. The discovery deadline expired. On August 15, 2014, pursuant to defendants' request, the motion deadline was again extended through September 5, 2014. Dkt. No. 58. On September 8, 2014, the undersigned ordered a telephone conference regarding the issue of Hexemer's representation. See Dkt. Activity Sheet entry dated 9/8/2014. On September 16, 2014, a telephone conference was held with all parties whereupon Hexemer's counsel sought withdrawal, and Hexemer objected to that request. See Dkt. Activity Sheet Text Minute Entry dated 9/16/2014. A motion briefing schedule was set. Dkt. No. 59. The deadline for dispositive motions in the case was adjourned without date, pending the outcome of the present motion. Id. The motion, response, and reply were all timely filed under seal with the undersigned. Dkt. Nos. 60-61.

Without revealing information protected by attorney-client privilege, the pertinent facts are as follows. "This is a retaliation case. The core allegation is that Ms. Hexemer complained

about discrimination on October 29, 2012 and was fired on October 31. The close nexus between her complaint and the subsequent termination initially cause[d counsel] to believe that Ms. Hexemer had a strong case." Ottinger Decl. ¶ 4.[1] Newly produced discovery, specifically an internal e-mail between defendants, given to Ms. Hexemer's counsel after the close of discovery would seem to indicate that Hexemer's termination had previously been decided upon due to a lack of funding for her position. Id. ¶¶ 11-14. The authenticity of the e-mail was confirmed by plaintiff's counsel. Id. ¶ 16.

Counsel contends that, based upon the newly-discovered evidence, there has been a conflict of interest created because they cannot in good faith move forward with litigation advancing what they would quantify as a meritless claim. Further, counsel alleges that another conflict of interest exists because they cannot come to agreement with Hexemer about litigation or settlement strategies.

## II. Discussion

Withdrawal of counsel in a civil case is governed by Local Rule 83.2(b) which provides:

> An attorney who has appeared may withdraw only upon notice to the client and all parties to the case and an order of the Court, upon a finding of good cause, granting leave to withdraw . . . Unless the Court orders otherwise, withdrawal of counsel, with or without the consent of the client, shall not result in the extension of any of the deadlines contained in any case management orders . . . or the adjournment of a trial ready or trial date.

N.D.N.Y.L.R. 83.2(b). Hexemer opposes the motion.

In determining whether good cause has been shown for withdrawal, federal courts look to

---

[1] Initially there was a Title VII discrimination claim alleged as well, but it was subsequently withdrawn. Hexemer Resp. (Dkt. No. 61) at 1.

the various codes of professional responsibility.  See Whiting v. Lacara, 187 F.3d 317, 321 (2d Cir. 1999) (referring to the Code of Professional Responsibility to illustrate both mandatory and permissive situations for withdrawal as counsel); Heck-Johnson v. First Unum Life Ins. Co., No. 01-CV-1739 (GLS/RFT), 2006 WL 1228841, at *4 (N.D.N.Y. May 4, 2006) (citing to the New York State Code of Professional Responsibility, which is based upon the Model Code).  The Court must analyze "the reasons for withdrawal and the impact of the withdrawal on the timing of the proceeding."  Karimian v. Time Equitites, Inc., No. 10-CV-3773 (AKH/JCF), 2011 WL 1900092, at *2 (S.D.N.Y. May 11, 2011).  "The court must ensure . . . that the prosecution of the suit is not disrupted by the withdrawal of counsel."  Brown v. Nat'l Survival Games, Inc., No. 91-CV-221, 1994 WL 660533, at *3 (N.D.N.Y. Nov. 18, 1994) (citation omitted).

In this case, there is no dispute that Hexemer's counsel has satisfied the notice requirement.  With respect to the good cause requirement, counsel primarily seeks withdrawal based on the fact that newly-discovered evidence, they claim, render plaintiff's retaliation claim meritless.  Accordingly, counsel does not want to put forth a frivolous argument as they contend that it would be in contravention of the Code.  In addition, counsel profferss that they value the case much differently than Hexemer, which has prevented any meaningful settlement discussions from taking place.

There is case law that at first blush appears to support counsel's position that good cause exists for withdrawal where the parties disagree on how the litigation should proceed.  However, upon further review, the procedural posture of the cases and conflicts between the client and attorney appear distinguishable from the case at bar.  The Second Circuit held that, upon appeal of the district court's decision to grant defendants' motion for summary judgment and the motion to withdraw by plaintiff's counsel, and the district court's decision to deny plaintiff's

request to appoint new counsel, the appeal should be denied. Mulero v. City of Bridgeport Bd. of Educ., 448 Fed. App'x 129 (2d Cir. 2011). The court concluded that plaintiff's counsel "ha[d] good cause to withdraw under Rule 1.16(c)(6) of the New York Rules of Professional Conduct[2]," where the "complaint against the [defendant] was likely meritless . . . ." Id. at 131. Upon its review, the Second Circuit discussed the fact that the plaintiff was "unwilling[] to heed the advice [of his counsel] concerning the merits and propriety of continuing with the action . . . . ," where the counsel "determined that [plaintiff's] claims against the [defendant] lacked merit." Id. at 130-31; see also Heck-Johnson, 2006 WL 1228841, at * 3-4 (N.D.N.Y. May 4, 2006) (citations omitted) (holding that "[w]hen a client insists on dictating legal strategies to the lawyer to the extent that their relationship significantly deteriorates, the situation may constitute the functional equivalent of a conflict of interest establishing good cause to withdraw."). Counsel's motion to withdraw was also granted in the Heck-Johnson case because, despite the fact "that substitution of counsel four years after the litigation was commenced and at the dispositive motion stage will inevitably delay progress of the case," the court found "[i]t [wa]s . . . readily apparent that there [wa]s a fundamental conflict between the [client and attorney] concerning legal strategy . . . [and] further delay [wa]s an insufficient reason to deny the motion." 2006 WL 1228841, at *4.

However, it is important to note that both of those cases were in very different procedural postures than the case at bar. In Mulero, a summary judgement motion had already been

---

[2] The Rule states in pertinent part that "a lawyer may withdraw from representing a client when: . . . the client insists upon presenting a claim . . . that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law." N.Y. St RPC Rule 1.16(c)(6). This appears to formerly have been DR-2-110 in New York's Code of Professional Responsibility. See Heck-Johnson, 2006 WL 1228841, at *3-4.

granted dismissing the case. Accordingly, the court was not being asked to make a merits determination in the context of deciding whether or not counsel's motion to withdraw was appropriate. That decision had already been rendered, upon a presentation to the court of the relevant evidence used to support the motion for summary judgment. This is distinguishable from the present case, where dispositive motions have not yet been filed and counsel is instead asking the undersigned to issue a premature decision on a dispositive issue reserved for the District Judge.

    Further, in Heck-Johnson, while dispositve motions were pending, the defendant had already retained new counsel who was willing to step into the case. Accordingly, while the court noted the length of time that the litigation had been pending, it was also important to note that there would not practically be any delay in the progression of the case because the defendant did not need time to seek out new representation. Further, there was not the unknown of whether or not the defendant would be able to retain counsel, as that was already answered in the affirmative. Conversely, in this case, there is not substitute counsel already retained and waiting to step in and there is no guarantee that substitute counsel could otherwise be retained. Withdrawal would definitely result in a disruption in the steady progression of the case. Cf. Am. Generics, Inc. v. Komal Mohan & Assoc., No. 97-CV-654 (RSP/DNH), 1998 WL 315082, at *2 (N.D.N.Y. Jun. 8, 1998) (holding that prejudice would not occur where, even though the case was trial ready, "th[e] court's docket of criminal cases and civil lawsuits filed prior to American's would prevent a trial from taking place in the next several months."). While this disruption may still arguably be insufficient to result in prejudice, what is most important to note is that, if counsel's motion was granted on the grounds counsel proffers, namely that the remaining retaliation claim was frivolous, it would foreclose the possibility of

-6-

any subsequent attorney from taking the case, or the court being able to appoint counsel for plaintiff.  This would have a significant negative impact on the case.

Also, it appears that in cases where attorneys are contending a conflict of interest with their clients due to disagreements in litigation strategy, the Second Circuit has been concerned with whether the perceived conflict with the client opens the attorney up to unfair liability by forcing the attorney to continue to represent the client while simultaneously exposing the attorney "to a malpractice action or to potential Rule 11 or other sanctions." Whiting v. Lacara, 187 F.3d 317, 323 (2d Cir. 1999); see also Id. at 322 (explaining that the criminal defendant's "desire to both dictate legal strategies to his counsel and to sue counsel if those strategies are not followed places [counsel] in so impossible a situation that he must be permitted to withdraw.").  In Lacara, the criminal defendant "insisted upon pressing claims [that were] already dismissed by the district court and calling witnesses [the attorney] deemed detrimental to [the criminal defendant's] case."  Id. at 322.  In circumstances where clients are pressuring their attorneys to make patently frivolous complaints and arguments, any fear of a malpractice action lodged against the attorney by the client should be slim as, in those circumstances, "such . . . action[s] would have no merit." Id. at 323.  However, where such claims are "actively pursued . . . even frivolous malpractice claims can have substantial collateral consequences."  Id. at 323.

This case is distinguishable from the situation presented in Lacara.  Again, because the claims which the client wished for the attorney to present in Lacara were already dismissed by the court; the merits of the underlying claims were not to be determined in the course of the counsel's motion to withdraw.  Also, the tensions in the present situation do not appear to rise anywhere near the level articulated in Lacara.  There is no doubt that Hexemer is

-7-

frustrated at the fact that her case has been handled by multiple attorneys at the firm; one of her causes of action which, in retrospect, may have been her strongest was discontinued; and settlement talks have resulted in a noted difference of opinion. However, attorneys and their clients may disagree. Disagreements do not automatically rise to the level of a conflict of interest. Hexemer still ultimately wants her claims to continue forward under the expertise of her counsel. There have been no threats of malpractice actions.

Without commenting on the merits of the claim, as that would not be appropriate given the undersigned's jurisdiction and the point of the present motion, while there may be disagreements between Hexemer and her counsel about the strength of her case, it does not seem to have been rendered frivolous on the record before the Court. Establishing "[a] prima facie case of retaliation under Title VII requires a plaintiff to show: (1) she participated in a protected activity known to the defendant; (2) she suffered an adverse employment action; (3) a causal connection exists between the protected activity and the adverse action." Sherman v. Nat'l Grid, 993 F. Supp. 2d 219, 227 (N.D.N.Y. 2014) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996) (citations omitted)). Retaliation claims brought pursuant to Title VII are subject to the McDonnell Douglas balancing test. See e.g., Terry v. Ashcroft, 336 F.3d 18, 140 (2d Cir. 2003). "If the plaintiff proves her prima facie case, the burden of production shifts to the employer to proffer a legitimate non-discriminatory reason for the adverse action . . . If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's legitimate, nondiscriminatory reason is pretextual." Meadors v. Ulster County, 98 F. Supp. 2d 83, 99 (N.D.N.Y. 2013) (citations omitted).

Counsel's blanket statements alluding to the fact that the claim is now meritless and

frivolous overstate the impact of the new factual information received.  First, it appears that counsel proffers that temporal proximity is the only way to show a causal connection required to establish a prima facie case of retaliation.  However, this is not wholly accurate. "[C]ausal connection can be established indirectly by showing that the protected activity was followed closely by discriminatory treatment or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct, or directly through evidence of retaliatory animus directed against a plaintiff by the defendant." Pellegrini v. Sovereign Hotels, Inc., 740 F. Supp. 2d 344, 354 (N.D.N.Y. 2010) (citations omitted).  Here, because it may be possible that counsel can establish a causal connection directly through evidence of retaliatory animus, the new factual evidence is not dispositive of the causal connection issue.  Further, to the extent counsel contends that this information results in a legitimate, non-discriminatory reason for termination, that argument is also only partially availing.  The burden shifting test for retaliation does not terminate at the employer's providing a legitimate, nondiscriminatory reason, as plaintiff's counsel seems to allege.  The burden shifts back to the plaintiff.  Accordingly, despite what counsel appears to argue, the discourse regarding this claim is not over at that juncture.

    Counsel has failed to establish good cause for its withdrawal from this case.  While counsel contends that the differences it has with Hexemer regarding the valuation of the case and the probability of success at trial result in an irreconcilable conflict of interest, the undersigned views the situation differently.  Most importantly, counsel's contentions that the case has been rendered frivolous are inaccurate.  Further, this is not the appropriate venue to seek a merits determination.  Moreover, as there is no substitute counsel identified, relieving counsel and providing Hexemer with additional time to retain new representation

would only delay and substantially prejudice Hexemer as there is no guarantee that she could retain anyone else, especially if, given the reasons discussed supra, the undersigned grants the motion and essentially deems the lawsuit meritless.

    Less compelling, but still important to discuss, is the age of the case. Given its present procedural posture, namely the fact that discovery is complete and motion practice will soon conclude rendering the case trial ready, prejudice will result if Hexemer is left without representation at this stage in the litigation. Once the motion deadline passes, the Court generally acknowledges the need for appointed counsel given the complexities of pretrial submissions and ultimately conducting the trial. As that juncture is fast approaching, it would be counterproductive to represent that this and subsequent stages in the litigation should be braved by pro se plaintiffs without the guidance of counsel. Cf. Am. Generics, Inc., 1998 WL 315082, at *2.

### III. Conclusion

Wherefore, it is hereby **ORDERED** that:

1. The motion by The Ottinger Law Firm to withdraw as counsel for plaintiff Hexemer (Dkt. No. 60) is **DENIED**.

2. Dispositive motions shall be filed with **forty-five (45)** days of the entry of this Memorandum-Decision & Order, with responses and replies filed in accordance with the Federal Rules.

**IT IS SO ORDERED**.

Dated: October 28, 2014
       Albany, New York

_____
Christian F. Hummel
U.S. Magistrate Judge