UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

SOHEILA HEXEMER, : Index No. 12-cv-1808 (LEK/CFH)

                Plaintiff,

v. : **AFFIDAVIT OF JARED YORK**
                                                         **IN SUPPORT OF MOTION**
GENERAL ELECTRIC COMPANY, GID : **FOR SUMMARY JUDGMENT**
GLOBAL, LLC and JOSE GARCIA, in his
professional and individual capacities,

                Defendants.

------------------------------------------------------------x

STATE OF NEW YORK   )
                                  ss.:
COUNTY OF NEW YORK )

       **JARED ADAM YORK**, being duly sworn, deposes and says:

       1.     I am an employee of defendant General Electric Company ("GE") and submit this affidavit in support of the defendants' motion for summary judgment. I have personal knowledge of the facts to which I attest.

**GE and GRUPO Master Service Agreement**

       2.     I am currently Manager of the Operation and Maintenance Manuals Group at GE. I oversee and manage the production of operation and maintenance manuals that are delivered to GE customers. I was also serving in this position at the time plaintiff Soheila Hexemer ("Hexemer") was terminated by GID Global, LLC ("GID").

       3.     During the time Hexemer was employed by GID, I had four direct reports- Kathleen Bokan ("Bokan"), Peter Nelli ("Nelli"), Sarah Hill ("Hill"), and Scott Powers ("Powers"). Bokan, Nelli, Hill, and Powers were all GE employees.

1

4.      In my current position, I am responsible for working with Grupo de Integracion Digital SA de CV ("GRUPO") to the extent that they provide services to my group under the Master Service Agreement between GRUPO and GE ("MSA").

5.      GRUPO provides services by printing the manuals at their facility in Mexico and delivering them to GE customers. It is my understanding that GRUPO works with a vendor, GID, to staff specific projects for GE.

6.      In fulfilling a scope of work, GRUPO can staff the project as it sees fit, using any number of people it deems appropriate. I am not involved at all in how it staffs the project. As long as the work is done properly and on time, it makes no difference to me or to GE which or how many employees GRUPO assigns to a GE project. GE pays GRUPO a set amount to accomplish a task regardless of how many employees work on it.

7.      I do not supervise any of the GID employees hired by GRUPO to work on projects relating to my group. If there is an issue involving any of the GID employees, I speak directly with GRUPO about the issue. I do not discipline or otherwise manage any GID or other non-GE employee.

8.      In fact, I rarely interact with GID employees at all, as they either work independently or with direction from their GID supervisors. My interaction with GID employees is limited to specific questions that are of an operational nature or simple questions that a GID employee can more quickly answer since he or she is on-site. Even interactions of this nature, however, are relatively rare.

9.      GID employees working on GE projects receive GE email addresses. Their email address, however, always includes the designation "Non-GE" after their email address in an e-mail's heading, whether they are the sender or recipient.

10. GID employees receive green security badges, while GE employees have blue security badges.

**October 25 Incident**

11. I did not witness the incident between Hexemer and Hill that occurred on October 25, 2012. I became aware of the incident because Hill came to speak with me about it. Hill told me that Hexemer had made a joke about gaining weight to some of the other GID employees, Jake Tefft and Joe Hunt, while standing outside of Hill's cubicle, and Hill said something to the effect that Americans tend to be sensitive about their weight. It is my understanding that at this point, Hexemer became very upset, loudly crying and raising her voice in the shared workspace and loudly and repeatedly accused Hill of being prejudiced. An email I received from Sarah Hill after our conversation documenting the incident is attached as Exhibit A.

12. In response, I instructed Hill to give Hexemer space and allow the situation to calm down. I also spoke with my manager, Douglas Beitch, about the incident, and started to draft an email I intended to send to Jeannine Parkes, my HR manager ("Parkes"). This email is attached as Exhibit B.

13. I alerted Jose and Guillermo Garcia, the managers of GRUPO, about the incident by e-mail on October 30, 2012. I explained that Hexemer was expected to address any issues that arose with her management, meaning GID, and that I found the way she had conducted herself in the office during the October 25 incident, raising her voice and acting unprofessionally in general, not appropriate. I asked them to discuss this with Hexemer, however, I did not ask them to terminate her or suggest any other specific course of action. This email is attached as Exhibit C.

14. Shortly thereafter, I received a phone call from Jose and Guillermo Garcia. They informed me that they had already decided to terminate Hexemer's employment irrespective of the October 25 incident. They gave no further explanation, nor did I ask for any, since staffing decisions are completely within GID's purview.

15. On October 31st, Hexemer came to my office with Bokan and Nelli after she received her termination notice from GID. I invited all three of them in to my office. Hexemer was very emotional and expressed that she was unhappy about GID's decision. She accused me of discriminating against her for her Iranian background and contractor status, which, as I told her, was untrue. I stated that she was not one of the employees I am in charge of overseeing, and that I had contacted GID to express my concern with the October 25th incident and to ask them to address it. I further stated that she should discuss further concerns regarding her termination with her employer, GID.

16. After the meeting with Hexemer, I sent an email recounting what had occurred to Parkes. This email is attached as Exhibit D. I also asked the other participants in that meeting, Bokan and Nelli, to send Parkes their accounts of the meeting. Their emails are attached as Exhibit E.

Jared York

Sworn to before me this
12th day of December 2014

Notary Public

VANITA R. DOWNEY
Notary Public, State of New York
Qualified in Rensselaer County
No. 01DO6027261
Commission Expires June 28, 20 15

4