UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

SOHEILA HEXEMER,	:	Index No. 12-cv-1808 (LEK/CFH)
	:
               Plaintiff,	:
	:
     v.	:	**RULE 7.1(A)(3) STATEMENT OF**
	:	<u>**UNDISPUTED MATERIAL FACTS**</u>
GENERAL ELECTRIC COMPANY, GID	:
GLOBAL, LLC and JOSE GARCIA, in his	:
professional and individual capacities,	:
	:
               Defendants.	:
-----------------------------------------------------------------x

       Pursuant to Rule 7.1(a)(3) of the Local Rules of the Northern District of New York, defendants, General Electric Company ("GE"), GID Global, LLC ("GID"), and Jose Garcia ("Garcia," and with the other defendants, "Defendants"), respectfully submit this statement in support of Defendants' motion for summary judgment.

**<u>Master Transaction Agreement</u>**

       1.     GE and Grupo de Integracion Digital SA de CV ("GRUPO") are parties to a Master Service Agreement ("MSA"). Affidavit of Jose Garcia, sworn to December 11, 2014 ("Garcia Aff.") Ex. D; ¶ 8.

       2.     Garcia and his brother Guillermo Garcia are owners and general managers of GRUPO. Garcia Aff. ¶ 7; Deposition transcript of Jose Garcia, dated June 12, 2014 ("Garcia Dep.") at 65:15-17, a copy of which is attached to Declaration of David G. Ebert, sworn to December 12, 2014 ("Ebert Decl.") as Exhibit D.

       3.     GRUPO uses GID as its vendor to procure personnel to render the services to GE. Garcia Aff. ¶ 10; Garcia Dep. 12:4-8; 112:18-23.

1

4. Under the MSA, specific projects are defined by a Statement of Work ("SOW"), Purchase Service Agreement ("PSA"), or Purchase Order ("PO"). Garcia Aff. Ex. D §1.1; ¶ 9; Garcia Dep. 13:13-17; 13:23-14:4; 15:2-8; 17:25-18:2.

5. GRUPO and GID determine the project's logistics, such as how to staff the project, where to base the project, and the expected timeframe for completion. Garcia Aff. ¶ 11; Affidavit of Jared York, sworn to December 12, 2014 ("York Aff.") ¶ 6; Garcia Dep. 31:10-23; 33:1-3; 111:14-15; 116:22-117:5; Deposition transcript of Jared York, dated June 11, 2014 ("York Dep.") at 18:2-10, a copy of which is attached to the Ebert Decl. as Exhibit E.

**The Database Project**

6. In late 2010, GE informed GRUPO that GE had a new project involving its operation and maintenance manuals (the "Database Project"). Garcia Aff. ¶ 12; Garcia Dep. 25:22-26:4.

7. The project was estimated to start at the beginning of the following year and end in approximately a year. Garcia Aff. ¶ 12; Garcia Dep. 39:1-3; 114:25-115:4.

8. Jake Tefft ("Tefft"), a GID employee, asked plaintiff Soheila Hexemer ("Hexemer") on behalf of GID if she would be interested in working on the Database Project, i.e. managing a database of GE documents. Garcia Aff. ¶ 13; Deposition transcript of Soheila Hexemer, dated June 11, 2014 ("Hexemer Dep.") at 91:12-20, a copy of which is attached to the Ebert Decl. as Exhibit C; Garcia Dep. 38:15-17.

9. On November 19, 2010, Garcia in an email formally offered Hexemer the position working on the Database Project and advised her of the proposed hourly wage, vacation time, and benefits. Garcia Aff. Ex. E; ¶ 14.

2

10. Hexemer and Garcia negotiated her hourly wage and benefits. Garcia Aff. Ex. E; ¶ 14.

11. On December 14, 2010, Hexemer sent the signed GID employment agreement ("Employment Agreement") to Garcia. Garcia Aff. Ex. F; Hexemer Dep. 92:22-93:2.

12. The GID employment agreement states that Hexemer would be an employee of GID, not GE:

> Despite the fact that Employee's office may be located at the facilities of the General Electric Company or a subsidiary or affiliate of the General Electric Company (collectively, "GE") and that Employee may perform business functions for the benefit of GE, Employee understands and acknowledges that Employee is an employee of the Company and not of GE. Garcia Aff. Ex. F.

13. Garcia told Hexemer that her first day would be January 3, 2011 and that when she arrived at GE's Schenectady facility to "call Jake Tefft, he is our PSA team leader. He will take care of you." Garcia Aff. Ex. G; ¶ 16.

14. Hexemer worked at GE's Schenectady facility, along with other GID employees, such as Tefft, Joe Hunt ("Hunt"), and Thomas Zalewski ("Zalewski"). Ebert Decl. Ex. A ¶ 30; Hexemer Dep. 60:9-10; Garcia Aff. ¶ 17.

15. GID employees' GE badges were green while GE employees' badges were blue. Garcia Aff. ¶ 18; York Aff. ¶ 10; Garcia Dep. 102:14-15.

16. GID employees were assigned GE email addresses, but GID employees' email addresses always showed the designation "Non-GE" after the email address, whether the GID employee was the sender, recipient, or copied person on an email. Garcia Aff. Ex. H, J, K, M; ¶ 19; York Aff. ¶ 9; Garcia Dep. 102:6-13; York Dep. 23:7-16.

17. During Hexemer's employment with GID, she was supervised by Jake Tefft, a GID employee. Garcia Aff. ¶ 21; Garcia Dep. 63:20-64:8.

3

18. Garcia also supervised Hexemer's work. Garcia Aff. ¶ 22; Garcia Dep. 63:16-19.

19. Hexemer received all of her paychecks and paystubs from GID. Ebert Decl. Ex. A ¶ 12; Hexemer Dep. 90:6-8; Garcia Aff. ¶ 23; Ex. H.

20. When there was a problem with one of Hexemer's pay stubs in February 2012, she only e-mailed Jose and Guillermo Garcia regarding the issue. Garcia Aff. Ex. H; ¶ 23.

21. When Hexemer wanted to take time off or was sick, she only contacted GID for permission. Hexemer Dep. 75:10-13.

22. On April 10, 2011, Hexemer asked to take April 13 to April 29 off from work. Garcia Aff. Ex. I; ¶ 24.

23. This request was sent by email to only Jose and Guillermo Garcia and Tefft. No GE person was copied on this email. Garcia Aff. Ex. I; ¶ 24.

24. On September 4, 2012, Hexemer asked to take September 26 to October 11 off from work. Garcia Aff. Ex. J; ¶ 25.

25. This request was sent by email to only Jose and Guillermo Garcia. No GE person was copied on this email. Garcia Aff. Ex. J; ¶ 24.

26. Around July 2011, a GE manager informed GRUPO that Hexemer and another GID employee, Daniela Casavantes ("Casavantes"), were having difficulty working together and requested that GRUPO address the situation. Garcia Aff. Ex. K; ¶ 26.

27. The GE manager did not address the situation with Hexemer or Casavantes directly. Garcia Aff. ¶ 26, Ex. K.

28. GID addressed the situation between Hexemer and Casavantes by moving Casavantes to a different project. Garcia Aff. ¶ 26.

472965_8/02244-0002

29. By the end of 2011, the original projected deadline, the Database Project was still incomplete. Garcia Aff. ¶ 27; Garcia Dep. 115:2-7.

30. GE and GRUPO extended the Database Project's PO for approximately 6 more months, until June of 2012. Garcia Aff. ¶ 27; Garcia Dep. 43:24-25; 115:4-6.

31. The budget for the PO was also increased in direct proportion for the corresponding period. Garcia Aff. ¶ 27; Garcia Dep. 44:3-19.

32. The Database Project was finished in May 2012. Garcia Aff. ¶ 27; Garcia Dep. 52:15-18; 115:6-7.

33. The budget received from GE decreased starting the following month, June 2012. Garcia Aff. Ex. L; ¶ 27.

**The Table of Contents Project**

34. On May 21, 2012, Garcia emailed his brother suggesting that they try to place Hexemer on another project, and if they were unsuccessful by October, they would terminate her employment with GID. Garcia Aff. Ex. A; ¶ 31.

35. Guillermo Garcia replied in an email the same day agreeing that they should try this plan. Garcia Aff. Ex. A; ¶ 31.

36. After the end of the Database Project, Garcia temporarily assigned Hexemer to provide general support for GRUPO's information management team in Mexico, which was working on a table of contents project within the Schenectady facility (the "TOC Project"). Garcia Aff. ¶ 32; Garcia Dep. 53:23-54:1; 54:8-16; 54:19-24; 61:2-10; 83:22-25; 115:13-17.

37. Hexemer had previously told Garcia that she was able to work with various computer programs and software, other than the database work she was hired to perform. Garcia Aff. ¶ 33; Garcia Dep. 61:22-62:8.

5

38.   Hexemer lacked the computer abilities that she had claimed she had and that she was not suitable for supporting the TOC project. Garcia Aff. ¶ 34; Garcia Dep. 62:11-15; 84:9-15; 88:6-10; 115:18-21.

39.   By June 2012, Garcia decided that Hexemer could not stay indefinitely on TOC project and that, per the May 21 plan, he would have to terminate her by October unless a new project was found for which her skills were better suited. Garcia Aff. ¶ 35; Garcia Dep. 116:1-8.

**The October 25 Incident**

40.   On October 25, 2012, Hexemer, Jake Tefft, and Hunt were engaged in a conversation near the work area of Sarah Hill ("Hill"), a GE employee. Ebert Decl. Ex. A ¶¶ 25-26; Hexemer Dep. 34:16-17.

41.   Hexemer made a remark to Tefft and Hunt about gaining weight from sitting at their desks. Ebert Decl. Ex. A ¶ 25.

42.   At some point, Hill became involved in the conversation. Ebert Decl. Ex. A ¶ 26.

43.   Hexemer became upset by some of the comments made by Hill. Ebert Decl. Ex. A ¶ 27.

44.   Hexemer stated that she was an American citizen also and that if her nationality bothered Hill, she would resign. Ebert Decl. Ex. A ¶ 27; Hexemer Dep. 54:19-24.

45.   Hexemer went to speak with Kathleen Bokan ("Bokan") and Peter Nelli ("Nelli"), two GE employees, about the incident. Ebert Decl. Ex. A ¶ 28; Hexemer Dep. 59:16-25.

46.   Bokan and Nelli were not in their cubicles at the time. Ebert Decl. Ex. A ¶ 28; Hexemer Dep. 59:16-25.

47.   After the incident, Hexemer spoke with GID employee Tefft. Ebert Decl. Ex. A ¶ 29.

48. Tefft allowed Hexemer to go home early. Ebert Decl. Ex. A ¶ 29.

49. Hexemer was not scheduled to work the next day, Friday. Ebert Decl. Ex. A ¶ 30.

50. When Hexemer returned to work on Monday, October 29, Tefft and Tomas Zalewski spoke with Hexemer about the October 25 incident. Garcia Aff. ¶ 39; Ebert Decl. Ex. A ¶ 30; Hexemer Dep. 62:17-63:12.

51. The following day, October 30, Hexemer left a message for Tefft informing him that she would be out sick. Ebert Decl. Ex. A ¶ 32; Hexemer Dep. 73:17-23.

52. Hill spoke with her GE supervisor, Jared York ("York"), about the incident. York Aff. ¶ 12; York Dep. 33:13-34:6.

53. Hill also sent York several emails recounting her version of the October 25 incident. York Aff. Ex. A; ¶ 11.

54. On October 30, 2012, York sent an email to Jose Garcia and Guillermo Garcia recounting his understanding of the October 25 incident. York Aff. Ex. C; ¶ 13; Garcia Aff. ¶ 40.

55. In the email, York stated that he was unhappy with how Hexemer had handled the situation on October 25, writing that "[i]f [Hexemer] was indeed offended by something Sarah said, I would expect her to take the appropriate course of action with her management." York asked that GID address the issue with Hexemer. York Aff. Ex. C; ¶ 14; Garcia Aff. ¶ 40.

56. York at no point, in this email or thereafter, requested that GID terminate Hexemer. York Aff. Ex. C; ¶ 13.

57. In response to York's October 30 email, Jose and Guillermo Garcia contacted York by phone on October 30. York Aff. ¶ 14; Garcia Aff. ¶ 42; York Dep. 56:7-12.

58.     Jose and Guillermo Garcia informed York that they had already previously decided to terminate Hexemer's contract, *irrespective* of the October 25 incident. York Aff. Ex. D; ¶ 14; York Dep. 56:21-57:2.

59.     York did not question this decision further as Hexemer was GID's employee and GE was not involved in GID's staffing decisions. York Aff. Ex. D; ¶ 14; York Dep. 18:6-10.

60.     On October 31, 2012, Hexemer returned to work. Ebert Decl. Ex. A ¶ 33.

61.     At around 3 pm, Garcia sent Hexemer an email notifying her that her employment would be terminated as of that date. Garcia Aff. Ex. M; ¶ 43.

62.     Garcia used the standard template for termination notices that GID uses for all terminations as the starting point of Hexemer's termination notice. Garcia Aff. ¶ 44; Ex. N.

63.     GID has an established process of giving employees notice of their termination the day they are terminated. Garcia Aff. Ex. O; ¶ 45; Garcia Dep. 85:13-21.

64.     After receiving notice of her termination, Hexemer went to York's office where Hexemer repeatedly accused York of discriminating against her as an Iranian and a contractor. York Aff. Ex. Ex. D, E; ¶ 15; Hexemer Dep. 76:16-18.

65.     York denied that he discriminated against Hexemer for being Iranian or a contractor. York Aff. Ex. D, E; ¶ 15.

66.     York informed Hexemer that he had notified GRUPO about his concern regarding the October 25 incident and disruption in the office and that if she wanted to further discuss her termination, she should do so with GRUPO. York Aff. Ex. D, E; ¶ 15.

67.     After she returned home, Hexemer called Garcia to discuss her termination. Ebert Decl. Ex. A ¶ 37; Hexemer Dep. 81:17-23.

8

68. Hexemer told Garcia she planned to file a lawsuit against GE and asked for Garcia's support. Garcia Aff. ¶ 47; Garcia Dep. 105:13-14.

69. Garcia volunteered to fly to New York to meet with Hexemer and discuss her concerns. Garcia Aff. ¶ 47; Hexemer Dep. 6:5; Garcia Dep. 107:6-11.

70. Garcia and Hexemer met on November 6, 2012 in New York over lunch. Ebert Decl. Ex. A ¶ 38; Hexemer Dep. 5:18-24; Garcia Aff. ¶ 48.

71. Garcia explained during the November 6, 2012 meeting that GID was unable to keep her due to budgetary reasons. Garcia Aff. ¶ 48; Garcia Dep. 108:25-109:25.

72. Hexemer surreptitiously tape-recorded this conversation without Garcia's knowledge or consent. Garcia Aff. ¶ 48; Hexemer Dep. 8:10-13; 11:11-13; Garcia Dep. 108:4-7.

Dated:  New York, New York
        December 12, 2014

                INGRAM YUZEK GAINEN CARROLL
                  & BERTOLOTTI, LLP


By: __s/ David G. Ebert_____
     David G. Ebert (debert@ingramllp.com)
     Christina Y. Kim (ckim@ingramllp.com)
*Attorneys for Defendants*
250 Park Avenue
New York, NY  10177
T. (212) 907-9600
F. (212) 907-9681

9