**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

SOHEILA HEXEMER,                                          No. 12-cv-1808 (LEK/CFH)

                              Plaintiff,

           v.

GENERAL ELECTRIC COMPANY, GID
GLOBAL, LLC and JOSE GARCIA, in his
professional and individual capacities,

                              Defendants.

---

**PLAINTIFF'S CORRECTED MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

**THE OTTINGER FIRM, P.C.**
401 Park Avenue South
New York, New York 10016
Telephone: (212) 571-2000
Facsimile: (212) 571-0505

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................ ii

Preliminary Statement ..................................................................................................... 1

Facts ................................................................................................................................. 2

   I.   Plaintiff's Employment With Defendants ............................................................. 2

   II.   Discriminatory Statements By A GE Co-Worker Towards Plaintiff ................... 3

   III.   Defendants Terminate Plaintiff Two Days After She Objected To The Proposed
       Remedy For the Discriminatory Comments ...................................................... 5

Procedural History ........................................................................................................... 6

Standard of Review .......................................................................................................... 6

Legal Argument ............................................................................................................... 8

   I.   Plaintiff has Advanced Sufficient Evidence to Defeat Defendants' Motion Under
       the *McDonnell Douglas* Standard ................................................................... 8

   II.   Plaintiff Has Stated a Prima Facie Case of Retaliation ...................................... 9

   III.   Defendants' Stated Reason for Plaintiff's Termination is Pretextual .............. 10

     A. Defendant Garcia's Inconsistent Explanations and the Temporal Proximity of
        Plaintiff's Termination to Her Complaint Establish a Material Dispute of Fact as
        to Whether Defendants' Stated Reason For Terminating Plaintiff is Pretextual ............. 11

     B. The May Email is Insufficient to Support Defendants' Motion Because an
        Adverse Action for Purposes of a Retaliation Claim Occurs on the Date the
        Decision was Formally Made ......................................................................... 15

   IV.   Plaintiff's Section 1981 CLaim are Governed by the More Liberal "Motivating
       Factor" Standard ............................................................................................. 17

Conclusion ...................................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Bagley v. J.P. Morgan Chase & Co.*,
No. 10-cv-1592, 2012 WL 2866266 (S.D.N.Y. July 12, 2012).....................................8, 12

*Beirne v. Fieldcrest Cannon, Inc.*,
No. 92-cv-3282, 1997 WL 187340 (S.D.N.Y. Apr. 16, 1997) .........................................12

*Brooks v. D.C. 9 Painters Union*,
No. 10 Civ. 7800, 2013 WL 3328044 (S.D.N.Y. July 2, 2013) .........................................8

*Caruso v. City of New York*,
973 F. Supp. 2d 430, 453 (S.D.N.Y. 2013) ...............................................................10, 16

*Chan v. Donahoe*,
No. 13-cv-2599, 2014 WL 6844943 (E.D.N.Y. Dec. 4, 2014).......................................6-7

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*,
444 F.3d 158 (2d Cir. 2006)..........................................................................................16

*Clay v. United Parcel Serv., Inc.*,
983 F. Supp. 2d 1331 (D. Kan. 2013) .............................................................................18

*Costa v. Sears Home Imp. Products, Inc.*,
No. 12-cv-6235, 2014 WL 7049339 (W.D.N.Y. Dec. 15, 2014) ...................................7, 9

*Dall v. St. Catherine of Siena Med. Ctr.*,
966 F. Supp. 2d 167 (E.D.N.Y. 2013) ..............................................................................7

*E.E.O.C. v. Ethan Allen, Inc.*,
44 F.3d 116 (2d Cir. 1994)............................................................................................13

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010).............................................................................................8

*Holcomb v. Iona Coll.*,
521 F.3d 130 (2d Cir. 2008)............................................................................................7

*Hollander v. Am. Cyanamid Co.*,
895 F.2d 80 (2d Cir. 1990)............................................................................................16

*Jute v. Hamilton Sundstrand Corp.*,
420 F.3d 166 (2d Cir. 2005)............................................................................................8

*Kleehammer v. Monroe Cnty.*,
    583 F. App'x 18 (2d Cir. 2014) ...................................................................8, 18

*Lalanne v. Begin Managed Programs*,
    346 F. App'x 666 (2d Cir. 2009) ..................................................................14

*Lewis v. New York City Transit Auth.*,
    12 F. Supp. 3d 418 (E.D.N.Y. 2014) ........................................................7, 17

*Lore v. City of Syracuse*,
    670 F.3d 127 (2d Cir. 2012).............................................................................9

*Mansuetta v. Clarkstown Cent. Sch. Dist.*,
    No. 11-cv-649 VB, 2012 WL 5992171 (S.D.N.Y. Nov. 13, 2012)...................7

*Morris v. Lindau*,
    196 F.3d 102 (2d Cir. 1999).............................................................................7

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,
    842 F.2d 590 (2d Cir. 1988).............................................................................9

*Nagle v. Marron*,
    663 F.3d 100 (2d Cir .2011)................................................................... *passim*

*Patterson v. County of Oneida*,
    375 F.3d 206 (2d Cir. 2004)...........................................................................18

*Quarless v. Brooklyn Botanic Garden.*,
    No. 11-cv-05684, 2014 WL 2767085 (E.D.N.Y. June 18, 2014)..............18, 19

*Reed v. A.W. Lawrence & Co.*,
    95 F.3d 1170 (2d Cir. 1996).............................................................................9

*St. Juste v. Metro Plus Health Plan*,
    No. 10-CV-4729, 2014 WL 1266306 (E.D.N.Y. Mar. 28, 2014)....................10

*Turner v. NYU Hospitals Ctr.*,
    470 F. App'x 20 (2d Cir. 2012) ................................................................ 14-15

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
    133 S. Ct. 2517 (2013)........................................................................... *passim*

*Vormittag v. Unity Elec. Co.*,
    No. 12-cv-4116, 2014 WL 4273303 (E.D.N.Y. Aug. 28, 2014) .....................13

*Vosburgh v. Am. Nat. Red Cross*,

No. 08-cv-0653, 2014 WL 4826688 (N.D.N.Y. Sept. 29, 2014)..........................11-12, 18

*Walker v. Wholesale, Inc.*,
No. 12-cv-0595, 2013 WL 5502912 (M.D. Tenn. Oct. 2, 2013)......................................18

*Weber v. City of New York*,
973 F. Supp. 2d 227 (E.D.N.Y. 2013) ..........................................................................10

*Zann Kwan v. Andalex Grp.*,
737 F.3d 834 (2d Cir. 2013).................................................................. *passim*

## **Statutes**

42 U.S.C. § 1981 ...............................................................................1, 12, 18, 19

42 U.S.C. §§ 2000e, *et seq*...............................................................................1, 11, 18

N.Y. Exec. Law §§ 290, *et seq*. .......................................................................1, 12, 18

## **Other Authority**

Fed. R. Civ. P. 56(a). ...............................................................................................6

Fed. R. Civ. P. 56(c)(1)(B) ....................................................................................15

## PRELIMINARY STATEMENT

Plaintiff Soheila Hexemer submits this Memorandum of Law in opposition to Defendants' Motion for Summary Judgment. Ms. Hexemer was terminated by her employer, Defendants GID Global, LLC ("GID" or the "Company") and Jose Garcia (collectively, "Defendants"), on October 31, 2012, a mere two days after complaining about the discriminatory treatment she suffered in her workplace. Ms. Hexemer consequently filed a Complaint and Jury Trial Demand on December 10, 2012, (ECF No. 1), which she amended on March 31, 2014, (ECF No. 40) (the "Complaint"), seeking relief from Defendants[1] for, *inter alia*, Defendants' unlawful retaliation in violation of (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq.*, as amended[2]; (2) Section 1981 of the Civil Rights Act of 1866 ("Section 1981"), 42 U.S.C. § 1981, as amended; and (3) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, *et seq.*, as amended. Defendants filed the instant Motion on December 12, 2014, seeking summary judgment on all three causes of action. (ECF No. 65.)

Although Defendants advance a number of pretextual explanations in an attempt to avoid liability for their unlawful decision to terminate Ms. Hexemer, the remarkable temporal proximity of the termination to Ms. Hexemer's protected complaint, together with the shifting and inconsistent explanations offered by Defendant Garcia, are more than sufficient to enable a

---

[1]      Plaintiff also named General Electric Company ("GE") as a Defendant in the Complaint on the theory that GE qualified as a joint and/or single employer of Plaintiff. Plaintiff, however, does not oppose that aspect of Defendants' Motion that seeks summary judgment on Plaintiff's claims against Defendant GE.

[2]      Plaintiff likewise does not oppose Defendants' motion to the extent it seeks summary judgment on Plaintiff's claims arising under Title VII, insofar as GID alone is not a qualified employer under that statute. *See* 42 U.S.C.2000e(b); Aff. of Jose Garcia ("Garcia Aff.") ¶ 5 (ECF No. 65-7).

reasonable jury to infer that her termination was motivated by an improper retaliatory animus. As such, because there thus exists a genuine dispute of material fact, Defendants' Motion should be denied with respect to Ms. Hexemer's Section 1981 and NYSHRL claims against Defendants GID and Garcia, and those claims should be allowed to go before a jury.

## FACTS

### I.   PLAINTIFF'S EMPLOYMENT WITH DEFENDANTS

Ms. Hexemer was born in Iran and is of Persian descent. (Pl.'s Counter-Statement of Disputed and Undisputed Facts ("Pl.'s Counter-Statement") ¶ 72.) She immigrated to the United States in 1977 and has been a citizen of the United States since 1988. (*Id.* ¶ 73.) Ms. Hexemer worked for GE in its Schenectady office from March 2009 until approximately September 2010 in a position with GE Power & Water's Generator Division through Granite Services International, Inc. (*Id.* ¶ 75.) In January 2011, Defendant GID again hired her to work in GE's Schenectady office for a project management position with GE Power & Water's Aftermarket Steam and Generator Divisions. (*Id.* ¶ 76.) In that position, Plaintiff was responsible for (i) updating GE's Data Management System containing power plant manuals, (ii) verifying the accuracy of manuals after language translation, (iii) creating web-based workflow forms for GE's engineering staff, (iv) providing training on Microsoft Office products, (v) maintaining GE's email server archive tool and (vi) designing and building GE Power & Water's webpage. (*Id.* ¶ 77.) Plaintiff continued in that position with distinction and without any recorded performance problems until her unlawful termination on October 31, 2012, two days after she complained to GID about discriminatory treatment. (*Id.* ¶ 78.)

Defendants now claim that they had decided to terminate Ms. Hexemer by May 2012, as supposedly memorialized in an email sent on May 21, 2012 by Garcia to his brother, which

states, in sum and substance, "*if nothing happens by October, then I will send Soheila her letter of termination.*" (Garcia Aff. Ex. A) (the "May Email"). Defendants' assert that this purported decision—which was never communicated to Ms. Hexemer, nor supported by any other contemporaneous evidence—together with Defendants' baseless suggestion that Ms. Hexemer was not qualified for the projects she worked on between May and October,[3] represents a legitimate, non-retaliatory basis for Plaintiff's termination. This contention is belied, however, by the fact that Ms. Hexemer received a number of positive performance reviews during this period, and was even offered a raise by Garcia in June 2012, subsequent to Garcia's purported decision to terminate her. (Pl.'s Statement ¶ 81.)[4]

## II.   DISCRIMINATORY STATEMENTS BY A GE CO-WORKER TOWARDS PLAINTIFF

On October 25, 2012, Plaintiff was engaged in a private conversation with two co-workers when she made a comment about how much weight they all gain by sitting at their desks all day. (Pl.'s Statement ¶¶ 40-41.) Sarah Hill, a GE employee who was working nearby, overheard Plaintiff's conversation and began to berate her, stating that "*in this country we don't talk like that.*" (*Id.* at ¶ 42.) Hill further added that Ms. Hexemer's comment might be acceptable in Iran, but not in the United States and described Ms. Hexemer as "*uncivilized.*" (*Id.*) Ms. Hexemer was taken aback by Hill's comments and questioned what her ancestry had to do with anything. (*Id.* at ¶ 43.) Ms. Hexemer informed Hill that she was a U.S. citizen and that her husband and children were American. (*Id.* at ¶ 44.) Disgusted by what she perceived to be

---

[3]      (S*ee, e.g.*, Defs. Mem. Supp. Mot. Summ. J. ("Defs.' Mem.) 13-14 (ECF No. 65-30)).

[4]      Belated allegations of "performance problems" are further undermined by the termination letter sent to Ms. Hexemer, which attributed the decision solely to "*the difficult economic downturn we are going through*" and specifically stated that it "*should not be taken as any reflection on you personally or your performance, which by the way, was outstanding.*" (Decl. of Robert Ottinger ("Ottinger Decl.") Ex. H.)

blatantly discriminatory comments, Ms. Hexemer told Hill: "*If my nationality is affecting you that much, I will resign.*" (*Id.*) Immediately after the confrontation with Hill, Ms. Hexemer attempted to address this situation with two of her supervisors, but neither of them was available to meet with her. (*Id.* at ¶ 45.)

Following this incident, Jared York, a GE manager who supervised some of the employees involved in the October 25 incident, including Hill, wrote an email to Defendant Garcia and his brother Guillermo Garcia, an officer of GID, referring to Ms. Hexemer's "*completely unprofessional behavior*," insisting that "*I need people who can work and communicate effectively and professionally*," and concluding by stating that "*I'm looking to you to make sure that Soheila understands that her behavior was unacceptable and will not be tolerated*" and "*I'll look forward to hearing your updates on next steps with Soheila.*" (Ottinger Decl. Ex. F.) Understandably concerned by the threat Ms. Hexemer's continued employment now posed to their relationship with a significant business partner, both Garcia and his brother separately contacted York on October 30 to inform him that they had already decided to terminate Ms. Hexemer. (Pl.'s Statement ¶¶ 57-59.)

When Ms. Hexemer returned to work on her next scheduled work day—Monday, October 29, 2012—she met with Jacob Tefft, a GID co-worker, and Thomas Zalewski, a GID Global supervisor. (*Id.* at ¶ 50.) During the meeting, Tefft made it clear to Ms. Hexemer that he had spoken with Garcia, that Garcia acknowledged the discriminatory nature of Hill's conduct, and that they had agreed that Ms. Hexemer would no longer be required to have any unwanted contact with Hill. (*Id.* at ¶ 50.) Although Ms. Hexemer was dissatisfied with this response, she believed that she had no choice but to continue with her work, which she expressed a willingness

to do. (*Id.* at ¶ 85.) On October 31, 2012, Mr. Teft emailed Guillermo Garcia regarding this meeting, and that email was promptly forwarded to Defendant Garcia. (Ottinger Decl. Ex. G.)

## III.   DEFENDANTS TERMINATE PLAINTIFF TWO DAYS AFTER SHE OBJECTED TO THE PROPOSED REMEDY FOR THE DISCRIMINATORY COMMENTS

On October 31, 2012—two days later—Ms. Hexemer received an email from Garcia informing her that her employment had been terminated. (Pl.'s Statement ¶ 61; Ottinger Decl. Ex. H.) After receiving this notice, and at the suggestion of two GE Coworkers, Ms. Hexemer met with York to discuss Defendants' decision to terminate her employment. (Pl.'s Statement ¶ 64.) Ms. Hexemer told York that she believed her termination was discriminatory and retaliatory and demanded information regarding the decision. (*Id.*) York responded in sum and substance that he did not know anything about her termination, but that he "*didn't care*" about her allegations of discrimination because she was "*not a GE employee.*" (*Id.* at ¶ 50.)  Later that evening, Ms. Hexemer called Garcia himself to express her concerns about the discriminatory and retaliatory nature of the decision and inform him that she planned to file a lawsuit to remedy her illegal termination. (*Id.* at ¶ 67.)

Ms. Hexemer and Garcia met in person at a restaurant the following week, on November 7, 2012, to discuss the situation. (*Id.* at ¶ 87.) Ms. Hexemer, concerned about Defendants' blatant violation of her rights, recorded the conversation in an effort to protect herself. (*Id.* at ¶ 87.) At the meeting, Ms. Hexemer again reiterated to Garcia that she believed that she had been terminated in retaliation for her complaint about Hill. (*Id.* at ¶ 89.) Garcia assured Ms. Hexemer that he believed her and would attempt to meet with senior GE management on her behalf to address the incident. (*Id.* at ¶ 94.) Moreover, contrary to Defendants' current assertion that Garcia was solely responsible for eliminating Ms. Hexemer's position and that he had made the

decision in May 2012—approximately five months prior—Garcia instead insisted that the decision had been made unilaterally by "higher ups" at GE, and that he himself had not even been notified until October 31, the day of the termination. (*Id.* at ¶¶ 90-92.) Garcia furthermore assured Ms. Hexemer that—contrary to Defendants' current assertion that GID employees are routinely terminated without notice, (Garcia Aff. ¶ 45)—he would have notified Ms. Hexemer in advance of the termination had GE given him its customary notice. (Pl.'s Statement ¶ 92.)

## PROCEDURAL HISTORY

Plaintiff filed a Complaint and Jury Trial Demand on December 10, 2012, seeking relief from Defendants and GE for discriminatory treatment, harassment, and unlawful retaliation in violation of Section 1981 and the New York State Human Rights Law.[5] Defendants' motion to dismiss the Complaint was granted in part and denied in part on September 11, 2013.[6] Defendants then filed the instant motion on December 12, 2014 seeking summary judgment on Plaintiff's remaining causes of action. (ECF No. 65.)

## STANDARD OF REVIEW

Summary judgment may only be granted where it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Chan v. Donahoe*, No. 13-cv-2599, 2014 WL

---

[5]     Plaintiff filed a First Amended Complaint on March 31, 2014 to add claims arising under Title VII after receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission. (ECF No. 40).

[6]     Plaintiff's discriminatory treatment and harassment claims were dismissed on consent. (*See* Mem.-Decision and Order 3, Sept. 11, 2013, (ECF No. 16)).

6844943, at *16 (E.D.N.Y. Dec. 4, 2014) (quoting *Zann Kwan v. Andalex Grp.,* 737 F.3d 834, 843 (2d Cir. 2013)).

Plaintiff's burden at the summary judgment stage, however, "is minimal and *de minimis,* and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Costa v. Sears Home Imp. Products, Inc.*, No. 12-cv-6235, 2014 WL 7049339, at *7 (W.D.N.Y. Dec. 15, 2014) (quoting *Dall v. St. Catherine of Siena Med. Ctr.,* 966 F. Supp. 2d 167, 192 (E.D.N.Y. 2013)). The Court must furthermore resolve "all ambiguities and draw[] all permissible factual inferences in favor of the nonmoving party." *Mansuetta v. Clarkstown Cent. Sch. Dist.*, No. 11-cv-649 VB, 2012 WL 5992171, at *4 (S.D.N.Y. Nov. 13, 2012) (citing *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir .2011)).

Summary judgment is especially ill-suited to employment retaliation cases where—as here—the central dispute of material fact has to do with the employer's motive for terminating an employee. *See Zann Kwan*, 737 F.3d at 843 (noting the "need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent" (quoting *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Cir. 2008)); *Lewis v. New York City Transit Auth.*, 12 F. Supp. 3d 418, 451 (E.D.N.Y. 2014) ("It is the jury that should eventually determine whether the plaintiff has proved by a preponderance of the evidence . . . that she would not have been terminated if she had not complained about discrimination." (internal citations omitted)). *Cf. Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) ("Summary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision.").

**LEGAL ARGUMENT**

I.   **PLAINTIFF HAS ADVANCED SUFFICIENT EVIDENCE TO DEFEAT DEFENDANTS' MOTION UNDER THE *MCDONNELL DOUGLAS* STANDARD**

As correctly stated by Defendants, courts analyzing retaliation claims arising under Title VII, Section 1981 and the NYSHRL apply the *McDonnell Douglas* three-step burden-shifting framework set forth by the Supreme Court. *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir. 2005). As an initial matter, the plaintiff must first establish a *prima facie* case of retaliation by demonstrating: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Hicks v. Baines,* 593 F.3d 159, 164 (2d Cir. 2010) (quotation marks omitted).

Once plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." *Jute*, 420 F.3d at 173. If the defendant satisfies this burden, "the plaintiff must then demonstrate that the proffered reason is a pretext for retaliation and that the plaintiff's 'protected activity was a but-for cause of the alleged adverse action by the employer.'" *Kleehammer v. Monroe Cnty.*, 583 F. App'x 18, 20-21 (2d Cir. 2014) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2534 (2013)).[7]

---

[7]     It is well-established in this Circuit that *Nassar*'s "but-for" standard is not implicated at the first step of the *McDonnell Douglas* analysis. *See Brooks v. D.C. 9 Painters Union,* No. 10 Civ. 7800, 2013 WL 3328044, at *4 (S.D.N.Y. July 2, 2013) (concluding that a plaintiff need not show but-for causation until the employer satisfies its burden of producing a legitimate, non-retaliatory reason for the adverse employment action). Moreover, while retaliation claims arising under Section 1981 and the NYSHRL are generally addressed together with Title VII claims, as

8

Importantly, the "but-for" causation requirement recently set forth by the Supreme Court in *Nassar* "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan* 737 F.3d at 847. As developed more fully below,[8] a plaintiff alleging retaliation "may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Costa*, 2014 WL 7049339, at *17 (internal quotations omitted); *see also Zann Kwan*, 737 F.3d at 847 (finding employer's "shifting and inconsistent explanations" for plaintiff's termination in combination with the temporal proximity between plaintiff's protected activity and her termination, sufficient to survive the summary judgment stage).

## II.    PLAINTIFF HAS STATED A PRIMA FACIE CASE OF RETALIATION

It is beyond cavil—and, indeed, Defendants do not contest—that Plaintiff has established a *prima facie* case of retaliation, as required by *McDonnell Douglas*. Specifically, the evidence proffered by Plaintiff demonstrates that: (1) Plaintiff engaged in a protected activity by complaining to her superiors about perceived discrimination, (*see* Pl.'s Statement ¶¶ 83-85);[9] (2) Defendants were aware of this complaint, (*see id.* ¶ 86; *see also* Ottinger Decl. Ex. G); and Plaintiff's subsequent termination amounted to a materially adverse employment action. (*See*

---

discussed in greater detail below, it is not clear whether *Nassar*'s but-for causation requirement is applicable to Section 1981 claims. *See infra* Section IV.

[8]      *See infra* Section III.A

[9]      Although Defendants do not suggest otherwise, it bears mention that  "to recover for retaliation for having filed . . . a complaint, the plaintiff need not prove that her underlying complaint of discrimination had merit." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012) (citing *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1177–78 (2d Cir. 1996); *Manoharan v. Columbia University College of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir. 1988)).

Pl.'s Statement ¶ 61.) Defendants' suggestion that liability can be avoided to the extent Ms. Hexemer did not complain to Garcia himself[10] is not only directly contradicted by the record, (see, for example, Ottinger Decl. Ex. G for evidence that Garcia was aware of Ms. Hexemer's complaints), but also inconsistent with the fundamental legal principals at issue. *See Weber v. City of New York*, 973 F. Supp. 2d 227, 267 (E.D.N.Y. 2013) ("Plaintiff can satisfy the 'knowledge' element of the prima facie case by demonstrating that his employer had general corporate knowledge of his protected acts at the time of the alleged retaliation.").

Lastly, with respect to the causation prong, temporal proximity alone is sufficient to make out a *prima facie* case of retaliation. *See St. Juste v. Metro Plus Health Plan*, No. 10-CV-4729 MKB, 2014 WL 1266306 (E.D.N.Y. Mar. 28, 2014) ("The but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the *prima facie* stage on summary judgment or at trial indirectly through temporal proximity" (quoting *Zann Kwan,* 737 F.3d at 845)). Although the Second Circuit "has not drawn a bright line defining the maximum time period that can give rise to an inference of causation," *Caruso*, 973 F. Supp. at 453, it is undeniable that the two-day period which elapsed between Ms. Hexemer's complaint and her termination is more than sufficient to give rise to an inference of retaliation. *See Nagle*, 663 F.3d at 110 (finding that a period of six weeks would "fit[] comfortably within any line [the Second Circuit] might draw").

## III.  DEFENDANTS' STATED REASON FOR PLAINTIFF'S TERMINATION IS PRETEXTUAL

In response to Plaintiff's *prima facie* case, Defendants claim that Garcia in fact decided to terminate Ms. Hexemer in May 2012, approximately five months prior to the protected conduct, as purportedly memorialized in the May Email sent by Garcia to his brother. (Garcia

---

[10]     *See* Defs.' Mem. 24.

Aff. Ex. A.) Although Defendants now also make the conclusory and unsupported assertion that Plaintiff was unqualified to perform her assigned responsibilities, (*see* Defs.' Mem. 13-14), this suggestion is entirely insufficient to support a motion for summary judgment given the complete lack of any performance problems or other negative reviews during the period in question and the contrary evidence advanced by Plaintiff.[11] *See Nagle*, 663 F.3d at 112 (noting that the employer's allegations of performance problems did not establish a legitimate business reason for plaintiff's termination given "fair to positive" performance reviews and a complete lack of documented performance problems). Defendants' motion is accordingly premised entirely on the proposition that the May Email establishes beyond dispute that Plaintiff's termination was motivated by a legitimate, non-retaliatory reason.

Contrary to Defendants' argument, however, Plaintiff has advanced sufficient evidence to establish the existence of a material dispute of fact as to whether Defendants' stated reason for Ms. Hexemer's termination is pretextual. Specifically, the stark temporal proximity between Ms. Hexemer's complaint and the adverse action—a period of only *two days*—when taken together with both the substantial intervening time between the May Email and Ms. Hexemer's ultimate termination and Garcia's shifting and inconsistent explanations, is sufficient to support a jury finding that the decision to terminate Plaintiff was motivated by a retaliatory animus.

A.   **Defendant Garcia's Inconsistent Explanations and the Temporal Proximity of Plaintiff's Termination to Her Complaint Establish a Material Dispute of Fact as to Whether Defendants' Stated Reason For Terminating Plaintiff is Pretextual**

The Supreme Court recently clarified the causation standard governing retaliation claims arising under Title VII. *See Nassar,* 133 S.Ct. at 186 (holding that Title VII retaliation claims

---

[11]    (*See* Pl.'s Statement ¶¶ 79-81.)

must be proved according to traditional principles of but-for causation); *see also Vosburgh v. Am. Nat. Red Cross*, No. 08-cv-0653, 2014 WL 4826688, at \*7 (N.D.N.Y. Sept. 29, 2014) (applying the *Nassar* standard to retaliation claims arising under the NYSHRL).[12] As noted above, however, "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan,* 737 F.3d at 846.

"A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Id.* Normally, without more, "temporal proximity is insufficient to satisfy appellant's burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.,* 627 F.3d 931, 933 (2d Cir. 2010). A plaintiff, however, "may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." *Zann Kwan,* 737 F.3d at 847; *see also Bagley v. J.P. Morgan Chase & Co.*, No. 10-cv-1592, 2012 WL 2866266, at \*11 (S.D.N.Y. July 12, 2012) ("Where . . . a plaintiff has established his prima facie case through evidence that the . . . termination occurred in circumstances giving rise to an inference of discrimination, the plaintiff is permitted to rely on the same evidence to demonstrate pretext." (quoting *Beirne v. Fieldcrest Cannon, Inc.*, No. 92-cv-3282, 1997 WL 187340, at \*6 (S.D.N.Y. Apr. 16, 1997)).

In *Zann Kwan*, for instance, the Second Circuit found that a Defendant's shifting explanations for a retaliatory action—asserting at one point that plaintiff was terminated because of a change in business focus and subsequently because of poor performance—was, in

---

[12]     The plain meaning of *Nassar*, however, suggests that it does not apply to claims arising under Section 1981. *See infra* Section IV.

combination with temporal proximity, enough to establish a fact issue as to pretext even under the more demanding *Nassar* standard. *See Zann Kwan*, 737 F.3d at 845 (holding that defendant's "inconsistent and contradictory explanations for the plaintiff's termination, combined with the close temporal proximity between the [protected conduct] and [plaintiff's] termination, are sufficient to create a genuine dispute of material fact as to whether [plaintiff's] complaint of gender discrimination was a but-for cause of the plaintiff's termination"). As the *Zann Kwan* Court held, "From such discrepancies a reasonable juror could infer that the explanations given by [defendant] were pretextual." *Id.* at 847 (quoting *E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994)).

The Eastern District has likewise denied summary judgment in a retaliation case where plaintiff satisfied the pretext burden—despite the employer demonstrating that plaintiff was terminated in connection with a mass reduction in force—by showing that the employer alternatively stated both that plaintiff was laid off randomly and that the termination was based in part on poor performance. *Vormittag v. Unity Elec. Co.,* No. 12-cv-4116, 2014 WL 4273303, at *6 (E.D.N.Y. Aug. 28, 2014). "Although no one questions that [employer's] required reduction in force was a legitimate reason to lay off many employees," the Court reasoned, the defendant's "shift in explanations for firing [plaintiff] calls his true reasoning into question." *Id.* at *6-7.

Defendants in this case have advanced a number of inconsistent explanations for Ms. Hexemer's termination. Specifically, Defendants now assert that the decision to terminate Ms. Hexemer "was made solely by" Garcia, and that it was made in May 2012 for budgetary reasons, Garcia Aff. ¶¶ 3-4. In November 2012, however—two weeks after the termination—Garcia himself informed Ms. Hexemer that, although he acknowledged GE's discriminatory conduct,

the decision was made unilaterally by GE, and he did not even receive notice in advance of the termination. (*See* Pl.'s Statement ¶¶ 90-94.) The *Zann Kwan* holding is moreover especially salient here, where Defendants terminated Ms. Hexemer almost immediately—a mere *two days*—after she complained. *See Zann Kwan*, 737 F.3d at 845 (characterizing a three week period as "very close temporal proximity between [plaintiff's] protected conduct and her termination"). Given this proximity, together with Defendants' inconsistencies, the prospect that retaining Ms. Hexemer would threaten extremely important business relationships to Defendants, (*see id.* at ¶¶ 54-59), and the ample evidence that any purported performance problems alluded to by Defendants are entirely without foundation, (*see id.* at ¶¶ 80-81), Plaintiff has proffered more than enough evidence to meet the pretext burden.

The cases cited by Defendants in support of their argument are inapposite. In *Lalanne v. Begin Managed Programs*, for instance, the decision to terminate the plaintiff was made only one month prior to the effectuation of plaintiff's termination, 346 F. App'x 666, 667 (2d Cir. 2009). This is in sharp contrast to the five-month period at issue here, which is a such an extended period of time that a jury could reasonably conclude that Defendants' prior discussions did not amount to a formal decision. *See Nagle*, 663 F.3d at 110 ("[A]n employer cannot insulate himself from liability at the summary judgment stage simply by asserting that an adverse employment decision had in fact already been made, without being memorialized or conveyed to anyone, before the employer learned of the protected conduct."). Also unlike this case, there was no suggestion in *Lalanne* that Plaintiff had advanced any evidence—such as inconsistencies in the employer's stated reasons for the termination—in support of his argument that the decision was pretextual. *See generally Lalanne*, 346 F. App'x at 666-67.

14

Likewise, in *Turner v. NYU Hospitals Ctr*., the Second Circuit specifically noted that the plaintiff "offered no other evidence [besides an unrelated attempt by the employer to secure raises for different employees] from which a jury could infer that the budgetary justification for his termination was unfounded." 470 F. App'x 20, 23-24 (2d Cir. 2012). That is manifestly not the case here. Even if Defendants were motivated in part by a lack of GE funding for Ms. Hexemer's position, Plaintiff has presented more than enough evidence for a jury to rationally conclude that the stated reason for Ms. Hexemer's termination is nevertheless pretextual, and that Defendants would not have terminated Ms. Hexemer when they did but for an improper retaliatory motive. *See Zann Kwan*, 737 F.3d at 846 (holding that "but-for" causation "does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive"). Accordingly, Plaintiff's motion should be denied with respect to Ms. Hexemer's retaliation claims arising under Section 1981 and the NYSHRL.

**B.    The May Email is Insufficient to Support Defendants' Motion Because an Adverse Action for Purposes of a Retaliation Claim Occurs on the Date the Decision was Formally Made**

Not only has Plaintiff thus advanced sufficient evidence to establish a material dispute of fact regarding pretext, but Defendants' own evidence fails to support the proposition that there is no genuine dispute of material fact. *See* Fed. R. Civ. P. 56(c)(1)(B) (stating that a party "asserting that a fact . . . is genuinely disputed must support the assertion by [*inter alia*] showing that the materials cited do not establish the absence . . . of a genuine dispute"). Specifically, the May Email demonstrates only that Defendants were contemplating terminating Plaintiff approximately five months prior to her protected conduct, not that a final decision had been made.

15

Given the extended period of time, the complete lack of any intervening performance problems or negative reviews, and the failure of Defendants to actually document their purported decision or otherwise communicate it to Plaintiff, the May Email alone is simply too attenuated to constitute a legitimate, non-retaliatory reason for Plaintiff's termination. This is especially true given the fact that a five-month period between protected conduct and an adverse action would likely be insufficient to establish a *prima facie* case of retaliation. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990). It is utterly incongruous to suggest that a defendant seeking dismissal of a retaliation claim may benefit from the judicial wisdom that "[w]hat can grow stale, over time and distance, is not [a protected conduct's] protection but its *relevance* to the plaintiff's employer," *Nagle*, 663 F.3d at 110, but remain simultaneously entitled to disregard that principal in advancing a defense to such claims.

As the Second Circuit has stated, "an employer cannot insulate himself from liability at the summary judgment stage simply by asserting that an adverse employment decision had in fact already been made, without being memorialized or conveyed to anyone, before the employer learned of the protected conduct." *Nagle*, 663 F.3d at 110. In that case, the Second Circuit rejected defendants' assertion that they had made the decision to deny plaintiff tenure prior to learning of her protected speech and reversed the District Court's grant of summary judgment, holding that "an adverse employment action occurs on the date that a decision was formally reached." *Id.* (citing *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 163 (2d Cir. 2006)). This central holding has been repeatedly affirmed by courts in this Circuit. *See, e.g.*, *Caruso v. City of New York*, 973 F. Supp. 2d 430, 453 (S.D.N.Y. 2013) (holding that "the fact that Defendants might have been contemplating Caruso's termination before his grand jury testimony . . . is not determinative"); *see also Cioffi*, 444 F. 3d at 164 (holding that an adverse

16

employment action dated not from a closed meeting at which an "informal consensus" regarding the matter was reached, but rather from an official meeting with a formal vote and a publicly declared outcome).

The informality of Defendants' purported decision to terminate Ms. Hexemer—and its consequent inability to support a motion for summary judgment—is starkly revealed by an examination of the precise language of the May Email. Defendant Garcia suggested that "*if nothing happens <u>by October</u>, then I will send Soheila her letter of termination.*" (Garcia Aff. Ex. A) (emphasis added). As stated above, Ms. Hexemer was in fact terminated on October 31, 2012. Even leaving aside Defendants' contradictory and inconsistent statements regarding the basis for the termination, a reasonable jury could infer that the mere fact that Garcia was contemplating in June terminating Ms. Hexemer "*by October*" is in and of itself insufficient evidence that he not only continued to maintain this intention on the last day of October, but also would have carried it out even had Ms. Hexemer not raised her complaints of discrimination. Crucially, such questions of motivation are properly reserved for a jury and are therefore inappropriate at the summary judgment stage. *See Zann Kwan*, 737 F.3d at 843 (noting the "need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent"); *Lewis v. New York City Transit Auth.*, 12 F. Supp. 3d 418, 451 (E.D.N.Y. 2014) ("It is the jury that should eventually determine whether the plaintiff has proved by a preponderance of the evidence . . . that she would not have been terminated if she had not complained about discrimination." (internal citations omitted)).

## IV.  PLAINTIFF'S SECTION 1981 CLAIM ARE GOVERNED BY THE MORE LIBERAL "MOTIVATING FACTOR" STANDARD

Insofar as Plaintiff has, given the foregoing, advanced sufficient evidence to defeat summary judgment even under the exacting "but-for" standard set forth by the *Nassar* Court, it is

17

unnecessary—to the extent this Court accepts Plaintiff's arguments—to address whether that standard also applies to claims arising under other anti-retaliation statutes. Alternatively, however, a close reading of *Nassar* confirms that Section 1981 claims should be governed by the more liberal "motivating factor" test, pursuant to which Plaintiff has undoubtedly proffered enough evidence to support the inference that her termination was retaliatory. *See generally Quarless v. Brooklyn Botanic Garden Corp.*, No. 11-cv-05684, 2014 WL 2767085, at *5 (E.D.N.Y. June 18, 2014).[13]

Although retaliation claims arising under Title VII and Section 1981 have traditionally been decided under the same standards, *see, e.g.*, *Patterson v. County of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004), the Supreme Court was careful to note specific and substantive differences between the two statutory regimes when elaborating Title VII's "but-for" test. *See Nassar,* 133 S. Ct. at 2529–32 (alluding to Section 1981 as a "broadly worded" and "undifferentiated" antidiscrimination statute, unlike Title VII's detailed statutory scheme); *see also Clay v. United Parcel Serv., Inc.*, 983 F. Supp. 2d 1331, 1343 (D. Kan. 2013) (noting that this language implies that motivating-factor causation may remain appropriate for Section 1981 retaliation claims). As noted by another District Court, in holding that the "motivating factor" test continues to govern Section 1981 retaliation claims, "the [*Nassar*] Court emphasized that its holding was based on the particular language and structure of Title VII, as distinguished from other federal anti-

---

[13]     Although neither the Second Circuit nor New York State appellate courts have ruled on the applicability of the *Nassar* standard to claims arising under the NYSHRL, *see Kleehammer v. Monroe Cnty.*, 583 F. App'x 18, 21 (2d Cir. 2014), this Court has held that, "given that the New York Court of Appeals has consistently stated that analogous federal statutory standards are applied in interpreting the NYSHRL, the Court applies the but-for causation standard articulated in *Nassar*." *Vosburgh*, 2014 WL 4826688, at *7.

discrimination laws, including § 1981." *Walker v. Wholesale, Inc.*, No. 12-cv-0595, 2013 WL 5502912, at *6 (M.D. Tenn. Oct. 2, 2013) (citing *Nassar,* 133 S. Ct. at 2529–30).

While several courts have acknowledged the possibility that the "but-for" standard set forth in *Nassar* does not apply to Section 1981 claims, no court in this Circuit has yet reached the question. *See, e.g., Quarless*, 2014 WL 2767085, at *5. Plaintiff respectfully submits that the Court likewise need not reach the question here, as Plaintiff has satisfied her pretext burden under either standard. In the alternative, however, the plain language of *Nassar* compels the application of the more liberal "motivating factor" standard to Section 1981 retaliation claims, pursuant to which a plaintiff establishes pretext not by demonstrating that the employer would not have taken an adverse action "but-for" the improper retaliatory motive, but rather that the protected conduct "was a substantial motivating factor in the adverse employment action." *Nagle*, 663 F.3d at 110.

Under such an analysis, the evidence cited by Plaintiff above—already compelling in the context of *Nassar*'s "but-for" test—irresistibly implies the conclusion that there exists a material dispute of fact as to Defendants' motivation. The remarkably close temporal proximity between Plaintiff's protected conduct and the decision to terminate her employment, the inconsistencies in Defendants' stated reasons, the evidence that Defendants' business relationships were threatened by Plaintiff's continued employment, and the inadequate support advanced by Defendants' for their proffered reason, together provide a jury with a substantial basis to infer that Defendants acted with retaliatory animus in terminating Plaintiff. Accordingly, Defendants' motion for summary judgment should be denied with respect to Plaintiff's claim arising under Section 1981.

**CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests this Court deny Defendants' Motion for Summary Judgment with respect to Plaintiff's claims for relief under Section 1981 and the NYSHRL against Defendants GID and Garcia and grant such other and further relief as the Court may deem just and proper.

Dated:        New York, New York
              January 12, 2015

                                        THE OTTINGER FIRM, P.C.

                          By:   Robert W. Ottinger (RO-8879)
                                401 Park Avenue South
                                New York, New York 10016
                                Telephone: (212) 571-2000
                                Facsimile: (212) 571-0505
                                robert@ottingerlaw.com

                                *Attorneys for Plaintiff*