**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SOHEILA HEXEMER, | No. 12-cv-1808 (LEK/CFH) |
| Plaintiff, | |
| v. | |
| GENERAL ELECTRIC COMPANY, GID GLOBAL, LLC and JOSE GARCIA, in his professional and individual capacities, | |
| Defendants. | |

**PLAINTIFF SOHEILA HEXEMER'S COUNTER-STATEMENT OF DISPUTED AND UNDISPUTED MATERIAL FACTS  IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 7.1(a)(3) of the Local Rules of the Northern District of New York, and

in opposition to the Motion for Summary Judgment of Defendants General Electric Company,

GID Global, LLC, and Jose Garcia, Plaintiff Soheila Hexemer respectfully submits the following

Separate Statement of Disputed and Undisputed Material Facts, which demonstrates that there

are genuine triable issues of material facts as to each of Plaintiff's causes of action.

**PLAINTIFF'S COUNTER-STATEMENT OF DISPUTED AND UNDISPUTED MATERIAL FACTS**

| | "UNDISPUTED" MATERIAL FACT | PLAINTIFF'S RESPONSE AND SUPPORTING EVIDENCE |
|---|---|---|
| | *Master Transaction Agreement* | |
| 1. | GE and Grupo de Integracion Digital SA de CV ("GRUPO") are parties to a Master Service Agreement ("MSA"). Affidavit of Jose Garcia, sworn to December 11, 2014 ("Garcia Aff.") Ex. D; ¶ 8. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 2. | Garcia and his brother Guillermo Garcia are owners and general | Undisputed for purposes of Defendants' Motion for Summary Judgment. |

| | | |
|---|---|---|
| | managers of GRUPO.<br><br>Garcia Aff. ¶ 7; Deposition transcript of Jose Garcia, dated June 12, 2014 ("Garcia Dep.") at 65:15-17, a copy of which is attached to Declaration of David G. Ebert, sworn to December 12, 2014 ("Ebert Decl.") as Exhibit D. | |
| 3. | GRUPO uses GID as its vendor to procure personnel to render the services to GE.<br><br>Garcia Aff. ¶ 10; Garcia Dep. 12:4-8; 112:18-23. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 4. | Under the MSA, specific projects are defined by a Statement of Work ("SOW"), Purchase Service Agreement ("PSA"), or Purchase Order ("PO").<br><br>Garcia Aff. Ex. D §1.1; ¶ 9; Garcia Dep. 13:13-17; 13:23-14:4; 15:2-8; 17:25-18:2. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 5. | GRUPO and GID determine the project's logistics, such as how to staff the project, where to base the project, and the expected timeframe for completion.<br><br>Garcia Aff. ¶ 11; Affidavit of Jared York, sworn to December 12, 2014 ("York Aff.") ¶ 6; Garcia Dep. 31:10-23; 33:1-3; 111:14-15; 116:22-117:5; Deposition transcript of Jared York, dated June 11, 2014 ("York Dep.") at 18:2-10, a copy of which is attached to the Ebert Decl. as Exhibit E. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| | *The Database Project* | |
| 6. | In late 2010, GE informed GRUPO that GE had a new project involving its operation and maintenance manuals (the "Database Project").<br><br>Garcia Aff. ¶ 12; Garcia Dep. 25:22- | Undisputed for purposes of Defendants' Motion for Summary Judgment. |

| | 26:4. | |
|---|---|---|
| 7. | The project was estimated to start at the beginning of the following year and end in approximately a year.<br><br>Garcia Aff. ¶ 12; Garcia Dep. 39:1-3; 114:25-115:4. | Disputed to the extent it suggests that Hexemer was informed the project would last approximately one year.<br><br>• Hexemer was never informed that the project was expected to last a defined duration. Ottinger Decl. Ex. E ("Hexemer Decl.") ¶ 10.<br><br>• GID routinely staffs contractors to different projects once the project they are working on is completed. Hexemer Decl. ¶ 10. |
| 8. | Jake Tefft ("Tefft"), a GID employee, asked plaintiff Soheila Hexemer ("Hexemer") on behalf of GID if she would be interested in working on the Database Project, *i.e.* managing a database of GE documents.<br><br>Garcia Aff. ¶ 13; Deposition transcript of Soheila Hexemer, dated June 11, 2014 ("Hexemer Dep.") at 91:12-20, a copy of which is attached to the Ebert Decl. as Exhibit C; Garcia Dep. 38:15-17. | Disputed to the extent it suggests that Hexemer was informed the project would last approximately one year.<br><br>• Hexemer was never informed that the project was expected to last a defined duration. Hexemer Decl. ¶ 10.<br><br>• GID routinely staffs contractors to different projects once the project they are working on is completed. Hexemer Decl. ¶ 10. |
| 9. | On November 19, 2010, Garcia in an email formally offered Hexemer the position working on the Database Project and advised her of the proposed hourly wage, vacation time, and benefits.<br><br>Garcia Aff. Ex. E; ¶ 14. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 10. | Hexemer and Garcia negotiated her hourly wage and benefits.<br><br>Garcia Aff. Ex. E; ¶ 14. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 11. | On December 14, 2010, Hexemer sent the signed GID employment agreement ("Employment | Undisputed for purposes of Defendants' Motion for Summary Judgment. |

| | | |
|---|---|---|
| | Agreement") to Garcia.<br><br>Garcia Aff. Ex. F; Hexemer Dep. 92:22-93:2. | |
| 12. | The GID employment agreement states that Hexemer would be an employee of GID, not GE:<br><br>Despite the fact that Employee's office may be located at the facilities of the General Electric Company or a subsidiary or affiliate of the General Electric Company (collectively, "GE") and that Employee may perform business functions for the benefit of GE, Employee understands and acknowledges that Employee is an employee of the Company and not of GE.<br><br>Garcia Aff. Ex. F. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 13. | Garcia told Hexemer that her first day would be January 3, 2011 and that when she arrived at GE's Schenectady facility to "call Jake Tefft, he is our PSA team leader. He will take care of you."<br><br>Garcia Aff. Ex. G; ¶ 16. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 14. | Hexemer worked at GE's Schenectady facility, along with other GID employees, such as Tefft, Joe Hunt ("Hunt"), and Thomas Zalewski ("Zalewski").<br><br>Ebert Decl. Ex. A ¶ 30; Hexemer Dep. 60:9-10; Garcia Aff. ¶ 17. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 15. | GID employees' GE badges were green while GE employees' badges were blue.<br><br>Garcia Aff. ¶ 18; York Aff. ¶ 10; Garcia Dep. 102:14-15. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |

| 16. | GID employees were assigned GE email addresses, but GID employees' email addresses always showed the designation "Non-GE" after the email address, whether the GID employee was the sender, recipient, or copied person on an email.<br><br>Garcia Aff. Ex. H, J, K, M; ¶ 19; York Aff. ¶ 9; Garcia Dep. 102:6-13; York Dep. 23:7-16. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
|---|---|---|
| 17. | During Hexemer's employment with GID, she was supervised by Jake Tefft, a GID employee.<br><br>Garcia Aff. ¶ 21; Garcia Dep. 63:20-64:8. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 18. | Garcia also supervised Hexemer's work.<br><br>Garcia Aff. ¶ 22; Garcia Dep. 63:16-19. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 19. | Hexemer received all of her paychecks and paystubs from GID.<br><br>Ebert Decl. Ex. A  ¶ 12; Hexemer Dep. 90:6-8; Garcia Aff. ¶ 23; Ex. H. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 20. | When there was a problem with one of Hexemer's pay stubs in February 2012, she only e-mailed Jose and Guillermo Garcia regarding the issue.<br><br>Garcia Aff. Ex. H; ¶ 23. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 21. | When Hexemer wanted to take time off or was sick, she only contacted GID for permission. Hexemer Dep. 75:10-13. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 22. | On April 10, 2011, Hexemer asked to take April 13 to April 29 off from work. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |

| | Garcia Aff. Ex. I; ¶ 24. | |
|---|---|---|
| 23. | This request was sent by email to only Jose and Guillermo Garcia and Tefft. No GE person was copied on this email.<br><br>Garcia Aff. Ex. I; ¶ 24. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 24. | On September 4, 2012, Hexemer asked to take September 26 to October 11 off from work.<br><br>Garcia Aff. Ex. J; ¶ 25. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 25. | This request was sent by email to only Jose and Guillermo Garcia. No GE person was copied on this email.<br><br>Garcia Aff. Ex. J; ¶ 24. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 26. | Around July 2011, a GE manager informed GRUPO that Hexemer and another GID employee, Daniela Casavantes ("Casavantes"), were having difficulty working together and requested that GRUPO address the situation.<br><br>Garcia Aff. Ex. K; ¶ 26. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 27. | The GE manager did not address the situation with Hexemer or Casavantes directly.<br><br>Garcia Aff. ¶ 26, Ex. K. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 28. | GID addressed the situation between Hexemer and Casavantes by moving Casavantes to a different project.<br><br>Garcia Aff. ¶ 26. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 29. | By the end of 2011, the original projected deadline, the Database Project was still incomplete. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |

| | | |
|---|---|---|
| | Garcia Aff. ¶ 27; Garcia Dep. 115:2-7. | |
| 30. | GE and GRUPO extended the Database Project's PO for approximately 6 more months, until June of 2012.<br><br>Garcia Aff. ¶ 27; Garcia Dep. 43:24-25; 115:4-6. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 31. | The budget for the PO was also increased in direct proportion for the corresponding period.<br><br>Garcia Aff. ¶ 27; Garcia Dep. 44:3-19. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 32. | The Database Project was finished in May 2012.<br><br>Garcia Aff. ¶ 27; Garcia Dep. 52:15-18; 115:6-7. | Disputed to the extent this purported statement of fact is potentially misleading insofar as it suggests that Hexemer was informed that the funding for the project had been decreased.<br><br>• Hexemer was never informed that the project was set to expire. Hexemer Decl. ¶¶ 10-11.<br><br>• GID routinely staffs contractors to different projects once the project they are working on is completed. Hexemer Decl. ¶ 10.<br><br>• Hexemer was at no time between May and October 2012 notified of any change in her employment status. Hexemer Decl. ¶¶ 10-11.<br><br>• Hexemer was at no time between May and October 2012 notified of an intention to terminate her employment in October until October 31, 2012, the date of her termination. Hexemer Decl. ¶ 11; Ottinger Decl. Ex. B ("Garcia Dep.") 88:20-89:9. |
| 33. | The budget received from GE decreased starting the following month, June 2012. | Disputed to the extent that this purported statement of fact is potentially misleading insofar as it suggests that Hexemer was informed that the funding for the project had been decreased. |

| | | |
|---|---|---|
| | Garcia Aff. Ex. L; ¶ 27. | • Hexemer was never informed that the project was set to expire. Hexemer Decl. ¶¶ 10-11. <br><br> • GID routinely staffs contractors to different projects once the project they are working on is completed. Hexemer Decl. ¶ 10. <br><br> • Hexemer was at no time between May and October 2012 notified of any change in her employment status. Hexemer Decl. ¶¶ 10-11. <br><br> • Hexemer was at no time between May and October 2012 notified of an intention to terminate her employment in October until October 31, 2012, the date of her termination. Hexemer Decl. ¶ 11; Garcia Dep. 88:20-89:9. |
| | *The Table of Contents Project* | . |
| 34. | On May 21, 2012, Garcia emailed his brother suggesting that they try to place Hexemer on another project, and if they were unsuccessful by October, they would terminate her employment with GID. <br><br> Garcia Aff. Ex. A; ¶ 31. | Disputed to the extent that this purported statement of fact is potentially misleading as to the cause of the termination of Hexemer's employment. <br><br> • Hexemer was terminated the first workday after making her complaint of discrimination.  Undisputed Material Facts 40, 48, 49, 50, 51, 60, and 61. <br><br> • Defendant Garcia explained in the termination letter that the decision to terminate Hexemer's employment was made "[i]n recent days," due to "the difficult economic downturn," and was "in line with the overall budget assigned to us by our Customer".  Ottinger Decl. Ex. H. <br><br> • Defendant Garcia noted in his October 31, 2012 email to Hexemer that her employment was being terminated because he "had been notified that [Hexemer's] services as a contingent assignment within GE Infrastructure |

|  |  | w[ould] no longer be required as of October 31, 2012." Ottinger Decl. Ex. H. |
|---|---|---|
|  |  | • On November 7, 2012, Defendant Garcia informed Hexemer that the decision to terminate her employment came from higher up.  Ottinger Decl. Ex. A ("Hexemer Dep.") 30:1-5; Hexemer Decl. ¶ 37. |
|  |  | • At that time Defendant Garcia also admitted to telling Hexemer that he was unaware of any decision to terminate Hexemer's employment. Garcia Dep. 117:11-14; 119:13-120:3. |
|  |  | • Defendant Garcia also testified that Hexemer's employment was terminated because GE eliminated her position. Garcia Dep. 114:4-24. |
|  |  | Also disputed to the extent this purported statement of fact is potentially misleading about Hexemer's knowledge regarding the allegedly temporary nature of her new assignment. |
|  |  | • Hexemer was never told the TOC Project was temporary. Hexemer Decl. ¶¶ 10-11. |
|  |  | • Hexemer was at no time between May and October 2012 notified of any change in her employment status. Hexemer Decl. ¶ 11. |
|  |  | • Hexemer was at no time between May and October 2012 notified of an intention to terminate her employment in October until October 31, 2012, the date of her termination. Hexemer Decl. ¶ 11. |
| 35. | Guillermo Garcia replied in an email the same day agreeing that they should try this plan.<br><br>Garcia Aff. Ex. A; ¶ 31. | Disputed to the extent that this purported statement of fact is potentially misleading as to the cause of the termination of Hexemer's employment.<br><br>• Hexemer was terminated the first workday |

after making her complaint of discrimination.  Undisputed Material Facts 40, 48, 49, 50, 51, 60, and 61.

- Defendant Garcia explained in the termination letter that the decision to terminate Hexemer's employment was made "[i]n recent days," due to "the difficult economic downturn," and was "in line with the overall budget assigned to us by our Customer".  Ottinger Decl. Ex. H.

- Defendant Garcia noted in his October 31, 2012 email to Hexemer that her employment was being terminated because he "had been notified that [Ms. Hexemer's] services as a contingent assignment within GE Infrastructure w[ould] no longer be required as of October 31, 2012."  Ottinger Decl. Ex. H.

- On November 7, 2012, Defendant Garcia informed Hexemer that the decision to terminate her employment came from higher up.  Hexemer Dep. 30:1-5; Hexemer Decl. ¶ 37.  At that time Defendant Garcia also admitted to telling Hexemer that he was unaware of any decision to terminate Hexemer's employment. Garcia Dep. 117:11-14; 119:13-120:3.

- Defendant Garcia also testified that Hexemer's employment was terminated because GE eliminated her position. Garcia Dep. 114:4-24.

Also disputed to the extent this purported statement of fact is potentially misleading about Hexemer's knowledge regarding the allegedly temporary nature of her assignment.

- Hexemer was never told the TOC Project was temporary. Hexemer Decl. ¶¶ 10-11.

- Hexemer was at no time between May and

| | | October 2012 notified of any change in her employment status. Hexemer Decl. ¶ 11.<br><br>• Hexemer was at no time between May and October 2012 notified of an intention to terminate her employment in October until October 31, 2012, the date of her termination. Hexemer Decl. ¶ 11. |
|---|---|---|
| 36. | After the end of the Database Project, Garcia temporarily assigned Hexemer to provide general support for GRUPO's information management team in Mexico, which was working on a table of contents project within the Schenectady facility (the "TOC Project").<br><br>Garcia Aff. ¶ 32; Garcia Dep. 53:23-54:1; 54:8-16; 54:19-24; 61:2-10; 83:22-25; 115:13-17. | Disputed to the extent this purported statement of fact is potentially misleading about Hexemer's knowledge regarding the allegedly temporary nature of her assignment.<br><br>• Hexemer was never told the TOC Project was temporary. Hexemer Decl. ¶¶ 10-11.<br><br>• Hexemer was at no time between May and October 2012 notified of any change in her employment status. Hexemer Decl. ¶ 11.<br><br>• Hexemer was at no time between May and October 2012 notified of an intention to terminate her employment in October until October 31, 2012, the date of her termination. Hexemer Decl. ¶ 11. |
| 37. | Hexemer had previously told Garcia that she was able to work with various computer programs and software, other than the database work she was hired to perform.<br><br>Garcia Aff. ¶ 33; Garcia Dep. 61:22-62:8. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 38. | Hexemer lacked the computer abilities that she had claimed she had and that she was not suitable for supporting the TOC project.<br><br>Garcia Aff. ¶ 34; Garcia Dep. 62:11-15; 84:9- 15; 88:6-10; 115:18-21. | Object on hearsay grounds.<br><br>Disputed.<br><br>• Hexemer was qualified for and had the abilities to continue in this role and did so successfully for five months.  Hexemer Decl. ¶¶ 12-15. |

|  |  |  |
|---|---|---|
|  |  | • Hexemer received consistently positive reviews from both GE and GID employees and no negative performance reviews or other negative feedback during the period between May and October 2012. Hexemer Decl. ¶¶ 13-14. |
|  |  | • Defendant Garcia informed Hexemer that everyone was happy with her work and offered her a raise in June 2012. Hexemer Decl. ¶ 15. |
|  |  | • Defendant Garcia specifically noted Hexemer's "outstanding" performance in the termination letter sent to Hexemer, which stated that the termination "should not be taken as any reflection on you personally or your performance, which by the way, was outstanding." Ottinger Decl. Ex. H. |
| 39. | By June 2012, Garcia decided that Hexemer could not stay indefinitely on TOC project and that, per the May 21 plan, he would have to terminate her by October unless a new project was found for which her skills were better suited.<br><br>Garcia Aff. ¶ 35; Garcia Dep. 116:1-8. | Disputed.<br><br>• Hexemer was terminated the first workday after making her complaint of discrimination. Undisputed Material Facts 40, 48, 49, 50, 51, 60, and 61.<br><br>• Defendant GID found a new project for Hexemer to work on. Undisputed Material Fact 36.  Hexemer worked on the TOC project for the five months preceding the termination of her employment without any documented performance problems. Hexemer Decl. ¶¶ 12-15.<br><br>• Hexemer was qualified for and had the abilities to continue in this role and did so successfully for five months.  Hexemer Decl. ¶¶ 12-15.<br><br>• Hexemer received consistently positive reviews from both GE and GID employees and no negative performance reviews or other negative feedback during the period |

between May and October 2012. Hexemer Decl. ¶¶ 13-14.

- Defendant Garcia informed Hexemer that everyone was happy with her work and offered her a raise in June 2012. Hexemer ¶ 15.

- Defendant Garcia noted in his October 31, 2012 email to Hexemer that her employment was being terminated because he "had been notified that [Hexemer's] services as a contingent assignment within GE Infrastructure w[ould] no longer be required as of October 31, 2012." Ottinger Decl. Ex. H.

- Defendant Garcia explained in the termination letter that the decision to terminate Hexemer's employment was made "[i]n recent days," due to "the difficult economic downturn," and was "in line with the overall budget assigned to us by our Customer". Ottinger Decl. Ex. H.

- In fact, Defendant Garcia specifically noted Hexemer's "outstanding" performance in the termination letter sent to Hexemer, which stated that the termination "should not be taken as any reflection on you personally or your performance, which by the way, was outstanding." Ottinger Decl. Ex. H.

- On November 7, 2012, Defendant Garcia informed Hexemer that the decision to terminate her employment came from higher up. Hexemer Dep. 30:1-5. At that time Defendant Garcia also admitted to being unaware of any decision to terminate Hexemer's employment prior to its happening. Garcia Dep. 117:11-14; 119:13-120:3.

- Defendant Garcia also testified that Hexemer's employment was terminated

| | | because GE eliminated her position. Garcia Dep. 114:4-24. |
|---|---|---|
| | *The October 25 Incident* | |
| 40. | On October 25, 2012, Hexemer, Jake Tefft, and Hunt were engaged in a conversation near the work area of Sarah Hill ("Hill"), a GE employee.<br><br>Ebert Decl. Ex. A ¶¶ 25- 26; Hexemer Dep. 34:16-17. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 41. | Hexemer made a remark to Tefft and Hunt about gaining weight from sitting at their desks.<br><br>Ebert Decl. Ex. A ¶ 25. | Disputed as potentially misleading, Hexemer was engaged in a private conversation with two co-workers when she made a comment about how much weight they all gain by sitting at their desks all day. Hexemer Dep. 34:10-15; Hexemer Decl. ¶ 16. |
| 42. | At some point, Hill became involved in the conversation.<br><br>Ebert Decl. Ex. A ¶ 26. | Disputed to the extent this purported statement of fact understates the discriminatory nature of Hill's comments to Hexemer.<br><br><ul><li>Hill overheard Hexemer's conversation and began to berate her, stating that "in this country we don't talk like that." Hexemer Dep. 35:21-36:5; Hexemer Decl. 17.</li><li>Hill further added that Hexemer's comment might be acceptable in Iran, but not in the United States and described Hexemer as "uncivilized." Hexemer Dep. 36:19-37:2; 46:17-25; Hexemer Decl. ¶ 17.</li></ul> |
| 43. | Hexemer became upset by some of the comments made by Hill.<br><br>Ebert Decl. Ex. A  ¶ 27. | Disputed to the extent this purported statement of fact understates the discriminatory nature of Hill's comments to Hexemer.<br><br>Hexemer was taken aback by Hill's comments and questioned what her ancestry had to do with anything. Hexemer Dep. 47:5-10; Hexemer Decl. ¶ 19. |

| 44. | Hexemer stated that she was an American citizen also and that if her nationality bothered Hill, she would resign.<br><br>Ebert Decl. Ex. A ¶ 27; Hexemer Dep. 54:19-24. | Disputed to the extent this purported statement of fact understates the discriminatory nature of Hill's comments to Hexemer.<br><br>• Hexemer informed Hill that she was a U.S. citizen and that her husband and children were American. Hexemer Decl. 19-20.<br><br>• Disgusted by what she perceived to be blatantly discriminatory comments, Hexemer told Hill: "If my nationality is affecting you that much, I will resign." Hexemer Dep. 47:5-10; Hexemer Decl. ¶ 21. |
| --- | --- | --- |
| 45. | Hexemer went to speak with Kathleen Bokan ("Bokan") and Peter Nelli ("Nelli"), two GE employees, about the incident.<br><br>Ebert Decl. Ex. A ¶ 28; Hexemer Dep. 59:16-25. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 46. | Bokan and Nelli were not in their cubicles at the time.<br><br>Ebert Decl. Ex. A ¶ 28; Hexemer Dep. 59:16-25. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 47. | After the incident, Hexemer spoke with GID employee Tefft.<br><br>Ebert Decl. Ex. A ¶ 29. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 48. | Tefft allowed Hexemer to go home early.<br><br>Ebert Decl. Ex. A ¶ 29. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 49. | Hexemer was not scheduled to work the next day, Friday.<br><br>Ebert Decl. Ex. A ¶ 30. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 50. | When Hexemer returned to work on Monday, October 29, Tefft and Tomas | Disputed to the extent this purported statement of fact is incomplete. |

| | | |
|---|---|---|
| | Zalewski spoke with Hexemer about the October 25 incident.<br><br>Garcia Aff. ¶ 39; Ebert Decl. Ex. A ¶ 30; Hexemer Dep. 62:17-63:12. | • Hexemer told Tefft and Zalewski that she believed Hill's conduct was discriminatory. Hexemer Dep. 62:17-63:7.<br><br>• Tefft informed Hexemer that he had spoken with Garcia about Hexemer's concerns, and that they agreed that Hexemer would no longer be required to have unwanted contact with Hill. Hexemer Dep. 63:16-64:14; Hexemer Decl. ¶ 25.<br><br>• Hexemer told Tefft that she thought this response was insufficient, but that she was willing to continue to work. Hexemer Dep. 72: 3-25; Hexemer Decl. ¶¶ 26-27.<br><br>• Tefft informed Garcia of the results of this meeting. Ottinger Decl. Ex. G. |
| 51. | The following day, October 30, Hexemer left a message for Tefft informing him that she would be out sick.<br><br>Ebert Decl. Ex. A ¶ 32; Hexemer Dep. 73:17-23. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 52. | Hill spoke with her GE supervisor, Jared York ("York"), about the incident.<br><br>York Aff. ¶ 12; York Dep. 33:13-34:6. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 53. | Hill also sent York several emails recounting her version of the October 25 incident.<br><br>York Aff. Ex. A; ¶ 11. | Objection on hearsay grounds to the extent the emails are being offered for truth of the matter asserted. |
| 54. | On October 30, 2012, York sent an email to Jose Garcia and Guillermo Garcia recounting his understanding of the October 25 incident.<br><br>York Aff. Ex. C; ¶ 13; Garcia Aff. ¶ | Undisputed for purposes of Defendants' Motion for Summary Judgment. |

| | | |
|---|---|---|
| | 40. | |
| 55. | In the email, York stated that he was unhappy with how Hexemer had handled the situation on October 25, writing that "[i]f [Hexemer] was indeed offended by something Sarah said, I would expect her to take the appropriate course of action with her management." York asked that GID address the issue with Hexemer. York Aff. Ex. C; ¶ 14; Garcia Aff. ¶ 40. | Disputed to the extent that it is potentially misleading about the nature of the email.<br><br>• York also remarked in the email on Hexemer's "completely unprofessional behavior," insisting that "I need people who can work and communicate effectively and professionally," and concluding by stating that "I'm looking to you to make sure that Soheila understands that her behavior was unacceptable and will not be tolerated" and "I'll look forward to hearing your updates on next steps with Soheila." Ottinger Decl. Ex. F. |
| 56. | York at no point, in this email or thereafter, requested that GID terminate Hexemer. York Aff. Ex. C; ¶ 13. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 57. | In response to York's October 30 email, Jose and Guillermo Garcia contacted York by phone on October 30.<br><br>York Aff. ¶ 14; Garcia Aff. ¶ 42; York Dep. 56:7-12. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 58. | Jose and Guillermo Garcia informed York that they had already previously decided to terminate Hexemer's contract, *irrespective* of the October 25 incident.<br><br>York Aff. Ex. D; ¶ 14; York Dep. 56:21-57:2. | Disputed to the extent that York was told the termination was irrespective of the October 25 incident.<br><br>• Defendant Garcia testified that when he spoke to York he did not tell York a decision to terminate Hexemer's employment had already been made or that he was going to terminate Hexemer's employment. Garcia Dep. 82:14-83:5.<br><br>• York testified only that by the time he spoke with Jose and Guillermo Garcia they told him that they had decided to fire Hexemer.  York admitted that they did not tell him when the decision was made or why it was made. Ottinger Decl. Ex. C |

| | | ("York Dep.") 56:21-57:8.

Further disputed to the extent Defendants intend to rely on this fact for the underlying proposition that Hexemer was terminated irrespective of the October 25 incident, as the evidence cited in support of this purported statement of fact is insufficient to establish the absence of a material dispute of fact as to that issue. |
|---|---|---|
| 59. | York did not question this decision further as Hexemer was GID's employee and GE was not involved in GID's staffing decisions.

York Aff. Ex. D; ¶ 14; York Dep. 18:6-10. | Disputed to the extent that York was told the termination was irrespective of the October 25 incident.

• Defendant Garcia testified that when he spoke to York he did not tell York a decision to terminate Hexemer's employment had already been made or that he was going to terminate Hexemer's employment. Garcia Dep. 82:14-83:5.

• York testified only that by the time he spoke with Jose and Guillermo Garcia they told him that they had decided to fire Hexemer.  York admitted that they did not tell him when the decision was made or why it was made. York Dep. 56:21-57:8.

Further disputed to the extent Defendants intend to rely on this fact for the underlying proposition that Hexemer was terminated irrespective of the October 25 incident, as evidence cited is insufficient to establish the absence of a material dispute of fact as to that issue. |
| 60. | On October 31, 2012, Hexemer returned to work.

Ebert Decl. Ex. A ¶ 33. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 61. | At around 3 pm, Garcia sent Hexemer an email notifying her that her employment would be terminated as of that date. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |

| | Garcia Aff. Ex. M; ¶ 43. | |
|---|---|---|
| 62. | Garcia used the standard template for termination notices that GID uses for all terminations as the starting point of Hexemer's termination notice.<br><br>Garcia Aff. ¶ 44; Ex. N. | Disputed to the extent that this purported statement of fact implies the statements in the termination notice are inaccurate.<br><br>The termination letter informed Hexemer that the decision to terminate her employment was based on "the difficult economic downturn we are going through" and specifically stated that it "should not be taken as any reflection on you personally or your performance, which by the way, was outstanding." Compare Ottinger Decl. Ex. H (the termination letter addressed to Hexemer, including the above language regarding her performance), with Ottinger Decl. Ex. I (a termination letter omitting this language).<br><br>Further disputed insofar as the purported termination letter offered as a "template" is not dated and does not therefore undermine the statements made in the letter to Hexemer. See generally Ottinger Decl. Ex. J. |
| 63. | GID has an established process of giving employees notice of their termination the day they are terminated.<br><br>Garcia Aff. Ex. O; ¶ 45; Garcia Dep. 85:13-21. | Disputed to the extent that Defendant Garcia stated to Hexemer on November 7, 2012 that GE normally provides him with two months notice of decisions by GE to terminate a contract employee, and that, with respect to her termination, he would have provided Hexemer with such notice had GE provided it. Hexemer Decl. ¶ 39. |
| 64. | After receiving notice of her termination, Hexemer went to York's office where Hexemer repeatedly accused York of discriminating against her as an Iranian and a contractor.<br><br>York Aff. Ex. Ex. D, E; ¶ 15; Hexemer Dep. 76:16-18. | Disputed to the extent this purported statement of fact is misleading as to the nature of the conversation.<br><br>• Hexemer also informed York that she believed her termination was in retaliation for her complaint against Hill. Hexemer Decl. ¶ 31.<br><br>• York told Hexemer that he did not know anything about the decision to terminate Hexemer's employment and that he did not care because Hexemer was not a GE employee, and that it does not matter |

| | | whether Hexemer had been discriminated against or not. Hexemer Decl. ¶ 32. |
|---|---|---|
| 65. | York denied that he discriminated against Hexemer for being Iranian or a contractor.<br><br>York Aff. Ex. D, E; ¶ 15. | Disputed to the extent this purported statement of fact is misleading as to the nature of the conversation.<br><br>• Hexemer also informed York that she believed her termination was in retaliation for her complaint against Hill. Hexemer Decl. ¶ 31.<br><br>• York told Hexemer that he did not know anything about the decision to terminate Hexemer's employment and that he did not care because Hexemer was not a GE employee, and that it does not matter whether Hexemer had been discriminated against or not. Hexemer Decl. ¶ 32. |
| 66. | York informed Hexemer that he had notified GRUPO about his concern regarding the October 25 incident and disruption in the office and that if she wanted to further discuss her termination, she should do so with GRUPO.<br><br>York Aff. Ex. D, E; ¶ 15. | Disputed to the extent this purported statement of fact is misleading as to the nature of the conversation.<br><br>• Hexemer also informed York that she believed her termination was in retaliation for her complaint against Hill. Hexemer Dep. 77:3- 78:19; Hexemer Decl. ¶ 31<br><br>• York told Hexemer that he did not know anything about the decision to terminate Hexemer's employment and that he did not care because Hexemer was not a GE employee, and that it does not matter whether Hexemer had been discriminated against or not. Hexemer Dep. 77:3-78:19; Hexemer Decl. ¶ 32. |
| 67. | After she returned home, Hexemer called Garcia to discuss her termination.<br><br>Ebert Decl. Ex. A ¶ 37; Hexemer Dep. 81:17-23. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 68. | Hexemer told Garcia she planned to | Disputed to the extent this purported statement of |

| | | |
|---|---|---|
| | file a lawsuit against GE and asked for Garcia's support.<br><br>Garcia Aff. ¶ 47; Garcia Dep. 105:13-14. | fact is misleading as to the nature of the conversation. Hexemer also informed Garcia during this conversation that she believed her termination was in retaliation for her complaint against Hill. Hexemer Dep. 81:19-82:7; Hexemer Decl. ¶ 33. |
| 69. | Garcia volunteered to fly to New York to meet with Hexemer and discuss her concerns.<br><br>Garcia Aff. ¶ 47; Hexemer Dep. 6:5; Garcia Dep. 107:6-11. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 70. | Garcia and Hexemer met on November 6, 2012 in New York over lunch.<br><br>Ebert Decl. Ex. A ¶ 38; Hexemer Dep. 5:18-24; Garcia Aff. ¶ 48. | Undisputed for purposes of Defendants' Motion for Summary Judgment. |
| 71. | Hexemer surreptitiously tape-recorded this conversation without Garcia's knowledge or consent.<br><br>Garcia Aff. ¶ 48; Hexemer Dep. 8:10-13; 11:11-13; Garcia Dep. 108:4-7. | Disputed to the extent it misstates Hexemer's motives in recording the conversation. Hexemer taped the conversation to protect herself against any further violation of her rights. Hexemer Decl. ¶ 35. |

## PLAINTIFF'S SEPARATE STATEMENT OF DISPUTED AND UNDISPUTED MATERIAL FACTS

### Plaintiff's Background and Employment With Defendants

72.     Hexemer was born in Iran and is of Persian descent. Hexemer Decl. ¶ 3.

73.     Hexemer immigrated to the United States in 1977 and has been a citizen of the United States since 1988. Hexemer Decl. ¶ 4.

74.     Hexemer's husband and children are natural-born American citizens. Hexemer Decl. ¶ 5.

75.     Hexemer worked for GE in its Schenectady office from March 2009 until approximately September 2010 (in a position with GE Power & Water's Generator Division through Granite Services International, Inc.) Hexemer Decl. ¶ 6.

76.     In January 2011, Defendant GID again hired Hexemer to work in GE's Schenectady office for a project management position with GE Power & Water's Aftermarket Steam and Generator Divisions. Hexemer Decl. ¶ 7.

77.     In that position, Hexemer was responsible for (i) updating GE's Data Management System containing power plant manuals, (ii) verifying the accuracy of manuals after language translation, (iii) creating web-based workflow forms for GE's engineering staff, (iv) providing training on Microsoft Office products, (v) maintaining GE's email server archive tool and (vi) designing and building GE Power & Water's webpage. Hexemer Decl. ¶ 8.

78.     Hexemer continued in that position with distinction and without any recorded performance problems until her unlawful termination on October 31, 2012, two days after she complained to GID about discriminatory treatment. Hexemer Decl. ¶ 9.

79.     Hexemer was never informed of a budget reduction, a change in her employment status, or a decision to terminate her employment prior to October 31, 2012, the date of her termination. Hexemer Decl. ¶ 10.

80.     Hexemer had no performance problems between May and October 2012. Hexemer Decl. ¶¶ 12-14.

81.     Hexemer received a number of positive performance reviews during that period, and was even offered a raise by Garcia in June 2012—a month after the purported decision to terminate her employment—during an in person meeting when he also told her everyone at GE and GID was extremely happy with her performance. Hexemer Decl. ¶ 15.

**Hexemer's Complaints to GID Employees**

82.     Following the October 25 incident, Jared York, a GE manager who supervised some of the employees involved in the October 25 incident, including Hill, wrote an email to

Defendant Garcia and his brother Guillermo Garcia, an officer of GID, referring to Hexemer's "completely unprofessional behavior," insisting that "I need people who can work and communicate effectively and professionally," and concluding by stating that "I'm looking to you to make sure that Soheila understands that her behavior was unacceptable and will not be tolerated" and "I'll look forward to hearing your updates on next steps with Soheila." York Aff. Ex. C.

83.     When Hexemer returned to work on her next scheduled workday—Monday, October 29, 2012—she met with Jacob Tefft, a GID co-worker, and Thomas Zalewski, a GID Global supervisor. Hexemer Dep. 62:17-63:7; Hexemer Decl. ¶ 24.

84.     During that meeting, Tefft made it clear to Hexemer that he had spoken with Defendant Garcia and that Garcia understood that Hexemer had been subject to discrimination, that he sympathized with Hexemer, and that he agreed that Hexemer would no longer be required to have any unwanted contact with Hill. Hexemer Dep. 63:16-64:14; Hexemer Decl. ¶ 25.

85.     Although Hexemer told Tefft and Zalewski that she was dissatisfied and did not think this response was an adequate remedy for the situation, she believed that she had no choice but to continue with her work, which she expressed a willingness to do. Hexemer Dep. 72: 3-25; Hexemer Decl. ¶¶ 26-27.

86.     On October 31, 2012, Mr. Tefft emailed Guillermo Garcia regarding this meeting, and that email was promptly forwarded to Defendant Garcia. Ottinger Decl. Ex. G.

**The November 7, 2012 Meeting With Garcia**

87.     Hexemer and Garcia met in person at a restaurant on November 7, 2012, approximately a week after Hexemer was terminated, to discuss the situation over lunch. Hexemer Dep. 5:18-25; Hexemer Decl. ¶ 34; Garcia Dep. 107:21-108:3.

88.   Hexemer, concerned about Defendants' blatant violation of her rights, recorded the conversation. Hexemer Decl. ¶ 35.

89.   At the meeting, Hexemer again reiterated to Garcia that she believed that she had been terminated in retaliation for her complaint about Hill. Hexemer Decl. ¶ 36.

90.   Garcia insisted at the November meeting that GE had unilaterally terminated Hexemer, and that the decision was made by "higher ups." Hexemer Dep. 29:15-30:5; Hexemer Decl. ¶ 37; Ottinger Decl. Ex. D 12:1-4.

91.   Garcia further stated that he had not been notified by GE of its decision until October 31, the day of the termination. Hexemer Decl. ¶ 38; Garcia Dep. 117:11-14; Ottinger Decl. Ex. D 20:10-14.

92.   Garcia also told Hexemer that while GE customarily gave him two months' notice when eliminating a position or terminating a contract employee, they did not do so in this instance, but that he would have notified Hexemer in advance of the termination had GE given him its customary notice. Hexemer Decl. ¶ 39.

93.   Garcia then told Hexemer that he was "happy" with her performance and even suggested that GID would be willing to hire her in the future. Ottinger Decl. Ex. D 40:13-17; 47:24-48:4.

///

///

94.    Garcia finally informed Hexemer that he believed her assertion that she had been discriminated against and offered to speak with GE management on her behalf if she waited to pursue a lawsuit. Hexemer Decl. ¶ 39; Ottinger Decl. Ex. D 15:18-20; 29:11-15; 30: 11-16; 38:11-14; 58:24-59:5.

Dated:        New York, New York
              January 12, 2015

                                         THE OTTINGER FIRM, P.C.


                              By:    Robert W. Ottinger (RO-8879)
                                     401 Park Avenue South
                                     New York, New York 10016
                                     Telephone: (212) 571-2000
                                     Facsimile: (212) 571-0505
                                     robert@ottingerlaw.com

                                     *Attorneys for Plaintiff*