**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------- x

SOHEILA HEXEMER,                              :

               Plaintiff,               :

                            :

     v.                                     :   Index No. 12-cv-1808 (LEK/CFH)

                            :

GENERAL ELECTRIC COMPANY, GID       :
GLOBAL, LLC and JOSE GARCIA, in his     :
professional and individual capacities,          :

                            :

             Defendants.          :

----------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INGRAM YUZEK GAINEN CARROLL & BERTOLOTTI, LLP**
*Attorneys for Defendants*
*General Electric Company,*
*GID Global, LLC, and Jose Garcia*
250 Park Avenue
New York, NY 10177

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................. 2

I.   There is no genuine dispute of material fact, because Defendants
     have produced sufficient evidence that Hexemer's termination
     was due to budgetary reasons and the plan to terminate her
     pre-dates any alleged protected activity ........................................................... 3

     A.   Defendants have produced sufficient evidence that the plan
          and deadline to terminate Hexemer were set before any
          alleged protected activity ...................................................................... 3

     B.   The May Email is sufficient evidence of a legitimate,
          non-retaliatory reason because the law does not require
          a more formal decision process ............................................................. 5

     C.   Defendants were not required to inform Hexemer of their plan to
          terminate her, because she was an at-will employee ............................. 5

II.  Hexemer has failed to produce sufficient evidence that Defendants'
     legitimate, non-retaliatory reason is pretextual ............................................... 6

     A.   Hexemer's transcript of the November 7, 2012 meeting
          submitted in opposition to the summary judgment motion
          is inadmissible ...................................................................................... 6

     B.   Defendants' explanation has not been inconsistent, because
          Defendants are not arguing that they terminated Hexemer
          for her performance ............................................................................... 8

     C.   Defendants' explanation has not been inconsistent, because
          Garcia did not state that GE had made the decision to
          terminate Hexemer ................................................................................ 9

     D.   Hexemer has not produced, and cannot produce, evidence
          that her termination was motivated by retaliatory animus ..................... 9

CONCLUSION .......................................................................................................... 10

i

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                          PAGE

*Bir v. Pfizer, Inc.*,
    510 Fed.Appx. 29 (2d Cir. 2013)................................................................3

*Bowen-Hooks v. City of New York*,
    13 F.Supp.3d 179 (E.D.N.Y. 2014) ..........................................................2

*Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Ed.*,
    444 F.3d 158 (2d Cir. 2006)......................................................................5

*Clark Cnty. Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) ..............................................................................4–5

*Dagen v. CFC Grp. Holdings Ltd.*,
    00 Civ. 5682, 2004 WL 830057 (S.D.N.Y. Apr. 13, 2004).....................6

*El Sayed v. Hilton Hotels Corp.*,
    627 F.3d 931 (2d Cir. 2010).....................................................................3

*Fraccola v. City of Troy*,
    08-CV-01001, 2010 WL 2089250 (N.D.N.Y. May 25, 2010).........1, 10

*Grant v. Cornell Univ.*,
    87 F.Supp.2d 153 (N.D.N.Y. 2000) .........................................................8

*Jute v. Hamilton Sundstrand Corp.*,
    420 F.3d 166 (2d Cir. 2005).....................................................................3

*Kleehammer v. Monroe Cnty.*,
    583 Fed.Appx. 18 (2d Cir. 2014) .............................................................2

*Lenigan v. Syracuse Hancock Int'l Airport*,
    10-CV-1420, 2013 WL 149461 (N.D.N.Y. Jan. 14, 2013).....................6

*Nagle v. Marron*,
    663 F.3d 100 (2d Cir. 2011).....................................................................4

*Perkins v. Mem'l Sloane-Kettering Cancer Ctr.*,
    02 Civ. 6493, 2005 WL 2453078 (S.D.N.Y. Sept. 30, 2005)..............6–7

*Phoenix Assocs. III v. Stone*,
    60 F.3d 95 (2d Cir. 1995).........................................................................7

*Quarless v. Brooklyn Botanic Garden Corp.*,
  11-CV-05684, 2014 WL 2767085 (E.D.N.Y. Jun. 18, 2014)............................................5

*Santana v. City of Ithaca*,
  12–cv–625, 2014 WL 6476160 (N.D.N.Y. Nov. 19, 2014) ...........................................3

*United States v. Bruce*,
  159 F.3d 1348 (2d Cir. 1998)........................................................................................6

*United States v. Buck*,
  84 Cr. 220, 1987 WL 17646 (S.D.N.Y. Sept. 18, 1987)...............................................6

*United States v. Yevakpor*,
  419 F.Supp.2d 242 (N.D.N.Y. 2006)............................................................................8

*Vormittag v. Unity Electric Co.*,
  12 CV 4116, 2014 WL 4273303 (E.D.N.Y. Aug. 28, 2014) .........................................8

*Zann Kwan v. Andalex Grp. LLC*,
  737 F.3d 834 (2d Cir. 2013)..........................................................................................4

## RULES AND STATUTES

42 U.S.C. § 1981 .................................................................................................................2

Fed. R. Civ. P. 56(c)(4).......................................................................................................8

Fed. R. Evid. 106 ................................................................................................................7

Fed. R. Evid. 901 ................................................................................................................7

Fed. R. Evid. 1002 ..............................................................................................................6

Executive Law § 290 *et seq.* ..............................................................................................2

## PRELIMINARY STATEMENT

The main issue to be resolved on this motion for summary judgment is whether the plaintiff has carried her burden of proving that the legitimate non-retaliatory reason the defendants have given for the termination of the plaintiff – consistently over a period of more than two years -- was pretextual. Defendants[1] have explained, time and again, that they terminated Hexemer in October 2012 due to budgetary reasons, specifically, that the project for which she was hired, and the corresponding budget for that project, were finished by June, earlier that year.

Defendants have produced evidence that the decision to terminate Hexemer in October was made in May of that year, long before any alleged protected activity. A copy of GID's budget from GE shows the elimination of the budgetary allocation for Hexemer's position starting June 2012, while an email between Garcia and his brother, dated May 21, 2012, explains the budget for Hexemer is finished and outlines the plan to terminate Hexemer in October ("May Email"), unless a new GE project can be found for her before then.[2] Hexemer's arguments that the May Email is insufficient evidence are belied by case law.

Hexemer contends that Defendants' explanations for her termination have been inconsistent, but Hexemer has provided insufficient evidence of any inconsistency. Contrary to Hexemer's allegations, Defendants have consistently explained that Hexemer's termination was due to budgetary reasons on the following occasions:

---

[1] "Defendants" here refers to defendants GID Global, LLC and Jose Garcia. Hexemer does not oppose Defendants' summary judgment motion as to claims against General Electric Company ("GE"). D.I. 73. The defendants have met their burden to show that there is no genuine issue of material fact as to GE's employer status, therefore the claims against GE should be dismissed. *See Fraccola v. City of Troy*, 08-CV-01001, 2010 WL 2089250, at *4 (N.D.N.Y. May 25, 2010). All other capitalized terms have the same meaning as in the Memorandum of Law in Support of Defendants' Motion for Summary Judgment, dated December 12, 2014 ("Moving Brief").
[2] Garcia Aff. Ex. L, A.

- The **October 31, 2012** letter of termination;[3]
- An in-person meeting between Garcia and Hexemer in **early November 2012;**[4]
- Letter submission to the U.S. Equal Employment Opportunity Commission ("EEOC") in response to Hexemer's EEOC discrimination charge, dated **August 15, 2013;** [5]
- Answer to Hexemer's Complaint, dated **October 18, 2013;**[6]
- Defendants' Responses to Plaintiff's First Set of Interrogatories to Defendants, dated **March 17, 2014;**[7]
- Answer to Hexemer's Amended Complaint, dated **March 27, 2014;**[8]
- Garcia's **June 12, 2014** sworn deposition;[9] and
- Garcia's **December 14, 2014** affidavit in support of Defendants' motion for summary judgment.[10]

Therefore, Hexemer has failed to carry her burden of showing that Defendants' legitimate, non-retaliatory reason for her termination is pretextual.

## ARGUMENT

Because Defendants have articulated a legitimate, non-retaliatory reason for Hexemer's termination under the *McDonnell Douglas* framework, the burden is now upon Hexemer to produce evidence that Defendants' reason is pretextual and that the protected activity was the actual but-for cause of her termination.[11] While Hexemer's burden at the *prima facie* stage was

---

[3] Garcia Aff. Ex. M.
[4] *Id.* at ¶ 48.
[5] Declaration of Christina Y. Kim, sworn to February 9, 2015 ("Kim Decl.") Ex. A, p. 2.
[6] *Id.* at Ex. C, ¶ 24.
[7] *Id.* at Ex. D, pp. 5-6.
[8] Ebert Aff. Ex. B, ¶ 24.
[9] *Id.* Ex. D at 84:16-85:4.
[10] Garcia Aff. ¶ 28, 40, 48.
[11] *See Kleehammer v. Monroe Cnty.*, 583 Fed.Appx. 18, 21-22 (2d Cir. 2014). It is unnecessary for the Court to decide whether the "but-for" or "motivating factor" standard applies to the Section 1981 claims, because Hexemer fails to meet her burden even under the lower "motivating factor" standard. *See id.* at 21; *Bowen-Hooks v. City of New York*, 13 F.Supp.3d 179 (E.D.N.Y. 2014) (applying but-for standard to Section 1981 and NYSHRL claims). Because Hexemer uses the "but-for" standard for her discussion of whether Defendants' reason is pretextual, Defendants will also analyze the issue under the "but-for" standard.

*de minimis*, Hexemer must prove that Defendants' legitimate, non-retaliatory reason is a pretext by preponderance of the evidence.[12]

Temporal proximity alone is insufficient to meet Hexemer's burden to produce evidence of pretext.[13] When the plaintiff relies upon temporal proximity together with other evidence, such as an employer's inconsistent explanations, the court must analyze the evidence and determine whether the plaintiff has produced *sufficient evidence* for a reasonable trier of fact to find that the defendant's reason was pretextual.[14]

I.   **There is no genuine dispute of material fact, because Defendants have produced sufficient evidence that Hexemer's termination was due to budgetary reasons and the plan to terminate her pre-dates any alleged protected activity**

Consistent with Defendants' explanation that Hexemer was terminated in October for budgetary reasons, Defendants have produced documentary evidence contemporaneous to the change in the budget, namely, the May Email and a copy of GID's budget showing that the allocation from GE for the Database project was finished by June. This evidence resolves any factual dispute as to whether Hexemer would not have been terminated but for retaliation.

A.   *Defendants have produced sufficient evidence that the plan and deadline to terminate Hexemer were set before any alleged protected activity*

Hexemer argues that Defendants did not make a "final decision" in May 2012 and were only "contemplating" Hexemer's termination, but the May Email shows that Defendants were

---

[12] *See Santana v. City of Ithaca*, 12–cv–625, 2014 WL 6476160, at *6 (N.D.N.Y. Nov. 19, 2014). Hexemer states that "[p]laintiff's burden at the summary judgment stage, however, 'is minimal and *de minimis*," but in fact the original statement of law, which can be traced back to *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166 (2d Cir. 2005), makes clear that this only refers to the plaintiff's burden "at the *prima facie* stage."
[13] *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).
[14] *See Bir v. Pfizer, Inc.*, 510 Fed.Appx. 29, 34 (2d Cir. 2013).

3

not merely "contemplating" Hexemer's termination.[15] As opposed to *Nagle v. Marron*, in which the employer "assert[ed] that an adverse employment decision had in fact already been made, *without being memorialized or conveyed to anyone*, before the employer learned of the protected conduct," the employment decision here was both memorialized *and* conveyed to others.[16]

The May Email establishes that: (1) the decision to terminate Hexemer in October, barring GID finding a new long-term GE project for Hexemer by then, was memorialized in writing; (2) the plan was discussed and agreed to by Jose and Guillermo Garcia; (3) the subject line "Como lo platicamos" ("As discussed") indicates the plan was discussed between Jose and Guillermo Garcia prior to the May Email; and (4) further actions were planned in furtherance of the plan, including conveying to "Oscar," that this course of action would be taken. The May Email flatly contradicts Hexemer's statement in her brief that Defendants failed "to actually document their purported decision."[17]

Furthermore, in *Clark County School District v. Breeden*, the plaintiff's supervisor, before she became aware of the plaintiff's alleged protected activity, told another employee that she was contemplating transferring the plaintiff to another position.[18] The plaintiff was transferred even after the employer became aware of the alleged activity. The U.S. Supreme Court stated that "[e]mployers need not suspend previously planned [employment decisions]

---

[15] Hexemer does not explain or cite authority as to why the "substantial intervening time between the May Email and Ms. Hexemer's ultimate termination" makes Defendants' reason less legitimate. If anything, that the plan was set five months prior to any claimed protected activity, when Defendants would not have had any incentive to create a pretextual reason, only strengthens the evidentiary value of the May Email.

[16] 663 F.3d 100 (2d Cir. 2011) (emphasis added). *Zann Kwan v. Andalex Group LLC*, 737 F.3d 834 (2d Cir. 2013), another of Hexemer's cases, is also distinguishable, because the employer did not produce any evidence that the plaintiff's termination had been planned before the alleged protected activity.

[17] Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated January 12, 2015 ("Opp. Brief"), p. 19-20.

[18] 532 U.S. 268 (2001).

4

upon discovering [protected activity], and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality."[19]

### B. *The May Email is sufficient evidence of a legitimate, non-retaliatory reason because the law does not require a more formal decision process*

Despite Hexemer's attempt to paint Defendants' May 21, 2012 plan as being too informal, *Quarless v. Brooklyn Botanic Garden Corp.*, a case cited by Hexemer, clearly states that "[a]lthough the plaintiff would like the defendants to have gone through a formal process to select employees for termination, the law does not require such a process. An informal process, without more, is not evidence that the plan was a pretext for discrimination."[20] The May Email set a firm deadline and made clear the course of action - barring the start of a new GE project, Garcia would send Hexemer her letter of termination in October.[21] There was no further action contemplated or required, and Hexemer has not produced any evidence to the contrary.

### C. *Defendants were not required to inform Hexemer of their plan to terminate her, because she was an at-will employee*

Hexemer seems to suggest that because Hexemer did not know about the plan to terminate her in October, Defendants' reason is somehow pretextual.[22] Hexemer's employment agreement, signed by her, however, states that Hexemer is an "at will" employee and that GID could terminate Hexemer's employment "at any time, for any reason, with or without cause or notice."[23] The plain language of the employment agreement shows that GID was not required to

---

[19] *Id.* at 272.

[20] 11-CV-05684, 2014 WL 2767085, at *9-10 (E.D.N.Y. Jun. 18, 2014) ("Defendants were under no obligation to rely on the specific documentary evidence Quarless alleges they failed to provide."). *Cioffi v. Averill Park Cent. School District Board of Educ.*, 444 F.3d 158 (2d Cir. 2006) is distinguishable, because in *Cioffi*, a two-step procedure for termination was in place.

[21] Garcia Aff. Ex. A.

[22] Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, dated January 12, 2015 ("Opp. Brief"), p. 16.

[23] Garcia Aff. Ex. F.

give Hexemer advance notice of her impending termination. Furthermore, Garcia explained that advance notice is usually *not* given, because of concerns for the client's confidential and proprietary information.[24]

## II.   Hexemer has failed to produce sufficient evidence that Defendants' legitimate, non-retaliatory reason is pretextual

### A.   *Hexemer's transcript of the November 7, 2012 meeting submitted in opposition to the summary judgment motion is inadmissible*

The only evidence that Hexemer has set forth to prove pretext are alleged inconsistencies in Defendants' explanation for Hexemer's termination. Hexemer's main "evidence" other than her own testimony, however, is not evidence, and is inadmissible and unreliable.

Hexemer's counsel has appended as "Exhibit D" to his declaration what he claims is "a true and correct copy of those portions of the transcript of a November 7, 2012 recording of a conversation between Plaintiff Soheila Hexemer and Defendant Jose Garcia."[25] FRE 1002, however, dictates that a party seeking to introduce the contents of an audio recording as evidence must produce the actual recording.[26] After all, the recording, not the transcript, is the evidence.[27] A transcript is merely an aid and does not have independent evidentiary value.[28]

Furthermore, *both* the audio recording and the transcript must be authenticated, pursuant to FRE 901.[29] A court will grant a motion to strike a transcript that was submitted in opposition

---

[24] Garcia Aff. ¶ 45; Ex. O. Garcia Dep. 85:5-21.

[25] The declaration of Robert Ottinger, dated January 12, 2015 ("Ottinger Decl."), ¶ 6.

[26] FRE 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."); *see Dagen v. CFC Grp. Holdings Ltd.*, 00 Civ. 5682, 2004 WL 830057 (S.D.N.Y. Apr. 13, 2004).

[27] *See United States. v. Buck*, 84 Cr. 220, 1987 WL 17646 (S.D.N.Y. Sep. 18, 1987).

[28] *See United States v. Bruce*, 159 F.3d 1348, at *4 (2d Cir. 1998).

[29] *See Perkins v. Mem'l Sloane-Kettering Cancer Ctr.*, 02 Civ. 6493, 2005 WL 2453078, at *15 (S.D.N.Y. Sep. 30, 2005) (disregarding the transcripts of a voicemail message and audio recording of a meeting because they were not authenticated); *Lenigan v. Syracuse Hancock Int'l Airport*, 10-CV-1420, 2013 WL 149461, at *8 (N.D.N.Y. Jan. 14, 2013).

to a motion for summary judgment if it has not been properly authenticated.[30] Hexemer has not authenticated either the recording or the transcript. Hexemer's counsel, who does not claim to have been present when the recording was made or to have any other personal knowledge about the conversation, recording, or transcript, cannot authenticate the transcript.[31]

Hexemer has not even included the entirety of the transcript, pursuant to FRE 106, which requires that the entire document be produced when necessary to avoid misunderstandings or distortion.[32] Hexemer has instead cherry picked select pages of the transcript to include as Exhibit D, depriving the Court of the benefit of context and the opportunity to review related portions of the conversation that clearly support Defendants' position.

Additionally, the sound quality of the audio recording is inconsistent and, at certain points, so poor as to make the conversation unintelligible.[33] Hexemer has testified that the tape recorder was inside her purse while she recorded the conversation, which may be one reason for the low sound quality.[34] Combined with the background noise, music, and cross-talk, significant portions of the audio recording are indiscernible.[35] Unsurprisingly, the transcript, including those sections that Hexemer explicitly relies upon, is rife with gaps and often unintelligible.[36]

For example, Hexemer directs the court to a section of the transcript in which Garcia allegedly said to Hexemer, "I'm not trying to tell you that I knew from the beginning that your

---

[30] *Perkins*, 2005 WL 2453078, at *15 ("A motion to strike will [] be granted when it challenges documentary evidence that was submitted in support of or in opposition to a summary judgment motion, but which has not been properly authenticated.") (citations omitted).
[31] FRE 901. The certificate by "Lynn M. Reinhardt" is also insufficient because there is no identification of who she is or what the transcript is other than an "11. 7. 12 Recording."
[32] *See Phoenix Assocs. III v. Stone*, 60 F.3d 95, 102 (2d Cir. 1995) ("Underlying Rule 106, then, is a principle of fairness requiring the introduction of an entire [] document if necessary for the 'fair and impartial understanding of the admitted portion' or document.") (citations omitted).
[33] Kim Decl. ¶ 8.
[34] Hexemer Dep. 10: 17-20.
[35] *See, e.g.,* Ottinger Decl. Ex. D. p. 58.
[36] *Id.* Kim Decl. ¶ 10.

7

position were going to be closed on October the 1st. Of course I know. I didn't know that and I didn't know that unfortunately."[37] The rest of the transcript is similarly flawed and often unintelligible.[38] To allow the use of a garbled transcript, without the original recording, context, or authentication would be highly prejudicial to Defendants, and Defendants respectfully ask to the court to strike the transcript.[39]

    B.  *Defendants' explanation has not been inconsistent, because Defendants are not arguing that they terminated Hexemer for her performance*

       Hexemer asserts that Defendants' explanation for Hexemer's termination has shifted between budgetary reasons and Hexemer's performance, but Defendants are not arguing that Hexemer was terminated for performance issues. Instead, Hexemer's suitability for the TOC Project was raised to explain that the TOC Project was only a temporary assignment, and not a long-term GE project (with a budget from GE), in line with the May Email.[40] Hexemer was only temporarily assigned to the TOC Project, which did not receive funding from GE, while GID

---

[37] Ottinger Decl. Ex. D at p. 20.

[38] Kim Decl. ¶ 10.

[39] *See United States v. Yevakpor*, 419 F.Supp.2d 242, 246-250 (N.D.N.Y. 2006) (finding that party's self-selected, out of context material "is more prejudicial than probative.") The Court should also strike Hexemer's declaration, because it does not have a proper subscription and violates FRCP 56(c)(4) (a declaration "must be made on personal knowledge"). *See Grant v. Cornell Univ.*, 87 F.Supp.2d 153, 161 (N.D.N.Y. 2000); Garcia Aff. Ex. F (last page).

[40] Garcia Aff. ¶¶ 32-35. This is distinguishable from *Zann Kwan*, 737 F.3d 834 (2d Cir. 2013), a 2-to-1 decision, in which the employer's agents offered contradictory explanations for the plaintiff's termination (change of business focus and poor performance). *Vormittag v. Unity Electric Co.*, 12 CV 4116, 2014 WL 4273303 (E.D.N.Y. Aug. 28, 2014) is also distinguishable from the present case, because in that case the employer's agent's proffered explanation waffled between saying there was no reason for the plaintiff's termination and that it was for a specific reason (immediately following a recess during his deposition). The court reached its finding of pretext based on the directly contradictory explanation "coupled with" direct evidence of retaliatory animus such as saying that if the plaintiff's daughter did not drop charges, "people close to her" (presumably referring to the plaintiff) could lose their jobs. *Id.* at *6.

8

looked for a long-term project for her.[41] Because Defendants are not arguing that Hexemer was terminated for performance issues, there is no material dispute over her performance.

### C. *Defendants' explanation has not been inconsistent, because Garcia did not state that GE had made the decision to terminate Hexemer*

Although Hexemer claims that Garcia said in November 2012 that the decision to terminate Hexemer had been made by GE and that he did not receive advanced notice of this decision, this argument is not supported by Hexemer's evidence.[42] Garcia did not "receive notice" of Hexemer's termination, because he was the one that had set the plan to terminate Hexemer.[43] The section of Garcia's deposition transcript immediately following that cited by Hexemer demonstrates that Garcia did not understand the original question, and when re-phrased by Hexemer's counsel, Garcia explained that the position had been closed since June and that he had made the decision to terminate her.[44]

There being no other alleged "inconsistencies" in Defendants' explanation, Hexemer has failed to discharge her burden to show that Defendants' explanation is pretextual and that she would not have been terminated but for a retaliatory motive.

### D. *Hexemer has not produced, and cannot produce, evidence that her termination was motivated by retaliatory animus*

That Defendants harbored no retaliatory animus towards Hexemer can be seen by their actions towards Hexemer before and following her termination and Hexemer's own assessment of Defendants. Defendants made special accommodations to support Hexemer when she had family issues, including giving her additional paid time off.[45] After Hexemer alleged that she had

---

[41] Garcia Aff. ¶¶ 30, 32, 35.
[42] Hexemer relies primarily upon the inadmissible transcript and declaration, discussed in II(a).
[43] Garcia Dep. 117:15-24.
[44] Garcia Dep. 117:15-119:7.
[45] Garcia Aff. Ex. I, J, E. Counterstatement of Disputed Facts, ¶¶ 22- 24. Garcia Dep. 93: 10-21.

experienced discrimination, Garcia instructed GID supervisors to invite her to lunch to speak with her, for which he paid.[46] Upon Hexemer contacting him after her termination, he volunteered to fly to New York from Mexico to speak with her and address her concerns.[47]

According to Hexemer herself, Garcia stated that he would keep her in mind for another suitable project.[48] Tellingly, Hexemer stated during her deposition, nearly a year and a half after the alleged retaliation, that she had "a lot of respect for Mr. Garcia" and admitted that she had said that Jose and Guillermo Garcia were like brothers or family to her.[49]

Hexemer's other arguments for pretext, such as "the prospect of retaining Ms. Hexemer would threaten extremely important business relationships to Defendants," are not supported by evidence.[50] Hexemer claims a reasonable jury could infer that Defendants had been motivated by retaliatory animus, but Hexemer has failed to discharge her burden of producing sufficient evidence of any retaliatory animus.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request summary judgment in favor of GE, GID, and Garcia as to all claims.[51]

---

[46] Garcia Dep. 78:2-7, 22-24. Hexemer Dep. 72: 3-14.
[47] Plaintiff's Statement of Disputed Facts, ¶¶ 69-70.
[48] *Id.* at ¶ 93.
[49] Hexemer Dep. 19:4-5; 32:15-20; 68:12-13.
[50] Opp. Brief, p. 14. The only citation following this allegation is to Plaintiff's Counterstatement of Disputed Facts recounting GE and Defendants' interaction after the incident with Hexemer. Plaintiff's Counterstatement of Disputed Facts ("Counterstatement of Disputed Facts") ¶¶ 54-59.
[51] Hexemer does not oppose Defendants' summary judgment motion as to the Title VII claim against GID. Opp. Brief, p. 1, n. 2. Defendants have established there is no genuine issue of material fact as to this claim, so it should be dismissed. *See Fraccola*, 2010 WL 2089250, at *4.

Dated:  New York, New York
        February 9, 2015

                    INGRAM YUZEK GAINEN CARROLL
                      & BERTOLOTTI, LLP

                    By: _____
                        David G. Ebert (debert@ingramllp.com)
                        Christina Y. Kim (ckim@ingramllp.com)
                    *Attorneys for Defendants*
                    250 Park Avenue
                    New York, NY  10177
                    T. (212) 907-9600
                    F. (212) 907-9681

11