UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SOHEILA HEXEMER

                         Plaintiff,

         -against-                                    1:12-CV-1808 (LEK/CFH)

GENERAL ELECTRIC COMPANY;
*et al.*,

                         Defendants.

_____

## MEMORANDUM-DECISION and ORDER

### I.    INTRODUCTION

Plaintiff Soheila Hexemer ("Plaintiff") commenced this employment discrimination action

on December 10, 2012, against Defendants General Electric Company ("GE"), GID Global, LLC

("GID"), and Jose Garcia ("Garcia") (collectively, "Defendants").  Dkt. No. 1 ("Complaint").

Presently before the Court is Defendants' Motion for summary judgment.  Dkt. Nos. 65 ("Motion");

65-30 ("Memorandum").  For the following reasons, the Motion is granted in part and denied in

part.

### II.   BACKGROUND

#### A.  Plaintiff's Employment with GID

Jose and Guillermo Garcia are the owners and general managers of Grupo de Integracion

Digital SA de CV ("GRUPO").  Dkt. Nos. 65-29 ("Defendants' Statement of Material Facts") ¶¶ 1-

2; 71 ("Plaintiff's Counter-Statement of Material Facts") ¶¶ 1-2.  GRUPO and GE are parties to a

Master Service Agreement, under which GRUPO uses GID as its vendor to provide personnel for

various projects at GE.  Defs.' SMF ¶¶ 1, 3; Pl.'s SMF ¶¶ 1, 3.

Plaintiff was born in Iran and is of Persian descent. Pl.'s SMF ¶ 72. Plaintiff immigrated to the United States in 1977 and became a United States citizen in 1988. Id. ¶ 73. In January 2011, Plaintiff began working for GID as a project manager and was responsible for managing a database of documents at GE's Schenectady office ("Database Project"). Defs.' SMF ¶¶ 9, 13; Pl.'s SMF ¶¶ 9,13. The Database Project began in January 2011 and was initially estimated to last for one year. Defs.' SMF ¶ 7. Plaintiff contends that she was never informed that the project was only expected to last a year. Pl.'s SMF ¶ 7. Plaintiff negotiated the terms of her employment directly with GID and executed a formal employment agreement with Jose Garcia on December 14, 2010. Defs.' SMF ¶¶ 10-11; Pl.'s SMF ¶¶ 10,11. During her employment with GID, Plaintiff was supervised by Jake Tefft ("Tefft"), a GID employee who worked at GE's Schenectady campus. Defs.' SMF ¶¶ 14, 17; Pl.'s SMF ¶¶ 14, 17.

The Database Project was still incomplete at the end of 2011, prompting GE and GRUPO to extend it until June 2012. Defs.' SMF ¶¶ 29-30; Pl.'s SMF ¶¶ 29-30. The Database Project was completed in May 2012. Defs.' SMF ¶ 32. Plaintiff was never informed that her employment was expected to end when the Project was complete. Pl.'s SMF ¶ 32. Jose Garcia contends that Plaintiff should have been aware that her employment was guaranteed only for the duration of the particular project she was hired to complete. Dkt. No. 65-7 ("Garcia Affidavit") ¶ 28.

On May 21, 2012, Jose Garcia wrote an email to his brother, Guillermo, suggesting that GID try to place Plaintiff on another project, and if they were not successful by October, terminate her employment with GID. Defs.' SMF ¶¶ 34-35. Specifically, the email states "What do you think about us leaving her so we can see if I can get another project as far as it is feasible? It is risky but in this way the other project would be easier to start." Garcia Aff., Ex. A. The email went on to

state, "[i]f nothing happens by October, then I will send Soheila her letter of termination." Id.  GID routinely staffed contractors on other projects after a contractor's initial project was complete.  Pl.'s SMF ¶ 7.  After completion of the Database Project in May, Plaintiff was then assigned to provide general support for GRUPO's information management team in Mexico at GE's Schenectady facility (the "TOC project").  Defs.' SMF ¶ 36.  Plaintiff was unaware that the TOC assignment was temporary.  Pl.'s SMF ¶ 36.  GID claims that Plaintiff overstated her qualifications for working with computer programs and software, and that she was not suited for working on this project.  Defs.' SMF ¶¶ 37-38.  Plaintiff believes that she was qualified for and performed well in this role.  Pl.'s SMF ¶ 38.  Plaintiff received consistently positive feedback on her performance from both GE and GID employees.  Id.  Garcia contends that he had decided by June 2012 that Plaintiff could not stay on the TOC Project indefinitely, and that he would have to terminate her employment by October unless a new project was found for her.  Defs.' SMF ¶ 39.  Plaintiff states that Garcia informed her that everyone was happy with her work, and that in June 2012 Garcia offered her a raise in response to positive reviews of Plaintiff's performance.  Pl.'s SMF ¶¶ 39, 80, 81.  At no time between May and October 2012 was Plaintiff informed or notified of any change in her employment status, or of an intention to terminate her employment in October if another project was not found for her.  Id.  ¶¶ 32, 79.

**B.  The October 25 Incident**

On Thursday, October 25, 2012, Plaintiff and two other colleagues were talking near the work area of Sarah Hill ("Hill"), a GE employee.  Defs.' SMF ¶ 40; Pl.'s SMF ¶ 40.  Plaintiff made a comment about how people in general gain weight from sitting at their desks all day.  Defs.' SMF ¶ 41; Pl.'s SMF ¶ 41.  Hill overheard this comment and joined the conversation.  Defs.' SMF ¶ 42.

Plaintiff alleges that Hill began to berate her, saying "in this country we don't talk like that," and that [Plaintiff's] comment might be acceptable in Iran, but not in the United States.  Pl.'s SMF ¶ 42.  Hill purportedly said that Plaintiff's comment might be acceptable in Iran, but not the United States and described Plaintiff as uncivilized.  Id.  Plaintiff was "taken aback" by Hill's comments, and questioned why her ancestry was relevant to the situation.  Id.  Plaintiff stated that she was an American citizen, and that her husband and children were American.  Defs.' SMF ¶ 44; Pl.'s SMF  ¶ 44.  Plaintiff perceived Hill's comments as "blatantly discriminatory" and informed Hill that if Plaintiff's nationality bothered Hill, Plaintiff would resign.  Pl.'s SMF ¶ 44.  Plaintiff then attempted to report the incident to Kathleen Bokan and Peter Nelli, two GE employees, but they were not at their cubicles at the time.  Defs.' SMF ¶¶ 45-46; Pl.'s SMF ¶¶ 45-46.  Plaintiff then reported the incident to her GID supervisor, Tefft, who allowed her to go home early.  Defs.' SMF ¶¶ 47-48; Pl.'s SMF ¶¶ 47-48.

Jose Garcia held a conference call with Tefft and Tomas Zalewski ("Zalewski") the day after the incident to learn more about what happened.  Garcia Aff. ¶ 38.  On Plaintiff's next scheduled work day, Monday, October 29, Tefft and Zalewski spoke to her regarding the October 25 incident at Garcia's request.  Defs.' SMF ¶¶ 49-50; Garcia Aff. ¶ 39.  Plaintiff told Tefft and Zalewski that she believed Hill's conduct was discriminatory.  Pl.'s SMF ¶ 50.  Tefft told Plaintiff that he had spoken with Garcia and they agreed that Plaintiff would not be required to have unwanted contact with Hill in the future.  Id.  Although Plaintiff thought this response was insufficient, she informed Tefft that she was willing to continue working in her current position.  Id.

Plaintiff also reported the incident to Jared York ("York"), her supervisor at GE.  Defs.' SMF ¶¶ 52-53.  On October 30, 2012, York recounted his understanding of the incident in an email

4

to GID management, stating that he was unhappy with how Plaintiff reacted to the incident.  Defs.'
SMF ¶¶ 54-55; Pl.'s SMF ¶ 54.  York requested that GID address the incident with Plaintiff, but did
not specifically request that they terminate Plaintiff's employment.  Defs.' SMF ¶¶ 55-56; Pl.'s SMF
¶¶ 55-56.  Specifically, York's email stated that he felt that Plaintiff showed "completely
unprofessional behavior" and that "[he] need[s] people who can work and communicate effectively
and professionally."  Pl.'s SMF ¶ 55.  York further stated "I'm looking to you to make sure that
[Plaintiff] understands that her behavior was unacceptable and will not be tolerated," and "I'll look
forward to hearing your updates on next steps with [Plaintiff]."  Id.  GID management then
contacted York by telephone and informed him that they had already decided to terminate Plaintiff's
employment, prior to the October 25 incident.  Defs.' SMF ¶ 58.  At Garcia's deposition, however,
he testified that when he spoke to York on October 30, he did not tell York that a decision to
terminate Plaintiff's employment had previously been made, or even that he intended to terminate
Plaintiff's employment.  Pl.'s SMF ¶ 58; Dkt. No. 72-2 ("Garcia Deposition") at 82:14-83:5.  York
testified that when he spoke to Garcia, Garcia told him that GID had decided to terminate Plaintiff's
employment, but they did not tell him why or when the decision was made.  Pl.'s SMF ¶ 58; Dkt.
No. 72-3 ("York Deposition") at 56:24-57:08.

**C. Termination of Plaintiff's Employment With GID**

On October 30, Plaintiff called in sick.  Defs.' SMF ¶ 51; Pl.'s SMF ¶ 51.  When Plaintiff
returned to work on October 31, 2012, she received an email from Garcia notifying that her
employment was terminated, effective immediately.  Defs.' SMF ¶¶ 60-61; Pl.'s SMF ¶¶ 34, 60-61.
In the termination letter, Garcia explained that the decision to terminate Plaintiff's employment was
made in recent days and was due to the difficult economic downturn.  Pl.'s SMF ¶ 34.  The letter

5

stated that the termination "should not be taken as any reflection on you personally or your performance, which by the way, was outstanding." Id. ¶ 39.  After she received notice of her termination, Plaintiff went to York's office, where she informed him that she believed that her termination was retaliation for her complaint against Hill.  Defs.' SMF ¶ 64; Pl.'s SMF ¶ 64.  York allegedly told Plaintiff that he did not know anything about the decision to terminate her, and that he ultimately did not care whether Plaintiff had been discriminated against or not, because Plaintiff was not a GE employee.  Pl.'s SMF ¶ 64.  York denies that he discriminated against Plaintiff.  Defs.' SMF ¶ 65.

On November 7, 2012, Garcia met with Plaintiff and informed her that GID had terminated her employment for budgetary reasons.  Id. ¶ 71.  At this meeting, Plaintiff alleges that Garcia informed her that the decision to terminate her employment was made unilaterally by "higher ups" at GE, because GE chose to eliminate her position.  Pl.'s SMF ¶¶ 34, 90.  Plaintiff alleges that Garcia admitted at this meeting that he was not aware of any prior decision to terminate Plaintiff's employment.  Id. ¶ 39.  However, in his affidavit, Garcia states that the "decision to terminate Hexemer was made solely by me, on behalf of GID.  GE was not involved in any way in this decision."  Garcia Aff. ¶ 3.  Garcia further contends that "[c]ertainly by October 30, and long before the October 25 incident, it was clear that GRUPO would not be getting a new project by the end of October, and that we would have to terminate Plaintiff's employment at the end of the month.  We simply could not afford to keep paying Hexemer when she was unable to perform the duties of her current position."  Id. ¶ 41.

GID contends that it has an established practice of giving employees notice of their termination the day the termination takes effect.  Defs.' SMF ¶ 63.  According to Plaintiff, Garcia told her that

GE normally provides him with two months notice of decisions by GE to terminate a contract employee, but they did not do so in this instance.  Pl.'s SMF ¶¶ 63, 92.  Garcia informed Plaintiff that he would have provided her with such notice had GE given him the opportunity to do so.  Id. ¶ 63.  According to Plaintiff, Garcia told Plaintiff that he was "happy" with her performance, and even suggested that GID would be willing to hire Plaintiff in the future.  Id. ¶ 93.

On December 10, 2012, Plaintiff commenced this action, alleging that the termination of her employment constituted discriminatory treatment, harassment, and unlawful retaliation in violation of (1) Section 1981 of the Civil Rights Act of 1866 ("§ 1981"), 42 U.S.C. § 1981; and (2) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290, et seq.  See Compl.  On September 11, 2013, the Court granted Defendants' Motion to dismiss Plaintiff's claims for discrimination and hostile work environment in violation of § 1981, as well as her claims for discrimination and hostile work environment in violation of the NYSHRL.  See Dkt. No. 16 ("September Order").  The Court denied Defendants' Motion to the extent that they sought dismissal of Plaintiff's claims for retaliation in violation of § 1981 and the NYSHRL.  Id.  After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Plaintiff filed an Amended Complaint on March 31, 2014, adding a claim for unlawful retaliation in violation of Title VII.  See Dkt. No. 40 ("Amended Complaint").

On December 12, 2014, Defendants filed the instant Motion for summary judgment on all three causes of action.  Mot.  Plaintiff filed a Response, Dkt. Nos. 73-1 ("Response"), and Defendants filed a Reply, Dkt. No. 77 ("Reply").  Defendants move for summary judgment on the following grounds: (1) Plaintiff has failed to show that GE is Plaintiff's joint or individual employer and thus all claims against GE should be dismissed; (2) GID is not a qualified employer under Title

VII; (3) the decision to terminate Plaintiff's employment pre-dated her protected activity; (3) Defendants have offered a valid, non-retaliatory reason for Plaintiff's termination; (4) Plaintiff has failed to show that Garcia should be held individually liable.  See generally, Mot.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 instructs a court to grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  Although "[f]actual disputes that are irrelevant or unnecessary" will not preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggert v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows that there is no genuine dispute as to any material fact, the burden shifts to the nonmoving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id.  This requires the nonmoving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

At the same time, a court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998).  A court's duty in ruling on a motion for summary judgment is "carefully limited" to finding genuine

8

disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

In retaliation cases, courts should be especially cautious before granting summary judgment "where, more often than not, it is the employer's intent that is in question." Lawrence v. Thomson Learning, Inc., No. 05-CV-329, 2007 WL 1593270, at *14 (N.D.N.Y. June 1, 2007) (citing Gallo, 22 F.3d at 1224); see also Belfi v. Prendergast, 191 F.3d 129, 135 (2d Cir. 1999) (instructing district courts to "be especially cautious in deciding whether to grant this drastic provisional remedy in a discrimination case, because the employer's intent is often at issue and careful scrutiny may reveal circumstantial evidence supporting an inference of discrimination"). Nonetheless, "summary judgment remains available for the dismissal of [retaliation] claims in cases lacking genuine issues of material fact." McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997).

## IV.   CLAIMS AGAINST GE

Defendants move for summary judgment on the ground that Plaintiff has failed to show that GE qualifies as either Plaintiff's joint or single employer. Mem. at 15-21. Plaintiff concedes this argument and does not oppose that aspect of Defendants' Motion. Resp. at 1. Even where the non-moving party fails to oppose a motion for summary judgment, the moving party is only entitled to summary judgment if that party has met its burden of showing that there is no genuine issue of material fact. See FED. R. CIV. P. 56(e); Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). In order to prevail against GE for unlawful retaliation, Plaintiff must show that GE was either her actual employer, or her joint employer. See Arculeo v. On-Site Sales & Marketing, LLC, 425 F.3d 193, 198 (2d Cir. 2005) (recognizing that separate legal entities that handle certain aspects of the employer-employee relationship jointly may recognized as joint

employers).  For claims brought pursuant to § 1981, whether an entity constitutes a joint employer

hinges on the control exercised by the putative joint-employer over the plaintiff's work.  See Sept.

Order at 5 (citing Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 217 (S.D.N.Y.

2010).  Here, there is substantial evidence in the record that GID, and not GE, controlled Plaintiff's

employment, and Plaintiff has failed identify any issues of material fact regarding whether GE was

Plaintiff's joint or single employer.  See Resp. at 1 n.1.  Defendants are therefore entitled to

summary judgment with respect to Plaintiff's claims against GE.

## V.     TITLE VII

Defendants also move for summary judgment on Plaintiff's claims arising under Title VII,

on the basis that GID alone is not a qualified employer.  Mem. at 23-24.  Title VII defines

"employer" as a person engaged in an industry affecting commerce who has fifteen or more

employees for each working day in each of twenty or more calendar weeks in the current or

preceding year."  42 U.S.C. § 2000e(b).  GID contends, and Plaintiff concedes, that GID had fewer

than fifteen employees on its payroll during any given week.  See Mem. at 30; Resp. at 1; Garcia

Aff. ¶ 5.  Therefore, Defendants' Motion is granted to the extent that it seeks summary judgment on

Plaintiff's Title VII claims.

## VI.    RETALIATION

### A.  NYSHRL and § 1981

#### 1. Legal Standard

The NYSHRL prohibits an employer from discriminating or retaliating against an employee

because the employee opposed discriminatory employment practices.  See N.Y. EXEC. LAW        §

296(1)(e), (3-a)(c).  Similarly, 42 U.S.C. § 1981 provides a right of action where an employee has

been retaliated against because he or she opposed discriminatory practices.  CBOS W., Inc. v. Humphries, 553 U.S. 442, 457 (2008).

Retaliation claims under the NYSHRL and § 1981 are analyzed under the familiar burden-shifting framework established in McDonnell Douglas Corp. v. Greene, 411 U.S. 792 (1973).  See Hicks v. Baines, 593 F.3d 159, 164 (2d Cir. 2010) (analyzing all of plaintiff's retaliation claims pursuant to Title VII principles); Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir. 2004) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in violation of § 1981 or the Equal Protection Clause."); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1177 (2d Cir. 1996) (considering plaintiff's state law claims together with her Title VII claims "because New York courts rely on federal law when determining claims under the [NYSHRL]").

Under this framework, a plaintiff must first make out a *prima facie* case by showing that: (1) the employee engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.  See Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 24 (2d Cir. 2012).  "A plaintiff's burden of establishing a *prima facie* case is *de minimis*."  Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001).  If the plaintiff meets this minimal burden, the burden shifts to the employer, who must offer a legitimate, nonretaliatory reason for the adverse action.  See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003); see also Meiri v. Dacon, 759 F.2d 989, 996-97 (2d Cir. 1985).  If the employer succeeds at the second stage, then the presumption of retaliation dissipates, and the plaintiff must show that, but for the protected activity, she would not have been terminated.  See Univ. of Tex. Sw. Med. Ctr. v.

11

Nassar, 133 S.Ct. 2517, 2534 (2013).  A plaintiff alleging retaliation for complaining about a discriminatory employment practice must show that retaliation was a "but-for" cause of the adverse action, and not simply a "substantial" or "motivating" factor in the employer's decision.  Id. at 2526, 2533.[1]  "However, 'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive."  Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 846 (2d Cir. 2013).

To prevail at the summary judgment stage in a retaliation case, a defendant must show that the plaintiff failed to make out a *prima facie* case of retaliation, or that the defendant has offered legitimate, nonretaliatory reasons for the challenged actions, and there are no triable issue of fact as to whether the defendant's explanations were pretextual.  Vosburgh v. Am. Nat. Red. Cross, No. 08-CV-0653, 2014 WL 4826688, at *8 (N.D.N.Y. Sept. 29, 2014) (Kahn, J.) (citing Delrio v. City of N.Y., 938 N.Y.S.2d 149, 151 (App. Div. 2012)).

### 2. *Discussion*

#### a. *Prima Facie* Case

The only element of the *prima facie* case at issue is whether Plaintiff can demonstrate a causal connection between reporting the allegedly discriminatory conduct and her subsequent

---

[1] It is unsettled whether the but-for causation standard for Title VII claims articulated in Nassar applies to claims brought under the NYSHRL and § 1981.  See Dall v. St. Catherine of Siene Med. Ctr., 966 F. Supp. 2d 167, 191 n.12 (E.D.N.Y. 2013) ("New York State courts have yet to address the impact of the Supreme Court's recent holding in Nassar on the NYSHRL, nor has the Second Circuit provided the district courts of this Circuit with guidance as to this issue."); Quarless v. Brooklyn Botanic Garden Corp., No. 11-cv-05684, 2014 WL 2767085, at *5 (E.D.N.Y. June 18, 2014) (stating that it is unclear whether §1981 claims post-Nassar are analyzed under the but-for standard or the previous motivating factor test).  However, since the Court finds that Defendants are not entitled to summary judgment even under the more exacting but-for test, the Court need not determine whether a more lenient causation standard applies.

termination.  For the purposes of stating a *prima facie* case, a plaintiff may demonstrate causation by, *inter alia*, "showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence."  Hicks, 593 F.3d at 170 (quotation marks omitted). "[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the *prima facie* stage on summary judgment or at trial indirectly through temporal proximity."  Zann Kwan, 737 F.3d at 845.

While there is no bright line defining when the temporal proximity between protected activity and an adverse employment action is sufficient to give rise to an inference of causation, in general, a temporal gap of less than two months is sufficient to give rise to an inference of causation.  See, e.g., Mazurkiewicz v. N.Y.C. Health & Hosp. Corp., No. 09 Civ. 5962, 2010 WL 3958852, at *5 (S.D.N.Y. Sept. 16, 2010) (finding inference of causation where less than two months elapsed between protected activity and adverse action); Zann Kwan, 737 F.3d at 845 (finding same for period of three weeks); Reed, 95 F.3d at 1178 (finding same for time period of twelve days).  In the present case, Plaintiff was terminated six days after her first protected activity (when she first reported Hill's comments to her GE supervisor), and two days after her second (when she told Tefft and Zalewski that separating her from Hill was an inadequate remedy).  As the Court noted in its September 11, 2013 Order denying Defendants' Motion to dismiss Plaintiff's retaliation claims, this temporal gap of less than a week is "more than sufficient to create an inference of causation."  Sept. Order at 14.

Defendants counter that Plaintiff cannot show a causal connection between her protected activity and her termination because GID had made plans to terminate Plaintiff's employment in May, 2012, five months before her protected activity took place.  Mem. at 17.  In support of this

13

theory, Defendants rely on the May 2012 email from Jose Garcia to Guillermo Garcia.  Id.
Defendants argue that this email shows that GID made the decision to terminate Plaintiff's
employment in May, five months prior to her protected activity.  Id.

"[T]o establish that an adverse employment action was caused by an employee's protected
activity, the employer's decision to act adversely to the employee must postdate the protected
activity."  Trainor v. HEI Hospitality, LLC, 699 F.3d 19, 27 (1st Cir. 2012).  Accordingly, an
employer need not suspend previously planned personnel decisions upon discovering that an
employee has engaged in a protected activity.  See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268,
272 (2001).  In this case, however, although it is possible for a rational factfinder to find that
Plaintiff's termination at the end of October was part of a plan by GID that predated Plaintiff's
protected activity, a factfinder could also reasonably conclude that Plaintiff's termination within a
week of her protected activity was motivated by retaliatory animus.  See, e.g., Trainor, 699 F.3d at
27 (denying summary judgment on retaliation claim where there was genuine issue of fact as to
whether adverse employment action resulted from plan that pre-dated protected activity, or resulted
from retaliatory motive).  The latter interpretation is supported by the fact that any plan to eliminate
Plaintiff's position was only discussed in hypothetical terms in the May 2012 email, and was not
acted upon until immediately after Plaintiff complained about discrimination.  Further, Plaintiff was
never informed of this plan, and Defendants offer no evidence, other than the May email, to suggest
that Plaintiff's termination was in fact motivated by this earlier, budget-driven decision.  A court's
duty in reviewing a motion for summary judgment is limited to identifying genuine disputes of fact,
"not deciding them."  Gallo, 22 F.3d at 1224.  Accordingly, the record adequately demonstrates
causation for purposes of Plaintiff's *prima facie* case, and there are genuine issues of fact that

14

preclude summary judgment.

### b. Legitimate Non-Discriminatory Reason

Having found that Plaintiff has set forth a *prima facie* case of retaliation, the burden then shifts to Defendant to provide a legitimate, non-discriminatory reason for Plaintiff's termination. McDonnell Douglas, 411 U.S. at 802. The burden of offering a legitimate non-discriminatory reason is low. Id. (stating that a defendant is only required to articulate—not to prove—a non-discriminatory reason for its employment decision); see also Tarshis v. Riese Org., 211 F.3d 30, 36 (2d Cir. 2000) (stating that any reason is sufficient and the defendant is not required to persuade the court that the proffered reason was the actual reason for its decision) abrogated on other grounds by Swierkewicz v. Sorema N.A., 534 U.S. 506 (2002).

Defendants argue that the fact that the purported decision to terminate Plaintiff's employment in October if another project was not secured for her predated Plaintiff's protected activity, coupled with what Garcia described as Plaintiff's inability to perform successfully on the TOX project, constitutes a legitimate, nonretaliatory reason for her termination. Mem. at 13-14. This is sufficient to satisfy the second prong of the McDonnell-Douglas analysis. See Tarshis, 211 F.3d at 36.

### c. Pretext

Once the defendant has articulated a non-retaliatory reason for an employment action, the presumption of retaliation that arises from the *prima facie* case is rebutted. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). The plaintiff then bears the burden of showing that the non-retaliatory reason is merely a pretext for retaliation. Id. Recently, the Supreme Court clarified that a plaintiff alleging retaliation must show that retaliation was a "but-for" cause of the adverse action,

15

rather than simply a "substantial" or "motivating" factor in the employer's decision.  Nassar, 133 S. Ct. at 2526, 2533.  To establish "but-for" causation, the plaintiff is not required to show that retaliation was the *only* cause of the employer's action; rather, the plaintiff must show that the adverse action would not have occurred in the absence of the retaliatory motive.  Zann Kwan, 737 F.3d at 846.

"A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weakness, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." Id.  Such discrepancies provide evidence from which a reasonable juror could conclude that the explanations are a pretext for retaliation.  See id.  A plaintiff  "may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage." Id. at 847.  An employer's reason for an adverse action cannot be proven to be a pretext for retaliation unless it is shown to be false *and* that retaliation was the real reason, see Quaratino v. Tiffany & Co., 71 F.3d 58, 64 (2d Cir. 1995), but a finding of falsity may, in appropriate circumstances, allow the factfinder to infer the ultimate fact of intentional retaliation, see Reeves, 530 U.S. at 147; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993); Cross v. N.Y.C. Transit Auth., 417 F.3d 241, 250 (2d Cir. 2005).

The Court finds Defendants' proffered explanation for terminating Plaintiff's employment problematic for a number of reasons.  Defendants contend that the decision to terminate Plaintiff's employment was made in May 2012, five months before her protected activity.  Mem. at 13-14.  However, Defendants also offer alternative reasons and explanations for Plaintiff's termination that undermine the legitimacy of this explanation.  The Court will address each of these inconsistencies

16

in turn.

First, whether or not the May 2012 email between Jose and Guillermo Garcia constitutes a final decision to terminate Plaintiff's employment raises genuine issues of material fact.  Defendants claim that the May email is "dispositive," and shows that GID made a final decision to terminate Plaintiff's employment five months before her protected activity.  Id. at 7.  However, the email discusses Plaintiff's potential termination in only hypothetical terms.  See Garcia Aff., Ex. A.  In the email, Jose Garcia suggests placing Plaintiff on another project with the goal of securing additional contracts for GID, and "[i]f nothing happens by October, then I will send Sohelia her letter of termination."  Id.  Defendants have put forth no additional evidence to corroborate that Plaintiff's termination on the last day of October was in fact motivated by the plan laid out in the May email.  In Cioffi v. Averill Park Cent. Sch. Dist., 444 F.3d 158, 163 (2d Cir. 2006), the court rejected a similar argument by an employer who attempted to show that the adverse employment decision was made prior to the plaintiff's protected activity.  Id. at 163.  The Second Circuit held that reaching an "informal consensus" to terminate the plaintiff's employment at a closed door meeting was not an adverse employment action; rather the action occurred on the date where there was an official meeting, a formal vote, and a public outcome.  Id.; see also Nagle v. Marron, 663 F.3d 100, 110 (2d Cir. 2011) ("[A]n employer cannot insulate himself from liability at the summary judgment stage simply by asserting that an adverse employment decision had in fact already been made, without being memorialized or conveyed to anyone, before the employer learned of the protected conduct." Therefore, whether or not the May 2012 email is sufficient to establish that Plaintiff's termination predated her protected activity is therefore an issue of disputed fact.

Additionally, shifting or contradictory explanations by an employer suggest that a proffered

explanation is pretextual.  See EEOC v. Ethan Allen, 44 F.3d 116, 120 (2d Cir. 1994) (finding that reasonable jurors could infer that employer's shifting explanations, offered only after the plaintiff complained of discrimination, were pretextual); see also Zann Kwan, 737 F.3d at 847 (finding that employer's inconsistent explanations, coupled with temporal proximity between protected activity and termination, created a triable issue of fact regarding whether but-for causation was satisfied). At the pretext stage, courts should consider "whether the putative non-discriminatory purpose was stated only after the allegation of discrimination." DeMarco v. Holy Cross High Sch., 4 F.3d 166, 171 (2d Cir. 1993).  Such after-the-fact explanations are suggestive of pretext.  Ethan Allen, 44 F.3d at 120.

        Here, Defendants have offered shifting and inconsistent explanations regarding the circumstances of Plaintiff's termination.  In his affidavit, Garcia states that he made the decision to terminate Plaintiff in May 2012 for "budgetary reasons."  Garcia Aff. ¶¶ 3-4; Dkt. No. 72-8, Ex. H. However, when Garcia met with Plaintiff in November 2012 following her termination, Garcia told Plaintiff that the decision was made unilaterally by GE and that he received no advanced notice of the termination.  Pl.'s SMF ¶¶ 90-94.  Garcia assured Plaintiff that he would have given Plaintiff the customary notice of termination he gives other employees had the decision not come from "higher-ups" at GE.  Id. ¶ 92.  Plaintiff's termination letter stated that the decision was attributed to "the difficult economic downturn we are going through" and that the termination "should not be taken as any reflection on you personally or your performance, which by the way, was outstanding."  Dkt. No. 72-8, Ex. H.

        Defendants also argue that Plaintiff's poor performance on the second project contributed to her termination.  Mem. at 13-14.  In support of this argument, Garcia testified that Plaintiff

misstated her qualifications. Def.'s SMF ¶¶ 37-38. This argument directly undermines Defendants'
previous argument, that the final decision to terminate Plaintiff's employment was made in May.
Plaintiff's evidence further contradicts these assertions. Plaintiff asserts that there were no
documented problems with her performance, that during her tenure she received only positive
reviews, and that Garcia himself offered Plaintiff a raise in June 2012—after she began work on the
second project—and cited Plaintiff's excellent performance as the reason for the raise. Pl.'s SMF ¶¶
39, 80-81. Plaintiff's history of positive performance evaluations prevents the Court from finding as
a matter of law that Plaintiff's termination was in no way motivated by her protected activity. See
Nagle, 663 F.3d at 112 (holding that plaintiff's history of positive performance undermined
defendant's argument that it had a legitimate, non-discriminatory reason for terminating her
employment).

   Plaintiff has also set forth evidence that GID may have been motivated to terminate
Plaintiff's employment following her protected activity in order to preserve its existing business
relationship with GE. Pl.'s SMF ¶¶ 54-59. Immediately after receiving an email on October 30
from GE manager Jared York discussing his displeasure with Plaintiff's reaction to the October 25
incident and stating that Plaintiff's behavior "will not be tolerated," the Garcia brothers informed
York that they intended to terminate Plaintiff's employment. Id. ¶¶ 57-59. Plaintiff was terminated
the next day, on October 31.

   The primary case that Defendants rely on in support of their Motion, LaLanne v. Begin
Managed Programs, No. 04 Civ. 9076, 2007 WL 2154190, at *5 (S.D.N.Y. July 24, 2007), is
inapposite. In LaLanne, the defendant offered proof that the initial termination of plaintiff's
employment was the result of a seventy percent cut in the budget that required the elimination of

two of the three coordinator positions for which the plaintiff was qualified.  Id. at *2.  The plaintiff, as the most junior coordinator, was slated for termination.  Id.  Critically, the defendant informed the plaintiff of the company's decision to eliminate his position soon after it was made.  Id.  Before the termination took effect, the defendant was able to secure alternative sources of funding and employed the plaintiff for an additional six months.  Id.  The plaintiff was eventually terminated, along with all of the defendant's other employees as the result of a change in the agreement between defendant and the company they contracted with.  Id. at *3.  Moreover, there was a three month gap between the plaintiff's alleged protected activity and his termination.  Id. at *2.  Unlike in LaLanne, Defendants have set forth no evidence other than the May email to support their theory that Plaintiff's termination was budget-driven.  While the Court acknowledges that budgetary considerations and other business-related decisions are non-retaliatory, in the present case, there are genuine issue of material fact surrounding the actual motivation behind Plaintiff's termination, precluding summary judgment.  Furthermore, Defendants' conflicting explanations as to how and why the decision to terminate Plaintiff's employment was made, combined with the temporal proximity between Plaintiff's protected activity and her termination, support an inference that Defendants' proffered reasons are pretext for retaliation.  See Hicks, 509 U.S. at 511 ("[T]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").  Accordingly, Plaintiff has met her burden at the pretext stage, and Defendants are not entitled to summary judgment on Plaintiff's retaliation claims under § 1981 and the NYSHRL.

## VII.   INDIVIDUAL CLAIMS AGAINST GARCIA

Defendants argue that Plaintiff's individual claims against Garcia should be dismissed for the following reasons: (1) the decision to terminate Plaintiff's employment was made for budgetary reasons and occurred months before the protected activity; and (2) Plaintiff did not engage in a protected activity with respect to Garcia because she did not directly report the incident to Garcia prior to her termination.  Mem. at 30.

Under § 1981, individual defendants may be liable if the plaintiff can "demonstrate some affirmative link to causally connect the actor with the discriminatory action."  Whisbee v. Garzarelli Food Specialities, Inc., 223 F.3d 62, 74 (2d Cir. 2000).  Stated another way, individual liability under § 1981 requires the actor's personal involvement.  Patterson, 375 F.3d at 229.  Personal involvement "includes not only direct participation in the alleged violation but also gross negligence in the supervision [of] subordinates who committed the wrongful acts and failure to take action upon receiving information that constitutional violations are occurring."  Id.

Here, Plaintiff alleges that Garcia was aware of, and acknowledged, the discriminatory nature of Hill's comments to Plaintiff, and failed to provide an appropriate remedy.  Moreover, Plaintiff has set forth sufficient evidence to suggest that Garcia himself made the decision to terminate Plaintiff's employment immediately following her protected activity.  This is sufficient to survive Defendants' Motion for summary judgment regarding Plaintiff's individual claims against Garcia.  See Gad-Tadros v. Bessemer Venture Partners, 326 F. Supp. 2d 417, 425 (E.D.N.Y. 2004) (finding supervisor's failure to remedy discriminatory behavior of other employees, coupled with plaintiff's constructive discharge immediately following protected activity was sufficient to support individual liability under § 1981).

Defendants reassert their argument that Plaintiff's termination predated her protected activity

with respect to Plaintiff's claims against Garcia.  For the reasons discussed *supra*, the Court finds that there are genuine issues of material fact regarding the motivation behind Plaintiff's termination, precluding summary judgment.

Further, the Court finds Defendants' argument that Plaintiff did not engage in a protected activity with respect to Garcia because Plaintiff did not report the incident to Garcia himself without merit.  To satisfy the "knowledge" element of a retaliation claim, a plaintiff is not required to report a discriminatory incident directly to the employer.  See Weber v. City of N.Y., 973 F. Supp. 2d 227, 267 (E.D.N.Y. 2013).  Rather, the knowledge element is satisfied where the entity that carried out the adverse employment action had notice of the employee's protected activity.  Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 92 (2d Cir. 2011) ("Even if the agents who carried out the adverse action did not know about the plaintiff's protected activity, the 'knowledge' requirement is met if the legal entity was on notice.").  Here, it is undisputed that Garcia was aware of Plaintiff's protected activity before he sent her letter of termination.  Therefore, the knowledge element of Plaintiff's retaliation claim is satisfied.

## III.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 65) for summary judgment is **GRANTED in part and DENIED in part**; and it further

**ORDERED**, that Defendants' Motion (Dkt. No. 65) for summary judgment is **GRANTED** as to Plaintiff's (1) Title VII Claim against all Defendants; and (2) § 1981 and NYSHRL retaliation claims against Defendant General Electric.  Defendants' Motion (Dkt. No. 65) for summary judgment is **DENIED** as to Plaintiff's § 1981 and NYSHRL retaliation claims against Defendants

GID and Jose Garcia; and it us further

      **ORDERED**, that Defendant General Electric is **DISMISSED** from the case; and it is further

      **ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and

Order on all parties in accordance with the Local Rules.

      **IT IS SO ORDERED.**


DATED:       June 29, 2015
              Albany, NY




              Lawrence E. Kahn
              U.S. District Judge